UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NAKIA CHANEY,

                              Plaintiff,
                                                          6:16-cv-01185
v.                                                        (NAM/TWD)


ALBANY POLICE DEPARTMENT, et al.,

                              Defendants.
_____

APPEARANCES:

NAKIA CHANEY
Plaintiff, *pro se*
913 Lincoln Avenue
Schenectady, NY 13207

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge


## ORDER AND REPORT-RECOMMENDATION

          The Clerk has sent for review a complaint brought by *pro se* Plaintiff Nakia Chaney.

(Dkt. No. 1.)  Plaintiff, a former inmate in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS"), has not paid the filing fee for this action

and seeks leave to proceed *in forma pauperis* ("IFP Application").  (Dkt. Nos. 2 and 3.[1])

## I.    PLAINTIFF'S IFP APPLICATION

          A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1) (2006).  After reviewing Plaintiff's IFP

---

[1]  At the time Plaintiff commenced this action, he was an inmate at the Mid-State Correctional
Facility.  (Dkt. No. 1.)  Because Plaintiff has been released from DOCCS custody, his inmate
authorization (Dkt. No. 3) is no longer necessary.  (*See* Text Entry 10/03/2016.)

Application, the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's IFP

Application (Dkt. No. 2) is granted.

## II.     SUFFICIENCY OF THE COMPLAINT

### A.     Standard of Review

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. §

1915(e) directs that when a person proceeds *in forma pauperis*, "the court shall dismiss the case

at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua

sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## B.       Summary of the Complaint

In his complaint, Plaintiff asserts claims against the Albany Police Department; Steven Krokoff, Albany Police Chief; Scott Gavigan, Badge #1826; Gorleski, Badge #2232; Koon, Badge #1952; Kevin Meehan, Badge #2407; John Doe Badge #889; Sheriff Craig Apple, Albany

County Jail; the City of Albany; unknown John Does at the Albany County Jail; unknown John Does from the Albany Police; Vanhoesen, Badge #291, Schenectady County Jail; Reaulo, Badge #248, Schenectady County Jail; Sinatra, Badge #270, Schenectady County Jail; unknown John Does at the Schenectady County Jail; Schenectady County Sherriff Badge # SCP 065; unknown John Does from Schenectady Sherriff; Alan Bell, Niskayuna Police; the County of Albany; Albany County District Attorney David Soares; and the County of Schenectady. (Dkt. No. 1.[2]) The following facts are set forth as alleged in the complaint.[3]

On December 28, 2013, Plaintiff was subjected to excessive force during an arrest by Schenectady County Sheriff Badge #065. *Id*. at ¶ F. Plaintiff was thrown to the ground and tasered while in handcuffs. *Id*. Plaintiff was also denied medical care. *Id*.

Plaintiff alleges he was subjected to visual body cavity searches performed by various Defendants at the Schenectady County Jail. *Id*. at ¶¶ A-D. Specifically, Vanhoesen performed an "unlawful admission visual body cavity search" on Plaintiff on August 8, 2014, August 15, 2014, and September 14, 2014. *Id*. at ¶ A. Reaulo performed an unlawful visual body cavity search on August 29, 2014. *Id*. at ¶ B. Sinatra performed an unlawful visual body cavity search on October 17, 2014. *Id*. ¶ C. Plaintiff also alleges John Does of the Schenectady County Sherriff's Department performed unlawful visual body cavity searches on December 28, 2013, May 8, 2014, August 1, 2014, and May 7, 2014. *Id*. at ¶ D.

---

[2] The Clerk is directed to amend the caption of the complaint to add County of Albany, Albany County District Attorney David Soares, and County of Schenectady as Defendants.

[3] Plaintiff's twenty-four page complaint combines the form "Inmate Civil Rights Complaint" and seventeen typewritten pages. (*See generally* Dkt. No. 1.) Page references identified by docket number are to the page number assigned by the Court's CM/ECF electronic docketing system. Where feasible, the Court references the order of paragraphs assigned by Plaintiff. Specifically pages six through twelve of Plaintiff's complaint are alphabetically ordered, whereas pages fourteen through twenty-one are numerically ordered. *Id*.

On August 14, 2014, while Plaintiff was attempting to enter a store on Central Avenue, Plaintiff was subjected to excessive force by John Doe Badge #889 of the Albany Police Department. *Id*. at ¶ F. Specifically, Plaintiff was tackled, thrown to the ground, and placed in handcuffs. *Id*. Plaintiff alleges John Doe Badge #889 lacked probable cause for any use of excessive force, arrest, stop, or frisk, which took place at "gun point." *Id*. Plaintiff was also "humiliated as both of his private areas were searched in the public without probable cause." *Id*. Plaintiff alleges Defendant John Doe Badge #889 "had no justification to place his hands into [Plaintiff's] pants to conduct any searches." *Id*. Moreover, when Gavigan and members of his unit arrived at the scene, they performed their own search of Plaintiff's private areas. *Id*. at ¶ G. Plaintiff alleges Gavigan did not have probable cause to put his hands into Plaintiff's pants, and that there was no justified reason for this search. *Id*. Ultimately, Plaintiff was released at the scene and never charged with a crime. However, Plaintiff's vehicle was "unlawfully towed" by the Albany Police Department. *Id*.

On October 13, 2014, Gavigan, Gorleski, Koon, and Meehan, subjected Plaintiff to excessive force when they "roadblocked" Plaintiff's vehicle "at gun point and strong armed Plaintiff face down in the middle of interstate I-90." *Id*. at ¶ H. While Plaintiff was handcuffed, Gavigan and Koon performed a search of Plaintiff's private areas. *Id*. Plaintiff alleges Defendants lacked probable cause to "forcibly search" Plaintiff's underwear in public. *Id*. Thereafter, at the Albany Police Station, Gavigan ordered Plaintiff to be strip searched while "flanked and surrounded" by Gorleski, Koon, and Meehan. *Id*. at 9. During this "visual body cavity search," Defendants collected and searched Plaintiff's clothes and "shined flashlights into Plaintiff's anus." *Id*.

On October 13, 2014, Gavigan "falsified the arrest report/accusatory instrument" by indicating the red jacket found in the trunk belonged to Plaintiff as opposed to the owner and operator of the vehicle. *Id*. at ¶ J. As a result, Plaintiff alleges his due process rights were violated because the "perjured arrest report/accusatory instrument" did not meet the "requirements of CPL 100.40 and CPL 100.15" because Gavigan "failed to provide any facts to support his conclusory statements[.]" *Id*.

Plaintiff claims Gavigan used an "unlawful GPS tracking device to track several" of Plaintiff's vehicles without a warrant or probable cause. *Id*. at ¶ L. Gavigan also "used a device without a warrant that GPS tracked" Plaintiff's location through his cellular telephone in violation of the New York State Constitution and United States Constitution. *Id*. Gavigan "seized" $5,832.00 from Plaintiff. *Id*. at ¶ U. Plaintiff has "yet to receive a voucher or notification of forfeiture proceedings," and requests the return of his confiscated money. *Id*.

Plaintiff claims Bell, of the Niskayuna Police Department, requested that Gavigan "use the unlawful GPS tracking device." *Id*. at ¶ M. Specifically, Bell "controlled the GPS device" in the Town of Niskayuna and Gavigan "covered the GPS device" for the Albany Police Department without a warrant or probable cause. *Id*. Plaintiff alleges he was "unlawfully tracked" by his cellular telephone and/or vehicle for approximately nine months in violation of his right to privacy. *Id*.

Plaintiff alleges Apple and John Does conducted "unlawful visual body cavity searches" at the Albany County Jail on June 20, 2014, July 9, 2014, October 14, 2014, and October 17, 2014. *Id*. at ¶ I.

Plaintiff also alleges the City of Albany, the County of Albany, Albany County Police Chief Krokoff, and Albany County District Attorney David Soares created a "blanket policy"

that led to the above violations of Plaintiff's constitutional rights as a result of their failure to discipline, lack of training, failure to hold officers accountable for intentional acts, and other acts that were foreseeable. *Id.* at ¶¶ K, T.

Plaintiff further alleges Police Chief Krokoff created a "blanket policy" allowing subordinate officers to file false police reports and to commit perjury in court proceedings. *Id.* at ¶ N. Krokoff also failed to discipline and hold the officers accountable for their illegal actions. *Id.* Plaintiff further alleges Krokoff created a blanket policy that that allowed all officers to arrest in the absence of probably cause. *Id.* Plaintiff further alleges the City of Albany, the County of Albany, and Albany County District Attorney David Soares created "a custom and policy that allowed the officers to get away with perjury within arrest/reports/accusatory instruments, trials, suppression hearings[.]" *Id.* at ¶ O.[4]

Lastly, Plaintiff claims that the admission policy at the Albany County Jail and the Schenectady County Jail to "conduct visual body cavity searches and other searches" in which Plaintiff was "forced to undress and spread apart his rectal and lift up his penis was without justification as there was no reason to believe that weapons or contraband was being concealed on or in the body" violated his constitutional rights. *Id.* at ¶ 45.

Plaintiff has organized the above events into nine causes of actions:

1.     For the unlawful admission visual body cavity searches conducted on the various dates at the Schenectady County Jail by various Defendants, Plaintiff seeks 47 million dollars in damages;

2.     For the unlawful admission visual body cavity searches conducted on the various dates at the Albany County Jail by various Defendants, Plaintiff seeks 33 million dollars in damages;

---

[4] Paragraphs P, Q, R, and S of Plaintiff's complaint do not state a claim upon which relief can be granted. In deference to Plaintiff's *pro se* status, the Court interprets Paragraphs P, Q, R, and S, as further support for the claims against the City of Albany, the County of Albany, Albany Police Chief Krokoff, and Albany County District Attorney Soares.

3.     For the unlawful visual cavity body searches conducted on various dates by various Defendants at the Albany Police Station, Plaintiff seeks 27 million dollars in damages;

4.     For the August 14, 2014, "unlawful gun point stop, arrest or frisk, forcible touching of both private areas in the public, excessive force, and legal abuse of process" against the Albany police involved, Plaintiff seeks 77 million dollars in damages;

5.     For the October 13, 2014, "unlawful gunpoint arrest, stop, or frisk, forcible touching of both private areas, sexual assault, excessive force, and abuse of legal process" against the Albany police involved, Plaintiff seeks 77 million dollars in damages;

6.     For "unlawfully tracking" Plaintiff's "every move" for over nine months without a warrant, Plaintiff seeks 44 million dollars in damages;

7.     Likewise, for the "unlawful tracking" for over nine months without a warrant, plaintiff seeks 100 million dollars in damages as to all Defendants;

8.     For the December 28, 2013, use of excessive force, including unlawfully tasering Plaintiff while he was in handcuffs, Plaintiff seeks 150 million dollars against Defendant SCP 065 of the Schenectady County Sheriff's Department; and

9.     For the October 13, 2014, and August, 14, 2014, "touching of Plaintiff's private parts," Plaintiff seeks 200 million dollars.

*Id*. at 22-23. Plaintiff also seeks an award of punitive damages. *Id*. at 23. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the complaint.

**C.**     **Analysis[5]**

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging numerous claims sounding in illegal search and seizure, excessive force, false arrest, violations of due process and

---

[5] Because the relationship, if any, between the claims asserted in this action, Plaintiff's incarceration at the Mid-State Correctional Facility at the time he commenced this action, and his subsequent release from DOCCS custody is unclear, the Court finds that any determination as to the applicability of *Heck v. Humphrey*, 512 U.S. 477 (1994) is premature and has undertaken its initial review of the sufficiency of Plaintiff's claims without regard to *Heck*.

privacy, and negligence in violation of his constitutional rights and the laws of New York State. (*See generally* Dkt. No. 1.)

As a general matter, section 1983 "establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)). "Section 1983 'is not itself a source of substantive rights[,]' . . . but merely provides 'a method for vindicating federal rights elsewhere conferred[.]'" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 (1979)). In order to state a claim pursuant to section 1983, a plaintiff must allege "(1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'" *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

### 1.    Individual Defendants

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *Iqbal*, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008[6]) (quoting *Bass v. Jackson*, 790 F.2d

---

[6] Copies of all unpublished decisions will be provided to Plaintiff in accordance with LeBron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676.

Plaintiff alleges Defendants Gavigan, Gorleski, Koon, Meehan, John Doe Badge #889, Sheriff Apple, Vanhoesen, Reaulo, Sinatra, Schenectady County Sherriff Badge # SCP 065, Bell, John Does at the Albany County Jail, John Does from the Albany Police, John Does at the Schenectady County Jail, and John Does from Schenectady Sherriff's Office, subjected Plaintiff on numerous occasions to, *inter alia*, illegal search and seizures, excessive force, denial of medical care, and violations of due process and privacy under the Fourth, Fifth, and Fourteenth Amendments. (Dkt. No. 1 at ¶¶ A-I; L-M.)

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, the Court recommends that Plaintiff's § 1983 claims against individual Defendants Gavigan, Gorleski, Koon, Meehan, John Doe Badge # 889, Sheriff Apple, Vanhoesen, Reaulo, Sinatra, Schenectady County Sheriff Badge # SCP 065, Bell, and all John Does survive initial review and require a response. In so recommending, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Steven Krokoff, Albany Police Chief

Plaintiff also bring supervisory liability claims against Steven Krokoff, Albany Police Chief. (Dkt. No. 1 at ¶¶ K, N, P, T.) "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). "Holding a position in a hierarchical chain of command, without more, is

insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing *McKinnon*, 568 F.2d at 934); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections . . . in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 maybe found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Here, Plaintiff alleges Krokoff failed to properly discipline and train his subordinates, which led to the above-referenced constitutional violations. (Dkt. No. 1 at ¶ K.) Plaintiff also alleges Krokoff "failed to implement a policy as a check and balance to detect perjury with the arrest reports or accusatory instruments" by: (1) failing to discipline and hold the officers accountable for perjury within the arrest reports/accusatory instrument or when testifying at suppression hearings and/or trials, (2) failing to train officers as to the requirements of "CPL 100.40 and CPL 100.15," and also by failing to hold his officers accountable for such violations,

(3) creating a "blanket policy" that allowed his officers to commit perjury, as they would not be held accountable, (4) creating a "blanket policy" that allowed his officers to violate due process rights by committing perjury and filing false reports, (5) failing to implement a policy that "screened all arrest reports/accusatory instruments for facial and jurisdictional defects prior to infringing upon" due process liberty rights, and (6) creating a "blanket policy" that allowed all officers to arrest in the "absence of probable cause" and in the "absence of a procedure that detects perjury, facial sufficiency or jurisdictional defects." *Id*. at ¶ N. Plaintiff further alleges Defendant Krokoff "created a blanket policy/custom" by permitting unlawful stops, frisks without probable cause or the filings of "perjurous" police reports that led to unwarranted malicious prosecution or deprivation of due process liberty rights, by failing to discipline, train, or hold officers accountable for their actions. *Id*.

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, the Court recommends that Plaintiff's § 1983 claims against Krokoff survive initial review and require a response. In so recommending, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 3. Municipal Defendants

While amenable to suit under section 1983, a municipality may not be held liable under that section for the acts of its employees based on a theory of respondeat superior. *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Blond v. City of Schenectady*, No. 10-CV-0598 (TJM), 2010 WL 4316810, at *3 (N.D.N.Y. Oct. 26, 2010). In order to sustain a section 1983 claim for municipal liability, a plaintiff must show that he

suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom.  *Monell*, 436 U.S. at 694-695.

An "official policy or custom" can be shown in several ways: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with the municipal employees.  *Dorsett–Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing *Monell*, 436 U.S. at 690-91).  "Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell* . . . ."  *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006) (punctuation and citation omitted).

A local government entity's alleged failure to train its employees creates liability under section 1983 only "[i]n limited circumstances."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Indeed, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Id*.  The "stringent standard" of deliberate indifference applies to failure-to-train claims.  *Id*.  In order to prevail, the plaintiff must demonstrate that the municipality was "on actual or constructive notice that a particular omission in [its] training program causes . . . employees to violate citizens' constitutional rights [and] the policymakers chose to retain that program."  *Id*. (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

Plaintiff appears to allege, under the fourth theory, that the City of Albany, the County of Albany, and the County of Schenectady all had a custom or policy of tolerating the use of excessive force and police misconduct in executing arrests, and engaging in illegal search and seizures, including visual body cavity searches without probable cause, and that each municipality failed to properly train or supervises it officers in these areas. (Dkt. No. 1 at ¶¶ K, T, N, O.) "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Plaintiff's assertions, read liberally and in combination with the facts in the complaint, sufficiently allege a "series of incidents" during with Plaintiff was subjected to excessive force and illegal search and seizures, "to warrant an inference that their conduct was attributable to inadequate training or supervision amounting to deliberate indifference." *Watson v. Doe*, No. 1:15-cv-1356 (BKS/DEP), 2016 WL 347339, at *3 (N.D.N.Y. Jan. 28, 2016) (collecting cases).

Plaintiff also appears to allege, under the first theory, that the admission policy at both the Albany County Jail and Schenectady County Jail to conduct visual body cavity searches "without justification as there was no reason to believe that weapons or contract was being concealed on or in the body" violated his constitutional rights. (Dkt. No. 1 at ¶ 45.)

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, the Court recommends that Plaintiff's § 1983 claims against the City of Albany, the County of Albany, and the County of Schenectady survive initial review and require a response. In so recommending, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

4. <u>Albany Police Department</u>

Although "[a] police department is an administrative arm of [a] municipal corporation[,] . . . [it] cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990)); *accord Jenkins v. Liadka*, No. 10-CV-1223 (GTS/DEP), 2012 WL 4052286, at *5 (N.D.N.Y. Sept. 13, 2012). Therefore, the Court recommends dismissing Plaintiff's § 1983 claims against Defendant Albany Police Department with prejudice.

5. <u>Albany County District Attorney David Soares</u>

There are no allegations in the complaint that support a cognizable claim against Albany County District Attorney Soares. (*See* Dkt. No. 1 at ¶¶ K, O, P, R.) Plaintiff alleges Soares "created a blanket policy as no police officer has been held accountable by his office in regard to perjury, stops or frisks without probably cause, searching both private areas without a warrant, filing accusatory instruments that failed to meet the requirements of CPL 100.40 and CPL 100.15, infringing upon plaintiff due process liberty rights." *Id.* at ¶ R. Plaintiff alleges Soares "also prosecutes in the absence of the jurisdictional requirement of CPL 100.40 and CPL 100.15 as there are never no factual allegations used in [ ] support of the [A]lbany police conclusory allegations." *Id.*

It is well-settled that "prosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.'" *Hill v. City of New York*, 45 F.3d 653, 660-61 (2d Cir. 1995) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). "In determining whether absolute immunity obtains, we apply a 'functional approach,' looking at the function being performed rather than to the office or identity of the defendant." *Id.* at 660

(quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)); *see also Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ("The appropriate inquiry . . . is not whether authorized acts are performed with a good or bad motive, but whether the acts at issue are beyond the prosecutor's authority."); *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (finding that prosecutorial immunity protects prosecutors from liability under § 1983 "for virtually all acts, regardless of motivation, associated with his function as an advocate").

Further, because the police and district attorneys have complete discretion over the decision to investigate, arrest and prosecute, and private citizens lack a judicially cognizable interest in prosecution or non-prosecution of a third party, Plaintiff has no claim against Soares. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another).

Based on the foregoing, the Court recommends dismissing Plaintiff's § 1983 claims against Albany County District Attorney David Soares with prejudice.

      6.      <u>Request for Counsel and Private Investigator</u>

Plaintiff's request for counsel and a private investigator is denied. (Dkt. No. 1 at ¶ 13.) Plaintiff states that if an attorney was assigned to represent him in this action, he would have a "better success rate and more accountability." *Id.* Plaintiff further states that Defendants "should not be allowed to escape accountability" because Plaintiff is a layman and did not attend law school. *Id.* Plaintiff also claims if counsel and a private investigator were assigned to him, "there will be countless cases to establish a pattern" and policy violating constitutional rights. *Id.* at ¶ 54.

When moving for the appointment of counsel, a party must demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *Cooper v. A. Sargenti Co.,*

*Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). Here, Plaintiff has made no such showing. Even if Plaintiff had shown that he is unable to obtain counsel through the private sector or public interest firms, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Similarly, Plaintiff has not provided a sufficient explanation for why the Court should appoint a private investigator. *See, e.g.*, *Barnes v. Alves*, No. 01-cv-6559 EAW, 2014 WL 2435807, at *8 (W.D.N.Y. May 30, 2014) (denying request for appointment of private investigator, and noting if he was able to do so, the plaintiff could personally hire and utilize the services of a private investigator).

In the event the District Court allows this action to proceed, Plaintiff is directed to attempt to obtain counsel from the private sector or public interest firms prior to filing a motion for appointment of counsel.

### 7. Plaintiff's Remaining Claims

The Court has reviewed the remaining allegations of Plaintiff's complaint, all of which seek discovery, are confusing, state legal conclusions, and/or fail to state a claim upon which relief can be granted. (*See* Dkt. No. 1 at ¶¶ 1-12, 14-44; 46-54.)

### D. Conclusion

Based on the foregoing, Plaintiff's section 1983 claims asserted against the Albany Police Department and Albany County District Attorney David Soares fail to state a claim upon which relief may be granted due to deficient pleadings and/or because named Defendants are immune

from suit.  Further, Plaintiff's request for discovery, counsel, and a private investigator is denied without prejudice.

The Court finds that the remaining claims asserted in Plaintiff's complaint, which contain a fair number of detailed factual allegations against the Defendants, is sufficient to pass muster under the relatively modest test of 28 U.S.C. § 1915(e).  No determination is made by the Court, however, as to the merits of those remaining claims, and whether they may withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[7] and it is further

**ORDERED** that the Clerk is directed to amend the caption of the complaint to add County of Albany, Albany County District Attorney David Soares, and County of Schenectady as Defendants; and it is further

**RECOMMENDED** that the complaint be **DISMISSED WITH PREJUDICE** as against Albany Police Department and Albany District Attorney David Soares; and it is further

**RECOMMENDED** that this action be allowed to proceed against all other Defendants, and that Defendants or their counsel be required to file a response as provided for in Rule 12 of the Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiff's requests for discovery, appointment of counsel, and a private investigator are **DENIED WITHOUT PREJUDICE**; and it is further

---

[7]  Plaintiff should note that although his IFP application has been granted, Plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).


Dated: November 28, 2016
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2008 WL 857528
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Richard AUSTIN, Plaintiff,
v.
Brian PAPPAS, John Does, Yonkers
Police Commissioner Charles C. Coles,
Westchester County, Defendants.

No. 04-CV-7263 (KMK)(LMS).
|
March 31, 2008.

**Attorneys and Law Firms**

Mr. Richard Austin, Stormville, NY, pro se.

Rory Carleton McCormick, Esq., Corporation Counsel, City of Yonkers, Yonkers, NY, for Defendants.

*ORDER ADOPTING REPORT
& RECOMMENDATION*

KENNETH M. KARAS, District Judge.

**\*1** Richard Austin ("Plaintiff") filed this suit pursuant to 42 U.S .C. § 1983 ("Section 1983") against Yonkers Police Officer Brian Pappas ("Defendant Pappas"), several John Doe Yonkers Police Officers ("John Doe Defendants"), former Yonkers Police Commissioner Charles C. Cola ("Defendant Cola") (whose name is misspelled in Plaintiff's Complaint as Charles C. Coles), and Westchester County (collectively, "Defendants"), alleging violations of Plaintiff's civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, along with various supplemental state law claims.[1] (Compl.¶¶ 17, 19.) Plaintiff alleged that these violations occurred when Defendants failed to protect Plaintiff from Franklyn Kelley, a private individual who physically attacked Plaintiff during the course of Plaintiff's May 16, 2003 arrest. (*Id.* ¶ 10.) Plaintiff alleged that Defendant Pappas and the John Doe Defendants handcuffed him and pinned him to the ground while Franklyn Kelley repeatedly kicked and punched Plaintiff in the face. (*Id.* ("The officers did nothing to protect the plaintiff from this vicious assault, even though plaintiff was helpless and in their custody [.]").) Defendants moved for summary judgment, and this Motion was referred by Judge McMahon to Chief Magistrate Judge Lisa M. Smith for review pursuant to 28 U.S.C. § 636(b)(1). On August 2, 2007, Magistrate Judge Smith issued a thorough Report and Recommendation ("R & R"), concluding that this Court should grant Defendants' Motion for Summary Judgment on the ground that Plaintiff has failed to demonstrate that there exists a genuine issue of material fact as to whether his constitutional rights were violated. Plaintiff was advised of his right to file objections to the R & R, but he did not do so.

[1]    On August 8, 2005, Plaintiff's claim against Westchester County was dismissed by the Honorable Gerald E. Lynch, to whom this case was initially assigned. On February 28, 2006, the case was transferred to White Plains and reassigned to Judge Colleen McMahon. The case was reassigned to the undersigned on August 6, 2007.

A district court reviewing a report and recommendation " 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.' " *Donahue v. Global Home Loans & Fin., Inc.,* No. 05-CV-8362, 2007 WL 831816, at \*1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C.§ 636(b)(1)(C)). Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, parties may submit objections to a magistrate judge's report and recommendation. The objections must be "specific" and "written," and must be made "within 10 days after being served with a copy of the recommended disposition." Fed.R.Civ.P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party does not submit an objection, " 'a district court need only satisfy itself that there is no clear error on the face of the record.' " *Donahue,* 2007 WL 831816, at \*1 (quoting *Nelson v. Smith,* 618 F.Supp. 1186, 1189 (S.D.N.Y.1985)). In addition, a party's failure to object waives that party's right to challenge the report and recommendation on appeal. *See Fed. Deposit Ins. Corp. v. Hillcrest Assocs.,* 66 F.3d 566, 569 (2d Cir.1995) ("Our rule is that 'failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.' " (quoting *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989))).

**\*2** Here, Plaintiff has not filed objections to the R & R. Accordingly, the Court has reviewed the R & R for clear error only. In so doing, the Court adopts the conclusion reached in the R & R that Defendants' Motion for Summary Judgment should be granted, but the Court does so in part on different grounds than those relied on in the R & R.

First, the Court agrees with Magistrate Judge Smith that Defendants' noncompliance with Local Civil Rule 56.2 should be overlooked because any prejudice resulting from noncompliance was cured by the following: (i) Magistrate Judge Smith advised Plaintiff of the nature of summary judgment during a March 23, 2007 conference; and (ii) Magistrate Judge Smith annexed a Rule 56.2 notice to the R & R, a document to which Plaintiff was free to file objections. See *Narumanchi v. Foster,* No. 02-CV-6553, 2006 WL 2844184, at \*2 (E.D.N.Y. Sept. 29, 2006) (refusing to deny defendant's motion for summary judgment based on failure of defendant to comply with Local Civil Rule 56.2 because "[a]ny prejudice to *pro se* plaintiffs [was] cured" by court's actions).

As expressed in the R & R, though Plaintiff did not file any opposition to Defendants' Motion for Summary Judgment, Defendants were still required to meet their burden of demonstrating to the Court that "no material issue of fact remains for trial." See *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). The Court finds no clear error in Magistrate Judge Smith's determination that Defendants satisfied this burden.

With respect to Defendants Pappas and Cola, the Court finds that Plaintiff has failed to offer any evidence demonstrating that they were personally involved in the alleged violation of Plaintiff's constitutional rights. The " 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977)). For purposes of Section 1983 liability, personal involvement can be established by evidence that:

> '(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,

> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.'

*Id.* at 127 (quoting *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)); *accord Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003); *Schiller v. City of New York,* No. 04-CV-7922, 2008 WL 200021, at \*4 (S.D.N.Y. Jan. 23, 2008); *Fair v.. Weiburg,* No. 02-CV-9218, 2006 WL 2801999, at \*4 (S.D.N.Y. Sept. 28, 2006). Further, a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986); *see also Fair,* 2006 WL 2801999, at \*4 (citing *Bass* ).

**\*3** In support of their Motion for Summary Judgment, Defendants submitted evidence that Defendant Pappas did not directly participate in the arrest of Plaintiff, but he instead arrested Plaintiff's accomplice. For example, on April 8, 2004, at a hearing before the Honorable Richard A. Molea of the Westchester County Court, Defendant Pappas testified that he remained with Plaintiff's accomplice while other officers arrested Plaintiff. (Defs.' Affirmation in Supp., Ex. J, 50-51.) Further, in response to interrogatories served on him by Plaintiff, Defendant Pappas stated that he "did not observe what transpired during the course of plaintiff's arrest." (*Id.,* Ex. L.) Finally, Defendants offer a police report indicating that "Pappas was detaining [Plaintiff's accomplice] in the garage area, as additional units arrived and placed [Plaintiff] into custody." (*Id.,* Ex. C.)

Plaintiff has failed to offer any evidence refuting Defendant Pappas' version of events. In other words, Plaintiff has offered no evidence demonstrating that Defendant Pappas was actually one of the officers who arrested him and allegedly pinned him to the ground while Kelley assaulted him. In fact, during his deposition testimony, Plaintiff admitted that he was not sure whether Defendant Pappas was one of the police officers who

arrested him, and that the reason Defendant Pappas was named as a defendant in the present suit was because Plaintiff had seen his name on Plaintiff's felony complaint. (*Id.,* Ex. G, 32-35.) As such, the unrefuted evidence before the Court demonstrates that Defendant Pappas was not one of the officers directly involved in Plaintiff's arrest. Plaintiff therefore has failed to satisfy a prerequisite to liability under Section 1983-namely that Defendant Pappas had personal involvement in the alleged violation of Plaintiff's constitutional rights. *See Back,* 365 F.3d at 122. Thus, Plaintiff's claim against Defendant Pappas must be dismissed.

Plaintiff alleged that Defendant Cola, Yonkers Police Commissioner at the time of Plaintiff's 2003 arrest, violated Plaintiff's constitutional rights by "authoriz[ing], tolerat[ing], as institutionalized practices, and ratif[ying] the misconduct [of Defendant Pappas and John Doe Defendants]." (Compl.¶ 14.) More specifically, Plaintiff charges Defendant Cola with failure to properly: (1) discipline subordinate officers; (2) take adequate precautions in hiring subordinate officers; (3) report criminal acts by police personnel to the Westchester County District Attorney; and (4) establish a system for dealing with complaints about police misconduct. (*Id.*) Plaintiff does not assert that Defendant Cola directly participated in the violation of his constitutional rights; instead, Plaintiff urges the Court to find Defendant Cola liable under Section 1983 based on his role as supervisor of Defendant Pappas and the John Doe Defendants.

"It is well settled, however, that the doctrine of respondeat superior standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." *See Hayut,* 352 F.3d at 753 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)). Instead, it is necessary to establish a supervisory official's personal involvement in the alleged constitutional violation. *See id.; Fair,* 2006 WL 2801999, at *4.

**\*4** Plaintiff has failed to provide the Court with any evidence from which a reasonable jury could conclude that Defendant Cola was personally involved in the alleged violation of Plaintiff's constitutional rights. Plaintiff has offered no evidence demonstrating that Defendant Cola was aware of and failed to remedy constitutional violations by subordinate officers, or that he acted in a grossly negligent or deliberately indifferent manner

in supervising or training subordinate officers. There is also no evidence in the record to support a theory that Defendant Cola created a policy or custom that fostered and led to the alleged violation of Plaintiff's rights. *See Hayut,* 352 F.3d at 754 (finding as fatal to plaintiff's Section 1983 claim the fact that there existed "no evidence that, after becoming aware of the alleged harassment, any of the [supervisory officials] failed to respond or remedy the situation, that any of these [supervisory officials] created or allowed a policy to continue under which alleged harassment could occur, or that they were grossly negligent in monitoring [the alleged harasser's] conduct"); *Harris v. City of New York,* No. 01-CV-6927, 2003 WL 554745, at *6 (S.D.N.Y. Feb. 26, 2003) ("[P]laintiff has put forth no evidence pointing to defendant ['s] personal involvement in plaintiff's alleged deprivation of rights .... Plaintiff's conclusory allegations regarding defendant['s] alleged supervisory role, without more, cannot withstand summary judgment."). Further, nothing in the record, even drawing all inferences in Plaintiff's favor, suggests any tangible connection between Defendant Cola's training or supervision of subordinate officers and the alleged violation of Plaintiff's rights. In fact, the record contains no evidence with regard to Defendant Cola whatsoever. Without such evidence, no reasonable jury could conclude that Defendant Cola had personal involvement in the alleged violation of Plaintiff's constitutional rights, which means that Plaintiff has failed to satisfy a prerequisite to Section 1983 liability, and therefore that Defendant Cola is entitled to summary judgment in his favor. *See Davis v. Kelly,* 160 F.3d 917, 921 (2d Cir.1998) ("After an opportunity for discovery, undisputed allegations that [a] supervisor lacked personal involvement will ultimately suffice to dismiss that official from the case.").

In sum, the Court finds that Plaintiff has failed to establish the personal involvement of Defendants Pappas and Cola in the alleged violation of his rights. For reasons set forth more fully in the R & R, the Court also dismisses the Complaint as to the John Doe Defendants because Plaintiff's time limit to amend the Complaint in order to substitute in named defendants has lapsed. Therefore, the Court finds it unnecessary to reach the question of whether Plaintiff has adequately established an underlying violation of his constitutional rights. Finally, having determined that no cognizable federal claims exist, the Court will follow Magistrate

Judge Smith's recommendation in declining to exercise jurisdiction over the state law claims.

 **\*5**  Accordingly, it is hereby:

ORDERED that the Report and Recommendation dated August 2, 2007, is ADOPTED on the grounds set forth in this Order; and it is further

ORDERED that Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 is GRANTED.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants, to terminate Defendant's Motion (Dkt. No. 28), and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 857528

---

                                          © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 651919
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Kenneth Carl GROVES, Sr., Plaintiff,

v.

Brett DAVIS, Secure Care Treatment Aid; David
W. Sill, Secure Care Treatment Aid; Thomas
Nicolette, RN, Ward Nurse; Charmaine Bill,
Treatment Team Leader; Jill E. Carver, Social
Worker, Primary Therapist; Edwin Debroize,
Psychologist Assist; Jeff Nowicki, Chief of Mental
Health Treatment Serv.; Terri Maxymillian,
Ph.D., Dir. of Mental Health Serv.; Sgt. Sweet,
Security Services, CNYPC; Michael Hogan,
Comm'r, Dep't of Mental Health, Defendants.

No. 9:11–CV–1317 (GTS/RFT).
|
Feb. 28, 2012.

**Attorneys and Law Firms**

Kenneth Carl Groves, Sr., Marcy, NY, pro se.

### *MEMORANDUM DECISION and ORDER*

Hon. GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kenneth Carl Groves, Sr. ("Plaintiff"),
against numerous employees of the New York State or the
Central New York Psychiatric Center ("Defendants"),
are Plaintiff's motion to proceed *in forma pauperis,* his
motion for a temporary restraining order and preliminary
injunction, and his motion for appointment of counsel.
(Dkt.Nos.2, 3, 4.) [1] For the reasons set forth below,
Plaintiff's motion to proceed *in forma pauperis* is granted;
his motion for a preliminary injunction is denied; his
motion for appointment of counsel is denied; Plaintiff's
claims of deliberate indifference to his mental health
needs against Defendants Bill, Carver and DeBroize are
*sua sponte* dismissed with prejudice; Plaintiff's claims
against Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, and Hogan arising from their alleged
personal involvement in the August 8, 2011 assault are

*sua sponte* dismissed without prejudice and with leave to
amend in this action in accordance with Fed.R.Civ.P.
15; Sgt. Sweet is *sua sponte* dismissed without prejudice
as a Defendant in this action; the Clerk is directed to
issue summonses, and the U.S. Marshal is directed to
effect service of process on Defendants Davis, Sill, and
Nicolette.

[1]     This is the fourth civil rights action filed by Plaintiff
        in this District. Generally, two of these actions arose
        out of Plaintiff's refusal to consent to a strip search
        and the subsequent actions taken against Plaintiff
        as a result of his refusal. *See Groves v. New York,*
        09–CV–0406, Decision and Order (N.D.N.Y. filed
        May 11, 2009) (Hurd, J.) (*sua sponte* dismissing
        complaint pursuant to 28 U.S.C. § 1915[e][2][B] );
        *Groves v. The State of New York,* 9:09–CV–0412,
        Decision and Order (N.D.N.Y. filed Mar. 26, 2010)
        (Sharpe, J.) (granting defendants' motion to dismiss
        the complaint pursuant to Fed.R.Civ.P. 12[b][6] ).
        The third action alleged numerous violations of
        Plaintiff's constitutional rights during the period July
        23, 2009, and August 26, 2009, and was dismissed
        without prejudice upon Plaintiff's request in October,
        2010. *See Groves v. Maxymillian,* 9:09–CV–1002,
        Decision and Order (N.D.N.Y. filed Oct. 8, 2010)
        (Suddaby, J.). As a result, it does not appear that
        the current action is barred because of res judicata,
        collateral estoppel, and/or the rule against duplicative
        litigation.

### I. RELEVANT BACKGROUND

On November 7, 2011, Plaintiff commenced this action
*pro se* by filing a civil rights Complaint, together with
a motion to proceed *in forma pauperis.* (Dkt. Nos.1,
2.) [2] Liberally construed, Plaintiff's Complaint alleges
that the following constitutional violations against him
occurred during his confinement at Central New York
Psychiatric Center ("CNYPC"): (1) Defendants Davis and
Sill used excessive force against him under the Eighth
and/or Fourteenth Amendments; (2) Defendant Nicolette
knew of and failed to take action to protect Plaintiff
from the assault under the Eighth and/or Fourteenth
Amendments; (3) Defendants Bill, Carver, and DeBroize
were deliberately indifferent to his mental health needs
under the Eighth and/or Fourteenth Amendments;
and (4) Defendants Bill, Carver, DeBroize, Nowicki,
Maxymillian, Bosco, and Hogan failed to "adequately
train the staff under their supervision" and to take
appropriate action in response to the incident. (*See*

*generally* Dkt. No. 1.) For a more detailed description of Plaintiff's claims, and the factual allegations giving rise to those claims, the reader is referred to Part III.B of this Decision and Order.

2          At that time, Plaintiff also filed motions for injunctive relief and for appointment of counsel. (Dkt.Nos.3, 4.)

## II. MOTION TO PROCEED *IN FORMA PAUPERIS*

Because Plaintiff sets forth sufficient economic need, the Court finds that Plaintiff may properly commence this action *in forma pauperis.* (Dkt. No. 2.)

## III. *SUA SPONTE* REVIEW OF PLAINTIFF'S COMPLAINT

In light of the foregoing, the Court must now review the sufficiency of the allegations that Plaintiff has set forth in his Complaint in light of 28 U.S.C. § 1915(e)(2)(B). This is because Section 1915(e)(2)(B) directs that, when a plaintiff seeks to proceed *in forma pauperis,* "(2) ... the court shall dismiss the case at any time if the court determines that —... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3]

3          The Court notes that, similarly, Section 1915A(b) directs that a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

### A. Governing Legal Standard

**\*2**  It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n .17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by

the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id* . at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

**\*3** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12.[4] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[5] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28 [citations omitted].[6]

[4]    *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[5]    *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[6]    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, *"Specific facts are not necessary"* to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law—first offered in *Conley* and repeated in *Twombly*—that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

**B. Analysis of Plaintiff's Complaint**

The Court prefaces its analysis of Plaintiff's Complaint by noting that, although Plaintiff is a civilly committed sex offender and no longer a prisoner, the Court will look to cases addressing prisoner's rights in analyzing Plaintiff's claims, because "confinement of civilly committed patients is similar to that of prisoners." *Holly v. Anderson,* 04–CV–1489, 2008 WL 1773093, at *7 (D.Minn. Apr.15, 2008); *see also Morgan v. Rabun,* 128 F.3d 694, 697 (8th Cir.1997) ("The governmental interests in running a state mental hospital are similar in material aspects to that of running a prison."). Thus, whereas claims of excessive force by convicted criminals are analyzed under the Eighth Amendment to the United States Constitution, because Plaintiff is a civilly committed sex offender and no longer a prisoner, his substantive rights to be free from unsafe conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Court stated "[i]f it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional [under the Due Process Clause] to confine the involuntarily committed-who may not be punished at all-in unsafe conditions." *Youngberg,* 457 U.S. at 315–16. As have numerous other courts which have considered the issue, this Court has found that "the standard for analyzing a civil detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard." *Groves v. Patterson,* 09–CV–1002, Memorandum–Decision and Order at *15–16 (N.D.N.Y. filed Nov. 18, 2009). [7]

[7]    *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996) ("[W]hile the Supreme Court has not precisely limned the duties of a custodial official under the Due Process Clause to provide needed medical treatment to a pretrial detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner."); *Walton v. Breeyear,* 05–CV–0194, 2007 WL 446010, at *8, n. 16 (N.D.N.Y. Feb.8, 2007) (Peebles, M.J.) (noting that pretrial detainees enjoy protections under the due process clause of the Fourteenth Amendment parallel to those afforded to sentenced prisoners by the Eighth Amendment); *Vallen v. Carrol,* 02–CV–5666, 2005 WL 2296620, at ——8–9 (S.D.N.Y. Sep.20, 2005) (finding that the Eighth Amendment standard of "deliberate indifference" is the correct one for Section 1983 claims brought by involuntarily committed mental patients based on alleged failures to protect them

that violated their substantive due process rights); *Bourdon v. Roney,* 99–CV–0769, 2003 WL 21058177, at *10 (N.D.N.Y. Mar.6, 2003) (Sharpe, M.J.) ("The standard for analyzing a pretrial detainee's Fourteenth Amendment [conditions of confinement] claim is the same as the Eighth Amendment standard.").

### 1. Excessive Force Claims Against Defendants Davis, Still and Nicolette

**\*4**  Plaintiff alleges that on August 8, 2011, Defendant Davis entered Plaintiff's dorm room at CNYPC and "viciously attacked and brutally assaulted and battered" him. (Dkt. No. 1 at 4.) During the course of this assault, Defendant Sill is alleged to have entered Plaintiff's room and "jump[ed] on the plaintiff's legs holding and pinning them as Defendant Davis [continued to beat Plaintiff]." (*Id.*) As alleged in the Complaint, although Defendant Nicolette knew in advance that this assault was planned, he "remained in the Nurses Station" and "did nothing to interceed [sic] or stop the brutal attack on the plaintiff." (*Id.* at 5.)

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must allege the following: (1) subjectively, that the defendants acted wantonly and in bad faith; and (2) objectively, that the defendants' actions violated "contemporary standards of decency." *Blyden v. Mancusi,* 186 F.3d 252, 262–63 (2d Cir.1999) (internal quotation marks omitted) (citing *Hudson v. McMillian,* 503 U.S. 1, 8 [1992] ).

Here, construing the factual allegations of Plaintiff's Complaint with special leniency, the Court finds that Plaintiff appears to have alleged facts plausibly suggesting that he was subjected to excessive force by Defendants Davis and Sill. In addition, by alleging that Defendants Davis, Sill and Nicolette discussed the assault in advance of it occurring, and that Nicolette was in the vicinity of Plaintiff's room and had an opportunity to intervene to prevent it, the Complaint sufficiently alleges that Defendant Nicolette was personally involved and/or failed to protect Plaintiff from the assault. *See Bhuiyan v. Wright,* 06–CV–0409, 2009 WL 3123484, at *7 (N.D.N.Y. Sept.29, 2009) (Scullin, J.) ("The fact that defendant Davis was not in the room, but was acting as a 'lookout' so that no one came into the room while plaintiff was being beaten, would not absolve him from liability for the assault. An officer's failure to intervene during another officer's use of excessive force can itself constitute an

Eighth Amendment violation unless the assault is "sudden and brief," and the defendant had no real opportunity to prevent it."); *Jeffreys v. Rossi,* 275 F.Supp.2d 463, 474 (S.D.N.Y.2003) (holding that an officer may be personally involved in the use of excessive force if he either directly participates in the assault or if he was present during the assault, yet failed to intervene on behalf of the victim, even though the officer had a reasonable opportunity to do so).

As a result, a response to these claims is required from Defendants David, Sill, and Nicolette. In so ruling, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

### 2. Deliberate Indifference Claims Against Defendants Bill, Carver and DeBroize

Plaintiff alleges that on August 9, 2011, the day after the alleged assault, he attempted to "discuss the incident and what transpired" with Defendants Bill and Carver. (Dkt. No. 1 at 5.) Plaintiff alleges that Defendant Bill told him, "I don't want to discuss this Mr. Groves, we're too busy for your foolishness and the matter is being investigated." (*Id.*) Plaintiff's effort to explain that he was frightened by the incident was rebuffed by Defendant Bill, who told Plaintiff to "grow up." (*Id.* at 5–6.) The following day, Plaintiff attempted to discuss the incident with Defendant Carver, his primary therapist, again without success. A further attempt at discussion later that day was met with Defendant Carver "stating to the plaintiff in a snotty tone 'grow the hell up!' " (*Id.* at 6.) On August 10, 2011, Plaintiff attempted to discuss the incident "and his current fears and feelings," during his Monday afternoon "Process Group," which is facilitated by Defendant DeBroize. As alleged, Defendant DeBroize told Plaintiff and the other group members that the matter was under investigation "so no one could discuss the incident with anyone." (*Id.* at 6.)

**\*5** To state a claim of deliberate indifference to a serious medical and/or mental health need under the Eighth Amendment, a plaintiff must first allege facts plausibly suggesting that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.' " *Ross v. Kelly,* 784 F.Supp.

35, 44 (W.D.N.Y.), *aff'd,* 970 F.2d 896 (2d Cir.1992) (quoting *Estelle v. Gamble,* 429 U.S. at 102, 105–06). The "deliberate indifference standard embodies both an objective and a subjective prong," both of which the plaintiff must establish. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.' " *Id.* (citations omitted). Second, the defendant "must act with a sufficiently culpable state of mind." *Id.*

With regard to the first element, generally, to be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) [citations omitted], *accord, Hathaway,* 37 F.3d at 66; *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998).). [8] Under the subjective component, a plaintiff must also allege facts plausibly suggesting that the defendant acted with "a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. The requisite culpable mental state is similar to that of criminal recklessness. *Wilson v. Seiter,* 501 U.S. 294, 301–03, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A physician's negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a Section 1983 action. *Estelle,* 429 U.S. at 105–06; *Chance,* 143 F.3d at 703. [9]

[8]  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "reasonable doctor or patient would find important and worthy of comment or treatment," a condition that "significantly affects" a prisoner's daily activities, or "the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702.

[9]  Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under Section 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment

when the care provided is 'reasonable.' " *Jones v. Westchester Cnty. Dept. of Corr.,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008). In addition, "disagreements over medications, diagnostic techniques (e .g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention are not adequate grounds for a section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001). However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,* 219 F.3d at 138.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting that Defendants Bill, Carver, and DeBroize acted with deliberate indifference to Plaintiff's serious mental health condition when they declined to discuss the incident of August 8, 2011. There is nothing in the Complaint that even remotely suggests that the requested conversations were integral to Plaintiff's treatment as a convicted sex offender involuntarily committed to CNYPC, or that Defendants' refusal to discuss the incident with Plaintiff when he requested to do so caused Plaintiff to suffer any harm or worsening of his condition. In addition, Plaintiff does not allege that any of these Defendants acted with the requisite culpable state of mind.

Moreover, the statements made by Defendants Bill and Carver that he should "grow up," even if construed as verbal harassment, do not give rise to a cognizable claim that may be pursued under Section 1983. Allegations of verbal harassment are insufficient to support a Section 1983 claim. *Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) ("[A]llegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged .").

**\*6** For these reasons, Plaintiff's deliberate indifference claims against Defendants Bill, Carver, and DeBroize are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). Moreover, because the Court cannot imagine how Plaintiff might correct this claim through better pleading, he is not granted leave to attempt to do so in an amended pleading.[10] Rather, this claim is hereby dismissed with prejudice.

[10] The Court notes that, generally, leave to amend pleadings shall be freely granted when justice so requires. Fed.R.Civ.P. 15(a). However, an opportunity to amend is not required where amendment would be futile. *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994). *John Hancock Mut. Life Ins. Co.,* 22 F.3d at 462. The Second Circuit has explained that "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993); *see Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with [Plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). This rule is applicable even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103.

### 3. Failure to Supervise Claims Against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan

To prevail on a claim under 42 U.S.C. § 1983, a defendant must be personally involved in the plaintiff's constitutional deprivation. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). Generally, for purposes of 42 U.S.C. § 1983, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[11]

[11] *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (adding fifth prong); *Wright,* 21 F.3d at 501 (adding fifth prong); *Williams v. Smith,* 781 F.2d 319, 323–324 (2d Cir.1986) (setting forth four prongs).

Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement. *McKinnon,* 568 F.2d at 934. Rather, a plaintiff must demonstrate " 'a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas,* 04–CV–7263, 2008 WL 857528, at \*2 (S.D.N.Y. Mar.31, 2008) (quoting *Bass v. Jackson,* 790 F.2d 260, 263 [2d Cir.1986] ) (other citation omitted). An official's failure to respond to grievance letters from inmates, however, "does not

establish supervisory liability." *Watson v. McGinnis,* 964 F.Supp. 127, 130 (S.D.N.Y.1997).[12] Moreover, "the law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials." *Pine v. Seally,* 9–CV–1198, 2011 WL 856426, at *9 (N.D.N.Y. Feb.4, 2011).[13]

[12]  *See also Gillard v. Rosati,* 08–CV–1104, 2011 WL 4402131, at *7 (N.D.N.Y. Aug.22, 2011) (Peebles, J.) ("It is well-established that without more, 'mere receipt of letters from an inmate by a supervisory official regarding a medical claim is insufficient to constitute personal liability." [internal quotation marks and brackets omitted] ); *Greenwaldt v. Coughlin,* 93–CV–6551, 1995 WL 232736, at *4 (S.D.N.Y. Apr.19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations."); *Clark v. Coughlin,* 92–CV 0920, 1993 WL 205111, at *5 n. 2 (S.D.N.Y. Jun.10, 1993) ("Courts in this jurisdiction have consistently held that an inmate's single letter does not constitute the requisite personal involvement in an alleged constitutional deprivation to trigger the Commissioner's liability.")

[13]  *See also Bernstein v. N.Y.,* 591 F.Supp.2d 448, 460 (S.D.N.Y.2008) ("Courts within the Second Circuit have determined that there is no constitutional right to an investigation by government officials." [internal quotation marks, brackets and ellipsis omitted] ).

In his Complaint, Plaintiff alleges in wholly conclusory terms that Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan failed to "adequately train the staff under their supervision and fail[ed] to act within the scope and training of the position and job title they hold." (Dkt. No. 1 at 8.) Plaintiff alleges that he submitted a letter of complaint to Defendant Hogan and wrote to Defendant Nowicki on several occasions expressing concern his complaint had not been responded to, only to be advised that in September, 2011 that an investigation was ongoing. (*Id.* at 6–7.) Plaintiff does not allege that any of these Defendants personally participated in the alleged assault on August 8, 2011.

Here, even when construed with the utmost special liberality, Plaintiff's Complaint fails to allege facts plausibly suggesting any personal involvement by these Defendants in the alleged used of excessive force

on August 8, 2011. As a result, Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxmillian, and Hogan arising from this incident are *sua sponte* dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). This dismissal is without prejudice to Plaintiff's right to file an Amended Complaint that corrects the above-described pleading defects, and states a viable claim against these Defendants. The Court notes that, at this early stage of the case, Plaintiff has the right—without leave of the Court— to file an Amended Complaint within the time limits established by Fed.R.Civ.P. 15(a)(1)(B). However, if he seeks to file an Amended Complaint after those time limits, he must file a motion for leave to file an Amended Complaint in accordance with Fed.R.Civ.P. 15(a)(2). In either event, Plaintiff is advised that *any Amended Complaint must be a complete pleading that will replace and supersede the original Complaint in its entirety, and that may not incorporate by reference any portion of the original Complaint. See* N.D.N.Y. L.R. 7.1(a) (4).

**\*7** Finally, although Plaintiff names Sgt. Sweet as a Defendant in the caption of the complaint and in the listing of the parties, he has not set forth in the Complaint any allegations of fact regarding the conduct of this Defendant complained of. (*See generally* Dkt. No. 1.) As a result, the Complaint fails to state a claim upon which relief may be granted and Sgt. Sweet is dismissed from this action without prejudice to Plaintiff's right to file an Amended Complaint as set forth above.

### IV. MOTION FOR INJUNCTIVE RELIEF

A preliminary injunction is an "extraordinary remedy that should not be granted as a routine matter." *Patton v. Dole,* 806 F.2d 24, 28 (2d Cir.1986). In most cases, to warrant the issuance of a preliminary injunction, a movant must show (a) irreparable harm and (b) either (1) a likelihood of success on the merits of the claim or (2) sufficiently serious questions going to the merits, and a balance of hardships tipping decidedly in favor of the moving party. *D.D. ex rel. V.D. v. New York City Bd. of Educ.,* 465 F.3d 503, 510 (2d Cir.2006) (quotation omitted). "The purpose of issuing a preliminary injunction is to 'preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the ... merits.' " *Candelaria v. Baker,* 00–CV–912, 2006 WL 618576, at *3 (W.D.N.Y. Mar.10, 2006) (quoting *Devose v. Herrington,* 42 F.3d 470, 471 [8th Cir.1994] ). Preliminary injunctive relief " 'should not be granted

unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consolidated Edison Co. of New York, Inc.,* 409 F.3d 506, 510 (2d Cir.2005) (quoting *Mazurek v. Armstrong,* 520 U.S. 968, 972 [1997] ). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore,* 409 F.3d at 510 (citing *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). The same standards govern consideration of an application for a temporary restraining order. *Perri v. Bloomberg,* 06–CV–0403, 2008 WL 2944642, at *2 (E.D.N.Y. Jul.31, 2008) [citation omitted]. The district court has broad discretion in determining whether to grant a preliminary injunction. *Moore,* 409 F.3d at 511.

"The Second Circuit has defined 'irreparable harm' as 'certain and imminent harm for which a monetary award does not adequately compensate,' noting that 'only harm shown to be non-compensable in terms of money damages provides the basis for awarding injunctive relief.' " *Perri,* 2008 WL 2944642, at *2 (citing *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.,* 339 F.3d 101, 113–14 [2d Cir.2003] ); *see also Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir.2002) ("To establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.") (internal quotation omitted). Speculative, remote or future injury is not the province of injunctive relief. *Los Angeles v. Lyons,* 461 U.S. 95, 111–12, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also Hooks v. Howard,* 07–CV–0724, 2008 WL 2705371, at *2 (N.D.N.Y. Jul.3, 2008) (citation omitted) ("Irreparable harm must be shown to be imminent, not remote or speculative, and the injury must be such that it cannot be fully remedied by monetary damages.").

**\*8** Plaintiff has submitted a document entitled "Order to Show Cause for Preliminary Injunction and Tempor[ary] Restraining Order." (Dkt. No. 3.) Construed liberally, Plaintiff's submission seeks a temporary restraining order and injunctive relief enjoining Defendants from "submitting and filing false and untrue statements and reports" regarding the August 11, 2011 incident, and to "stop all retaliatory actions against the plaintiff ...." (*Id.* at 1.) Plaintiff also seeks an "Order of Seperation [sic]" directing that Defendants Davis, Sill, Nicolette, Bill,

Carver and DeBroize be "restrained from being within 100 feet from the plaintiff in any form or matter." (*Id.* at 2.)

The Court has reviewed Plaintiff's motion papers thoroughly and considered the claims asserted therein in the light most favorable to Plaintiff, as a *pro se* litigant. Based upon that review, the Court finds that the harm Plaintiff alleges is purely speculative and, therefore, not "irreparable." Plaintiff's motion is supported only by a recitation of the alleged assault in August, 2011. (*Id.* at 1–4.) Plaintiff has not supported the claims of ongoing misconduct set forth in his motion papers with any factual allegations, such as the dates on which the misconduct occurred, the nature of the injuries he claims to have suffered, the identities of the persons responsible for the conduct he seeks to enjoin, or the relationship between those actions and the claims asserted in his Complaint. Simply stated, Plaintiff's alleged fear of future wrongdoing by the Defendants is not sufficient to warrant the extraordinary remedy of preliminary injunctive relief.

The Court further notes that the requested injunctive relief cannot be granted unless there is also proof that Plaintiff has a likelihood of succeeding on the merits of his claim, or evidence that establishes sufficiently serious questions going to the merits of his claim and a balance of hardships tipping decidedly toward him. *See Covino v. Patrissi,* 967 F.2d 73, 77 (2d Cir.1992). Plaintiff has failed to submit *proof or evidence* that meets this standard. Plaintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief. *See Ivy Mar Co. v. C.R. Seasons Ltd.,* 907 F.Supp. 547, 561 (E.D.N.Y.1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Hancock v. Essential Resources, Inc.,* 792 F.Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). Without evidence to support his claims that he is in danger from the actions of anyone at CNYPC, the Court will not credit Plaintiff's conclusory allegations that he will be retaliated against or harmed in the future.

Plaintiff has failed to establish either of the two requisite elements discussed above. As a result, Plaintiff's request for a temporary restraining order and/or injunctive relief is denied.

## V. MOTION FOR APPOINTMENT OF COUNSEL

**\*9** Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin,* 114 F.3d 390, 392–93 (2d Cir.1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 [2d Cir.1986] ). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[14] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* 899 F.Supp. 972, 974 (N.D.N.Y.1995) (McAvoy, C.J.) (citing *Hodge,* 802 F.2d at 61).

[14]  For example, a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994); *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir.1989) [citation omitted].

Upon due consideration, the Court finds that the relevant factors weigh decidedly against granting Plaintiff's motion at this time. For example, the Court finds as follows: (1) the case does not present novel or complex issues; (2) it appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action; (3) while it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel," *Velasquez,* 899 F.Supp. at 974; (4) if this case survives any dispositive motions filed by Defendants, *it is highly probable that this Court will appoint trial counsel at the final pretrial conference;* (5) this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation; and (6) Plaintiff's motion for counsel is not accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

For these reasons, Plaintiff's motion for the appointment of counsel is denied without prejudice. After the Defendants have responded to the allegations in the Complaint which survive *sua sponte* review, and the parties have undertaken discovery, Plaintiff may file a second motion for the appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any second motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector.

 **\*10** **ACCORDINGLY,** it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is *GRANTED;* [15] and it is further

[15]  Plaintiff should note that he will still be required to pay fees that he may incur in this action, including but not limited to copying and/or witness fees.

**ORDERED** that Plaintiff's motion for injunctive relief (Dkt. No. 3) is *DENIED;* and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is *DENIED* **without prejudice;** and it is further

**ORDERED** that Plaintiff's claims of deliberate indifference against Defendants Bill, Carver and DeBroize are *sua sponte* *DISMISSED* **with prejudice** pursuant to 28 U.S.C. § 1915(e)(2) (B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's claims against Defendants Bill, Carver, DeBroize, Nowicki, Maxymillian, and Hogan arising from their alleged personal involvement in the August 8, 2011 incident are *sua sponte* **DISMISSED without prejudice and with leave to amend** in this action in accordance with Fed.R.Civ.P. 15 (as described above in Part III.B.3. of this Decision and Order), pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Defendant Sweet is *sua sponte* **DISMISSED without prejudice and with leave to be reinstated** as a Defendant in this action in accordance with Fed.R.Civ.P. 15, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is otherwise accepted for filing (i.e., as to the claims against Defendants Davis, Sill, and Nicolette arising from the August 8, 2011 incident); and it is further

**ORDERED** that Plaintiff provide a summons, USM–285 form and a copy of the complaint for Defendant Davis, Sill and Nicollette for service, and upon receipt from Plaintiff of the documents required for service of process, the Clerk shall (1) issue summonses and forward them, along with copies of the Complaint to the United States Marshal for service upon the remaining Defendants, and (2) forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that, after service of process on Defendants, a response to the Complaint shall be filed by the Defendants or their counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261–7367. **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket .** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to so may result in the dismissal of this action.** All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 651919

---

End of Document

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag - Negative Treatment

Opinion Clarified on Denial of Reconsideration by Blond v. City of Schenectady, N.D.N.Y., December 15, 2010

2010 WL 4316810

Only the Westlaw citation is currently available.

United States District Court,

N.D. New York.

Mark W. BLOND, Jr., Plaintiff,

v.

The CITY OF SCHENECTADY, Mayor Brian Stratton, SPD Chief Chaires, SPD Officer Daniel McDonald, SPD Officer St. Onge (Phonetic Spelling), SPD Det. Sherri Barnes, Individually, and in Their Official Capacities, Defendants.

No. 10–CV–0598.
|
Oct. 26, 2010.

**Attorneys and Law Firms**

Mark W. Blond, Jr., Romulus, NY, pro se.

Alaina K. Laferriere, Carter, Conboy Law Firm, Albany, NY, Luke C. Davignon, Carter, Conboy Law Firm, Albany, NY, for Defendants.

### DECISION and ORDER

THOMAS J. McAVOY, Senior District Judge.

**\*1** Plaintiff commenced the instant action under 42 U.S.C. § 1983 against officials and employees of the City of Schenectady alleging his constitutional rights were violated while he was arrested and interrogated by the police. Defendants now move to dismiss pursuant to Fed.R.Civ.P. 12(c). Plaintiff cross-moves to amend his Complaint.

### I. FACTS

For purposes of the instant motion, the following factual allegations are deemed to be true and all reasonable inferences are drawn in Plaintiff's favor.

On May 4, 2008, Plaintiff walked out the back door of his house. Defendant City of Schenectady Police Officer McDonald approached Plaintiff in an aggressive manner and "nearly broke the plaintiff's arm" before placing him in handcuffs. Plaintiff did not resist Officer McDonald. Without being informed of his Miranda warnings or advised of the charges against him, Plaintiff was placed in the back of McDonald's car so McDonald could question third parties. While in the car, Plaintiff asked Officer St. Onge to "disable his car that was parked in the back yard of the apartment." Officer St. Onge slammed the door shut in Plaintiff's face. "[T]he plaintiff made a second attempt to have his property protected with the same result of officer St. Onge slamming the police car door shut on the plaintiff." "This made the already alcohol induced plaintiff angry, in which he began hitting his head against the police car window (rear passenger side)." Officer St. Onge observed Plaintiff hitting his head against the window, but did nothing. Plaintiff hit his head against the police car window 4–5 times, after which the window shattered.

Plaintiff was not bleeding and did not sustain any cuts from having broken the car window. McDonald "ran from the backyard to the front and tried to rip the plaintiff out of the window that was broken." McDonald "then decided to open the police car door, where he and officer St. Onge tried to push [Plaintiff] into a[f]ire [h]ydrant." "[P]laintiff was instead pushed by both officer's [sic] to the ground where the glass was, [where] both officer's [sic] began kneeing the plaintiff in his lower back and the back side of his neck." Plaintiff's face was "pressed into the glass on the ground." McDonald sprayed a can of pepper spray in Plaintiff's face.

Plaintiff was left "on the ground with his face burning in pain" for approximately 30 minutes until another vehicle arrived to transport him to the police station. During this time, Plaintiff asked if he could use the hose to rinse the pepper spray from his eyes and face. The officers did not respond to Plaintiff's request.

Plaintiff was transported to the police station where pictures were taken of his face. After the pictures were taken, Plaintiff was permitted to rinse his face and eyes. Plaintiff believed he had glass in his eyes "from the oficer's [sic] pressing his face into the glass on the ground." An ambulance was called and Plaintiff was taken to the hospital. "The nurse flushed out the plaintiff's eyes and found no glass." "The plaintiff was released from the hospital feeling dizzy back into the custody of the

Schenectady police, where Defendant Detective Sherri Barnes question[ed] the plaintiff without his attorney and after his head injury."

## II. STANDARD OF REVIEW

### a. *Motion for Judgment on the Pleadings*

**\*2** Defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). A Rule 12(c) motion is "designed to provide a means of disposing of cases when the material facts are not in dispute between the parties." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed.2010). A motion under Rule 12(c) is only useful if "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." *Id.*

The standard of review for a motion for judgment on the pleadings under Rule 12(c) is the same as for a Rule 12(b)(6) motion to dismiss. *Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.2006); *Sharpe v. Taylor,* 2009 WL 1743987 at \*6 (N.D.N.Y. June 18, 2009). The Court must "accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Rosner v. Bank of China,* 349 F. App'x 637, 638 (2d Cir.2009). To survive a motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.

The Court recognizes Plaintiff is proceeding pro se and, accordingly, his pleadings are held to a "less stringent standard than formal pleadings drafted by lawyers." *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (quoting *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Plaintiff's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006); *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006); *Forsyth v. Fed'n Employment & Guidance Serv.,* 409 F.3d 565, 569 (2d Cir.2005). However, *pro se* litigants are not exempt

"from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983).

### b. *Motion to Amend the Complaint*

Plaintiff cross-moves to file an amended complaint. A party seeking to amend a pleading more than 21 days after the filing of a responsive pleading may do so with the consent of all parties or with leave from the Court. Fed.R.Civ.P. 15(a)(2). Plaintiff was previously advised that:

> Plaintiff may only amend his Complaint by motion that is in compliance with Local Rule 7.1., including a notice of motion and a supporting affidavit. Also, any motion to amend or supplement must be accompanied by an affidavit (*see* L.R. 7.1(a)(2)). Furthermore, "[a]n unsigned copy of the proposed amended pleading must be attached to the motion brought under Fed.R.Civ.P. 14, 15, 19–22." L.R. 7.1(a)(4). This proposed amended pleading must be a complete pleading, which will supersede the original pleading in all respects. *Id.* Plaintiff's proposed amended pleading shall not incorporate by reference any portion of any prior pleading. *Id.*

**\*3** Dkt. No. 9. Although Plaintiff has moved for leave to amend, he has not attached an unsigned copy of the proposed amended pleading to his motion papers and his motion does not "set forth specifically the proposed amendments and identify the amendments in the proposed pleading." Local Rule 7.1(a)(4). Because Plaintiff has not complied with the requirements of Local Rule 7.1, his motion is DENIED with leave to renew.

## III. DISCUSSION

Defendants move to dismiss the Complaint in its entirety. For Plaintiff to succeed on a claim under 42 U.S.C. § 1983 claim, he must prove that the defendant, while acting under color of state law, deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States. *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010); *see* 42 U.S.C. § 1983. A civil rights complaint "must contain specific allegations of fact which indicate a deprivation of constitutional [or federal statutory] rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under § 1983." *Alfaro*

*Motors, Inc. v. Ward,* 814 F.2d 883, 887 (2d Cir.1987). A defendant's personal involvement in a § 1983 claim is a prerequisite to an award of damages. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). A plaintiff must allege specific facts to demonstrate that a particular defendant was personally or directly involved in the violation. *Provost v. City of Newburgh,* 262 F.3d 146, 155 (2d Cir.2001). The requirement of personal involvement may be satisfied by showing that the defendant: (1) personally participated in the violation; (2) was grossly negligent in supervising subordinates who committed the wrongful acts; or (3) exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring. *Provost,* 262 F.3d at 154; *see also Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)).

### a. *The City of Schenectady*

The City of Schenectady moves to dismiss the claims against it on the ground that Plaintiff has failed to demonstrate a violation of any rights caused by municipal policy or custom. A municipality may not be held liable under Section 1983 solely on the doctrine of *respondeat superior. Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To be held liable for a constitutional violation, a municipality must have adopted a policy or custom that caused a deprivation of constitutional rights, or it must have directly caused an employee to violate another's constitutional rights. *Monell,* 436 U.S. at 692; *see Ximines v. George Winqate High Sch.,* 516 F.3d 156, 160 (2d Cir.2008). Here, Plaintiff fails to allege sufficient facts to support a reasonable inference that a municipal policy or custom resulted in a deprivation of his rights. Accordingly, Plaintiff's claims against the City of Schenectady must be DISMISSED.

### b. *The Mayor and the Chief of Police*

**\*4** The Mayor and the Chief of Police move to dismiss the claims against them on the ground that Plaintiff failed to plead any personal involvement by them. As previously noted, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). Here, Plaintiff does not allege any facts plausibly indicating that either the Mayor or the Chief of Police Chief were personally involved in any alleged constitutional violations arising from his arrest, incarceration, or prosecution. Plaintiff similarly fails to plead sufficient facts to state a claim under the standards for supervisory liability applicable to § 1983 claims. Accordingly, Plaintiff's claims against the Mayor and the Chief of Police must be DISMISSED.

### c. *False Arrest, Malicious Prosecution, Failure to Provide Miranda Warnings, and Coercive Questioning*

Defendants move to dismiss any false arrest and malicious prosecution claims on the ground that Plaintiff does not allege that the criminal charges were disposed of in his favor. Plaintiff does not allege in his Complaint that any criminal actions against him were disposed of in his favor. While the Complaint does allege facts suggesting that Plaintiff was arrested, it makes no claim that the arrest was without probable cause. Accordingly, any malicious prosecution and false arrest claims must be DISMISSED.

Defendants move to dismiss any claim concerning the failure to administer Miranda warnings on the ground that it does not give rise to a private cause of action for damages. A Section 1983 claim cannot stand solely on the basis of an alleged failure to administer Miranda warnings. *Deshawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 346 (2d Cir.1998) ("[P]laintiffs cannot base a § 1983 claim solely on a law enforcement officer's failure to administer Miranda warnings...."); *Neighbor v. Covert,* 68 F.3d 1508, 1510–1511 (2d Cir.1995) ( "[E]ven if we were to assume that [the plaintiff's] Miranda rights had been violated, that violation, standing alone, would not form a basis for liability under § 1983."). There is no allegation that coercion was applied to obtain a waiver of Plaintiff's rights against self-incrimination and/ or to obtain a inculpatory statements or that any such statements were then used against Plaintiff in criminal proceedings. Accordingly, Plaintiff fails to state a claim upon which relief can be granted. *Id.* Further, because it appears that Plaintiff is currently incarcerated for crimes for which he was arrested in May 2008, any such claims may run afoul of the rule set forth in *Heck v. Humphrey,* 512 U.S. 477, 486–89, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (a Section 1983 suit for damages that "would necessarily imply the invalidity of [the plaintiff's] conviction or sentence" is not cognizable, unless the plaintiff can show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

#### d. *Inadequate Medical Care*

**\*5** To the extent Plaintiff asserts a Fourteenth or Eighth Amendment claim of inadequate medical care, any such claim must be dismissed because he failed to allege facts plausibly suggesting an unconstitutional deprivation of medical treatment. To establish such a claim, Plaintiff must show that defendants were deliberately indifferent to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). The deliberate indifference standard contains both an objective element and a subjective element. The former requires that the alleged deprivation of care be sufficiently serious in objective terms: the plaintiff's condition must present a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway,* 37 F.3d at 66. The subjective element requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. *Id.*

Here, Plaintiff's allegations against Defendants are insufficient to establish a constitutional deprivation. Plaintiff fails to allege a serious medical condition for which he sought and was denied treatment. Although Plaintiff was sprayed with pepper spray and he was not permitting to rinse his eyes for thirty to sixty minutes, this is insufficient to state a claim. *See Strassner v. O'Flynn,* 2006 WL 839411, at \*8 (W.D.N.Y.2006) (and cases cited therein) (exposure to temporary discomfort of pepper spray is not a serious medical need). Plaintiff similarly fails to allege what harm, if any, resulted from the delay in treatment. Moreover, there are insufficient allegations of deliberate indifference to any medical need. Once he was brought to the police station and pictures were taken, Plaintiff was permitted to rinse his face. To the extent Plaintiff complained of glass in his eye (which could constitute a serious medical need), an ambulance was called and Plaintiff was taken to the hospital where a nurse rinsed his eye and did not find any glass. Accordingly, Plaintiff's claim of inadequate medical care must be DISMISSED.

#### e. *Excessive Force and Failure to Intervene*

Defendants next move to dismiss the excess force and failure to intervene claims. When evaluating an excessive use of force claim under the Fourth Amendment, "courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.' " *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir.2006) (quoting *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Courts measure the reasonableness of the use of force by considering "the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest." *Parmley,* 465 F.3d at 61 (quoting *Thomas v. Roach,* 165 F.3d 137, 143 (2d Cir.1999)).

**\*6** A police officer may use some degree of force when making an arrest, but the amount of force "must be reasonably related to the nature of [the] resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan v. Gagnier,* 225 F.3d 161, 166 (2d Cir.2000). The court must examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Id.* Dismissing an excessive force claim is appropriate where "no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 123 (2d Cir.2004). For a plaintiff to prevail on a motion to dismiss, he must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." *Lennon v. Miller,* 66 F.3d 416, 426 (2d Cir.1995).

Defendants contend that the use of pepper spray by an arresting officer does not by itself rise to the level of excessive use of force. In some cases, an unconstitutional act or injury may be so *de minimis* that the act cannot rise to the level of a constitutional violation as a matter of law. *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993) ("[A] *de minimis* use of force will rarely suffice to state

a constitutional claim."). The Second Circuit has noted, however, that "infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects ... and, as such, its use constitutes a significant degree of force." *Tracy v. Freshwater,* —— F.3d ——, ——, 2010 WL 4008747 at *7 (2d Cir. Oct.14, 2010). "Accordingly, a number of our sister circuits have made clear that it should not be used lightly or gratuitously against an arrestee who is complying with police commands or otherwise poses no immediate threat to the arresting officer." *Id.* In *Tracy,* the Second Circuit held that the use of pepper spray on an individual who was handcuffed and was not offering physical resistance could be unreasonable under the circumstances. *Id.* Although Plaintiff admits to being drunk and angry and to having broken out the window of the police car, he also claims to have been handcuffed and placed on the ground with two police officers on top of him at the time he was pepper sprayed. These allegations are sufficient to plausible state a claim for the use of excessive force against the officer using the pepper spray and for a failure to intervene against the officer who was present but failed to intercede. *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988).

## IV. CONCLUSION

**\*7** For the foregoing reasons, Defendants' motion to dismiss is GRANTED as follows:

a. the claims against the City of Schenectady, the Mayor, and the Chief of Police are DISMISSED IN THEIR ENTIRETY; and

b. and claims alleging malicious prosecution, false arrest, the failure to provide medical care, or arising out of the failure to administer Miranda warnings are DISMISSED.

In all other regards, the motion to dismiss is DENIED. Plaintiff's motion to for leave to amend his original complaint is DENIED WITH LEAVE TO RENEW UPON PROPER PAPERS.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4316810

---

**End of Document**                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 347339
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Tyrone Watson, Plaintiff,

v.

John Doe, Kingston Police
Department, et al. Defendants.

1:15-cv-1356 (BKS/DEP)
|
Signed 01/28/2016

**Attorneys and Law Firms**

Tyrone Watson, 13-A-4239, Eastern NY Correctional
Facility, Box 338, Napanoch, NY 12458, Pro se Plaintiff.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge

### I. INTRODUCTION

Plaintiff Tyrone Watson, a New York State inmate,
commenced this civil rights action under 42 U.S.C. § 1983,
against two John Doe defendants who are members of the
Kingston Police Department. Dkt. No. 1. Plaintiff alleges
that defendants used excessive force against him during
an unlawful arrest on October 18, 2012, and refused him
medical attention for his injuries. *Id.*

Plaintiff's complaint and application to proceed *in forma
pauperis* were forwarded to United States Magistrate
Judge David E. Peebles to review the sufficiency
of the claims under 28 U.S.C. § 1915(e). [1] On
December 21, 2015, Magistrate Judge Peebles issued
a Report, Recommendation, and Order recommending
that plaintiff's Fourteenth Amendment deliberate medical
indifference claim be dismissed, without prejudice, with
leave to amend. Dkt. No. 6, p. 12. Judge Peebles
further recommended that in the event the Report
Recommendation is adopted and plaintiff fails to amend
his complaint by the deadline set by the assigned district
judge, plaintiff's complaint be accepted for filing, except
as to his deliberate medical indifference claim, and that
the Clerk of the Court add the City of Kingston Chief of
Police, Gilles M. Larochelle, as a defendant for purposes

of service and discovery. *Id.* Magistrate Judge Peebles
advised plaintiff that, under 28 U.S.C. § 636(b)(1), failure
to file written objections to the Report Recommendation
within fourteen days "will preclude appellate review." *Id.*

[1]  Section 1915(e) directs that when a plaintiff seeks to
proceed in forma pauperis, "the court shall dismiss
the case at any time if the court determines that ... the
action ... (i) is frivolous or malicious; (ii) fails to state
a claim on which relief may be granted; or (iii) seeks
monetary relief against a defendant who is immune
from such relief." 28 U.S.C. § 1915(e)(2)(B).

On January 7, 2016, plaintiff filed an amended complaint.
Dkt. No. 7. The amended complaint contains additional
facts regarding plaintiff's excessive force, false arrest, and
deliberate indifference claims. *Id.* The amended complaint
also contains allegations, which, viewed liberally, appear
to assert a municipal liability claim under *Monell v. Dep't
of Social Servs.*, 436 U.S. 658 (1978), against the City of
Kingston. *Id.* To date, plaintiff has not filed any objections
to the Report Recommendation.

### II. STANDARD OF REVIEW

As no objections to the Report Recommendation have
been filed, and the time for filing objections has expired,
the Court reviews the Report Recommendation for clear
error. *See Glaspie v. N.Y.C. Dep't of Corr.*, No. 10
CV 00188(GBD)(JCF), 2010 WL 4967844, at *1, 2010
U.S. Dist. LEXIS 131629, at *2-3 (S.D.N.Y. Nov. 30,
2010) (explaining that when no objections to report and
recommendation are made, "the Court may adopt [it] if
there is 'no clear error on the face of the record.'") (quoting
*Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253
(S.D.N.Y. 2005)).

### III. DISCUSSION

#### A. Excessive Force and False Arrest

**\*2**  The Court has reviewed the Report Recommendation
with respect to the excessive force and false arrest
claims for clear error and found none. The Court
therefore adopts Magistrate Judge Peebles' conclusion
that plaintiff's allegations asserting excessive force and
false arrest are sufficient to survive review under 28 U.S.C.
§ 1915(e). Dkt. No. 6, p. 7. As the amended complaint only
supplements the facts regarding the incident which forms
the basis for plaintiff's excessive force and unlawful arrest
claims, *see* Dkt. No. 1, p. 5; Dkt. No. 7, pp. 2-3, the Court

likewise concludes that these claims, as amended, survive review under § 1915(e).

**B. Deliberate Indifference**

Magistrate Judge Peebles found that the original complaint failed to allege sufficient facts to state a claim that the defendant police officers were deliberately indifferent to his serious medical needs. In light of the fact that plaintiff has filed an amended complaint, however, which adds new allegations regarding the deliberate indifference claim, Magistrate Judge Peebles' recommendation that the deliberate indifference claim in the complaint be dismissed is now moot. The Court has therefore considered the sufficiency of the amended complaint, in light of 28 U.S.C. § 1915(e)(2) (B), to determine whether the new factual allegations concerning deliberate medical indifference cure the deficiencies identified in the Report Recommendation. After considering the allegations in the amended complaint liberally, with deference to plaintiff's *pro se* status, the Court finds that plaintiff has failed to state a claim of deliberate medical indifference.

In the amended complaint, plaintiff alleges that John Doe #2 "punched [him] in the face;" that both officers "wrestled [him] to the ground;" and that he was "being choked and told to stop resisting." Dkt. No. 7, p. 2. Plaintiff alleges that his "nose was bleeding" and he "was barely coherent." *Id.* Plaintiff alleges that after he was put in the police car he "asked to be taken to the hospital, not knowing if my nose was broken or not; because it wouldn't stop bleeding." *Id.* He alleges that the officers ignored him and brought him "straight to the police station." He alleges that at the police station he again asked to be brought to the hospital "because my nose was still bleeding." *Id.* Plaintiff states that he was "once again ignored," but does not identify who at the police station ignored his request. Plaintiff asserts that the defendants "acted with deliberate indifference, fully aware of the substantial risk of serious harm exist [sic] at the time of the incident." *Id.* at 3.

A claim of deliberate indifference to serious medical needs has an objective prong and a subjective prong. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). As set forth in Magistrate Judge Peebles' Report Recommendation, to establish a claim of deliberate medical indifference, the objective component requires a plaintiff to allege that the deprivation was "sufficiently

serious;" the subjective component requires a plaintiff to allege and that the defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994); *Caiozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009) (applying *Farmer* test to pre-trial detainees). Factors that should be considered in assessing whether a medical need is sufficiently serious include: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

**\*3** Here, plaintiff has not alleged that his nose was broken; nor has he identified any medical treatment that he needed. Plaintiff did not allege how long his nose was bleeding, or describe any pain associated with his injury. Thus, even viewing his pro se allegations with leniency, the allegations fail to allege a serious medical need. *See Munlyn v. Pietrie*, No. 13-CV-6170FPG, 2014 WL 3695488, at \*6, 2014 U.S. Dist. LEXIS 101274, at \*16 (W.D.N.Y. July 24, 2014) (finding that the complaint failed to allege a serious medical condition where only the allegation was that the plaintiff "was 'in pain,'" and there were no allegations regarding, among other things, "the level or extent of the pain ... any resulting inability to engage in normal activities, or any harm consequently experienced or likely to occur."). Further, although plaintiff alleged that he asked the defendant officers to take him to the hospital because his nose "wouldn't stop bleeding," Dkt. No. 7, ¶ 8, he has not alleged that he told the officers that he was in pain or that his nose was broken. Thus the complaint, even construed liberally, fails to allege that the officers were aware that their failure to take plaintiff to the hospital for prompt medical treatment posed a substantial risk of serious harm to plaintiff. *Hathaway*, 99 F.3d at 552 (holding that the subjective component requires that "the charged official must act with a sufficiently culpable state of mind," which "is the equivalent of criminal recklessness."). *C.f.*, *Lasher v. City of Schenectady*, No. 02-CV-1395, 2004 WL 1732006, at \*5, 2004 U.S. Dist. LEXIS 14870, at \*17 (N.D.N.Y. Aug. 3, 2004) (finding evidence that plaintiff's nose was broken and bleeding for approximately two hours raised a triable issue of fact regarding a serious medical need); *Riles v. Bannish*, No. 3:10-CV-652 (RNC),

2010 WL 3169391, at \*4, 2010 U.S. Dist. LEXIS 80920, at \*11 (D. Conn. Aug. 11, 2010) (finding allegations that doctor denied pain medication, after plaintiff complained of excruciating pain, and failed to timely diagnose and treat the plaintiff's broken nose were sufficient to state a claim of deliberate indifference). Because it is possible that plaintiff could state a plausible medical indifference claim, the claim is dismissed with leave to amend. If plaintiff seeks to amend the complaint, he should note that any amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). He should further note the information provided by Magistrate Judge Peebles in the Report Recommendation. Dkt. No. 6, pp. 9-10.

### C. Municipal Liability – *Monell*

A municipality may not be held liable under § 1983 on the basis of respondeat superior. *Monell*, 436 U.S. at 694-95. Rather, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691. In order to sustain a § 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation, and that the violation resulted from an identified municipal policy or custom. *Monell*, 436 U.S. at 694-695. A municipal policy or custom may be established by any of the following: (1) a formal policy, officially promulgated by the municipality, *Id.* at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483-84; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1985) (plurality opinion); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Read liberally, the amended complaint appears to allege, under the fourth theory, that the City of Kingston [2] had a custom or policy of tolerating the use of excessive force and police misconduct in executing arrests and that it failed to properly train or supervise its officers in these areas. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Here, plaintiff alleges that "Kingston Police Chief, Gilles M. Larochelle is responsible for teaching his officers the protocol and etiquette when dealing with civilians in the community." Dkt. No. 7, ¶ 4. Plaintiff further alleges that the "deliberate and extreme excessive force, and police brutality, and unlawful arrests" he allegedly suffered "at the hands of the Kingston Police Department," Dkt. No. 7, ¶ 10, were not "isolated incident[s]," Dkt. No. 7, ¶ 9, but rather part of a "patern" [sic] of unconstitutional conduct that has existed in "the Kingston Police Department from 2012-back to 1995." Dkt. No. 7, ¶ 10. In addition to his allegations concerning his October 2012 excessive force and false arrest claims that are the subject of this action, plaintiff recounts incidents from July 2012 and March 1995 during which officers from the Kingston Police Department allegedly subjected him to excessive force and unlawfully arrested him. *See, e.g.*, Dkt. No. 7, ¶ 9 ("The officer grabs my arm and with his other arm chokes me while another officer puts handcuffs on me"); Dkt. No. 7, ¶ 10 ("while laying down on his "stomach in the mud ... [t]he officer hits me in the temple area of my head knocking me out. When I wake up the police Rottweiler was ripping my thigh apart on my right leg")." *Id.* These assertions, read liberally in combination with the facts in the complaint, sufficiently allege a series of incidents during which City of Kingston police officers subjected him to excessive force and falsely arrested him to warrant an inference that their conduct was attributable to inadequate training or supervision amounting to deliberate indifference. *See Tyus v. Newton*, No. 3:13-CV-1486 SRU, 2015 WL 1471643, at \*11, 2015 U.S. Dist. LEXIS 42089, at \* 29-30 (D. Conn. Mar. 31, 2015) ("In view of the number of alleged unconstitutional traffic stops, searches, and arrests involving the plaintiff and at least one other individual prior to the incidents involving the plaintiff, I conclude that the plaintiff has alleged sufficient facts to state a plausible claim that the City of New London had a custom or policy of tolerating police misconduct and acted with deliberate indifference by poorly training or supervising its officers regarding motor vehicle stops, detentions, pat-down and body cavity searches, and arrests"); *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2012 WL 3871517, at \*\*4–5, 2011 U.S. Dist. LEXIS 95619, at \*12 (S.D.N.Y. Sept. 6, 2012) (denying motion for judgment on the pleadings regarding municipal liability because plaintiff alleged "a string of

incidents in which she was victimized by multiple officers in multiple locations, both on and off City property" as well as "various other instances of male police officers taking sexual advantage of females under their custody or control")

2    Although not identified in the caption as a defendant, affording plaintiff the solicitude he is due as a pro se litigant, the Court construes the amended complaint as raising a claim against the City of Kingston. *See Gonzalvo v. State of New York*, No. 9:11–cv–0909, 2013 WL 4008881, at *2, 2013 U.S. Dist. LEXIS 108490, at * *6-7 (N.D.N.Y. July 10, 2013) (district court's authority to substitute defendants in pro se complaint sua sponte is "well supported," collecting cases), *report and recommendation adopted by Gonzalvo v. State of New York*, No. 9:11-cv-0909, 2013 WL 4008881, 2013 U.S. Dist. LEXIS 108403 (N.D.N.Y. Aug. 2, 2013). The Clerk of Court is directed to amend the caption accordingly.

### IV. CONCLUSION

**\*4** For these reasons, it is

**ORDERED** that the amended complaint (Dkt. No. 7) is **ACCEPTED AS FILED**; and it is further;

**ORDERED** that the Report Recommendation (Dkt. No. 6) is **ADOPTED** as it applies to the amended complaint; and it is further

**ORDERED** that plaintiff's Fourteenth Amendment deliberate medical indifference claim is **DISMISSED without prejudice and with leave to amend**; and it is further

**ORDERED** that if plaintiff wishes to file a second amended complaint that correct the pleading defects identified with respect to his Fourteenth Amendment deliberate indifference claim, he shall do so within **thirty (30) days of the date of this order**; and it is further

**ORDERED** that any second amended complaint plaintiff submits shall be a complete pleading, which will supersede the amended complaint, and may not incorporate any portion of the original or amended complaints by reference, in accordance with Local Rule 7.1(a)(4) of the Local Rules of Practice for this District; and it is further

**ORDERED** that the Clerk of the Court shall add the City of Kingston as a defendant in this action and amend the caption accordingly; and it is further

**ORDERED** that once the City of Kingston has filed an answer, plaintiff must seek, through discovery, the identity of the Doe defendants; and it is further

**ORDERED** that upon receipt from plaintiff of the documents required for service of process, the Clerk of the Court shall issue a summons, together with a copy of plaintiff's amended complaint, and forward them to the United States Marshal for service upon the City of Kingston; and it is further

**ORDERED** that, after service of process on defendant City of Kingston, it shall file a response to the amended complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk of Court shall mail a copy of this Memorandum-Decision and Order to plaintiff along with copies of the unpublished decisions cited in this decision.

**IT IS SO ORDERED.**

2012 WL 3871517

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Lilian CASTILLA, Plaintiff,

v.

CITY OF NEW YORK, New York City Police Detective Oscar Sandino, Tax Id # 919673 Individually and as a Detective of New York City Police Department, and Police Officers John Doe Officers 1–10, Defendants.

No. 09 Civ. 5446(SHS).

Sept. 6, 2012.

**Opinion**

SIDNEY H. STEIN, District Judge.

**\*1** Plaintiff Lilian Castilla brings this civil rights action pursuant 42 U.S.C. §§ 1983 and 1985 against defendants the City of New York, police detective Oscar Sandino, and John Doe police officers. She alleges that Sandino, with the assistance of the John Doe police officers, sexually assaulted and repeatedly threatened her in violation of the United States Constitution. The City has moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on the grounds that plaintiff fails to state a viable claim for municipal liability and that she cannot maintain any state law claims against any defendants. Because Castilla specifically states that she is not asserting any state claims, (*see* Pl.'s Mem. in Opp. at 15), there is no need to dismiss any such claims. However, plaintiff has stated plausible claims for municipal liability against the City; accordingly, the City's motion for judgment on the pleadings is denied.

## I. BACKGROUND

 **\*5** Unless otherwise noted, the following facts are drawn from the Amended Complaint and presumed true for purposes of this motion. On February 16, 2008, New York Police Department ("NYPD") detective Oscar Sandino and other members of the NYPD entered Castilla's apartment to execute a search warrant. (Am.Compl.¶ 14.) Sandino followed Castilla into a bedroom and then demanded that she strip for him. (*Id.* ¶¶ 14–16.)Castilla complied with his demand. (*Id.* ¶ 17.)After questioning Castilla about her boyfriend and his drug activities and threatening her with the loss of custody of her children, detective Sandino directed that Castilla and her boyfriend be taken to the police precinct in separate cars. (*Id.* ¶¶ 20–21.)

According to Castilla, Sandino and another officer drove her around Queens, continuing to threaten her with the loss of custody of her children. (*Id.* ¶¶ 22–26.)The other officer eventually got out of the vehicle, at which point Sandino asked Castilla what she was willing to do to keep her kids and if she was willing to be "bedded." (*Id.* ¶¶ 27–30.)Sandino ultimately left the vehicle, and two other detectives drove Castilla to the NYPD's 110th Precinct, where she was held for an hour or two. (*Id.* ¶¶ 32–33.)

At the precinct, Sandino brought Castilla into an interrogation room. (*Id.* ¶ 35.)While alone with her there, Sandino asked her answer to his earlier sexual proposition. She demurred, and he again threatened to take away her kids and also threatened physical violence. (*Id.* ¶¶ 43–47.)At one point, another detective entered the interrogation room. (*Id.* ¶ 38.)Sandino and this other detective attempted to recruit Castilla as a confidential informant by using threats against her children and referring to a potential "deal" between Castilla and Sandino. (*Id.* ¶¶ 38–40.)

Castilla asked to use the bathroom and Sandino took her there. He allegedly followed her into the bathroom, displayed his gun, ordered her to undress, and molested and sodomized her in a stall. (*Id.* ¶¶ 49–55.)Another officer allegedly helped Sandino isolate Castilla in the bathroom and remained in the immediate vicinity of the bathroom while Castilla was in there with Sandino.(*Id.* ¶¶ 50, 56.)None of the individual defendants present at the precinct asked why Sandino was alone with Castilla in the interrogation room or in the bathroom, and none of them reported Sandino's activity to superiors. (*Id.* ¶¶ 57–59.)

**\*2** Following this incident at the precinct, according to the complaint, Sandino repeatedly called and texted Castilla in order to arrange additional sexual encounters. (*Id.* ¶¶ 61–69.)He continued to contact her even after her boyfriend's defense attorney asked him not to do so. (*Id.* ¶¶ 72–74.)Sandino also allegedly called Castilla's brother to threaten removal of her children if she did not return his calls. (*Id.* ¶¶ 75–78.)Moreover, when an Administration for Children's Services caseworker was interviewing Castilla at her parents' apartment on February 19, 2008, Sandino and another officer showed up. (*Id.* ¶ 80.)Sandino took Castilla into a room and tried to intimidate her into staying silent about the sexual relationship he was pursuing with her. (*Id.* ¶¶ 83–87.)

In March 2008, Castilla met with the NYPD Internal Affairs Bureau (the "IAB") and provided recordings of calls Sandino had made to her and copies of text messages he had sent her. (*Id.* ¶ 88.)The IAB gave her a recording wire for a meeting with Sandino, which took place on March 11, 2008. (*Id.* ¶ 89.)At their meeting, Sandino was apparently suspicious of Castilla and made threats. (*Id.*

¶ 90.)Castilla was so frightened by Sandino that the IAB "whisked her away." (*Id.* ¶ 91.)

According to Castilla, the individual defendants who acted in concert with Sandino continue to work for the NYPD and have not faced any charges as a result of their misconduct. (*Id.* ¶ 92.)Castilla also alleges that the individual defendants conspired to obstruct and cover up any investigation of her claims. (*Id.* ¶¶ 95–99.)

**\*6** Castilla commenced this action in 2009. She brings various civil rights claims against individual officers and municipal liability claims against the City. The municipal liability claims are the subject of this motion.

Castilla specifically alleges that the City has a "policy and practice which provides practically unimpeded control over female suspects and prospective female confidential informants, and which fails to explicitly prohibit the use of sexual dominance and gender exploitative control tactics that seek to further investigative ends and individual officer[s'] personal prurient desire [s]." (*Id.* ¶ 12.)She further alleges inadequate training, supervision, and discipline of officers, as well as a deeply ingrained "code of silence" regarding police misconduct of this type. (*Id.* ¶¶ 126–129.)As a result of these policies and practices, the City has allegedly "exhibit[ed] deliberate indifference to the constitutional rights of its citizens." (*Id.* ¶ 125.)

Moreover, according to Castilla, the City "has been on notice of a significant and pervasive problem of police officers' use of their position and power to abuse female suspects, prospective confidential informants, and confidential informants." (*Id.* ¶ 100.)In particular, she claims that "defendant Sandino had prior incidences of sexual abuse against females within his custody and control." (*Id.* ¶ 13.)She also refers to various news reports of incidents involving other police officers who isolated females and then sexually assaulted them while they were in the custody or control of those officers.(*Id.* ¶¶ 105–06, 109.)

**\*3** In addition, the Court takes judicial notice of the fact that Sandino pled guilty to two counts of deprivation of civil rights, one of which arose from events that Castilla has alleged in this complaint, at least as far as Sandino's own activities are concerned. In May of this year, Sandino was sentenced by a federal judge principally to 24 months' imprisonment for those crimes. (*See* Judgment in *United States v. Sandino,* Cr. 10–331 (E.D.N.Y. May 19, 2010).)

As noted above, the City now moves for judgment on the pleadings pursuant to Rule 12(c) on the ground that Castilla has failed to state a claim for municipal liability.

## II. DISCUSSION

### A. *Legal Standard*

In deciding a motion under Rule 12(c), courts apply the same standard that applies on a motion to dismiss a claim for relief pursuant to Rule 12(b)(6). *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Accordingly, a court accepts the truth of the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006). A complaint should be dismissed if it fails to set forth "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)."A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly,* 550 U.S. at 556).

### B. *Municipal Liability*

**\*7** To sustain a claim for relief pursuant to section 1983 against a municipal defendant, a plaintiff must show (1) the existence of an officially adopted policy or custom and (2) a causal connection between the custom or policy and the deprivation of a constitutional right *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 (1978); *Walker v. City of New York,* 974 F.2d 293, 301 (2d Cir.1992).

A plaintiff may demonstrate the existence of a policy or custom in a variety of ways. First, she may provide evidence of a formal policy officially adopted by the municipality. *Monell,* 436 U.S. at 690. Second, a single unconstitutional act or decision, when taken by an authorized decision-maker, may be considered a policy and thus subject a municipality to liability. *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404–06 (1997); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481–84 (1986). Third, a policy may be established by showing that the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have

been aware. *Brown,* 520 U.S. at 403–04; *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127 (1988); *Monell,* 436 U.S. at 690–91. Fourth, where a municipality's failure to provide adequate training or supervision of its agents rises to the level of deliberate indifference, *section 1983* liability may lie against the municipality. *Brown,* 520 U.S. at 407; *City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *Cash v. Cnty. of Erie,* 09–4371, 2011 WL 3625093, at *7 (2d Cir. Aug. 18, 2011). However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry,* 141 F.3d 56, 61 (2d Cir.1998) (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)).

### C. *Application*

**\*4** Castilla does not claim that the City's liability pursuant to *Monell* and its offspring arises from a formal City policy or an unconstitutional act by an authorized decision-maker. Rather, she alleges, under the third and fourth theories, a widespread custom of at least tolerating male police officers' sexual misconduct, and a failure to train, supervise, and/or discipline male police officers in connection with their handling female detainees and informants. Taking plaintiffs' allegations as true, the Court finds that Castilla has sufficiently pled claims for *Monell* liability against the City of New York.

This finding is based, in part, on the Second Circuit's recognition that "[it] is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 130 n. 10 (2d Cir.2004). The Second Circuit has not yet addressed whether *Iqbal* has heightened the pleading requirements for such a municipal liability claim, but district courts in this Circuit have continued, post-*Iqbal,* to apply the pleading standard articulated in *Amnesty* to a *Monell* claim based on a failure to train. *See Ferrari v. Cnty. of Suffolk,* No. 10 Civ. 4218, 2011 WL 2297125, at *9 (E.D.N.Y. Jun. 7, 2011); *Williams v. City of New York,* 690 F.Supp.2d 338, 346 (S.D.N.Y.2010); *Michael v. County of Nassau,* No. 09 Civ. 5200, 2010 WL 3237143, at *4 (E.D.N.Y. Aug. 11, 2010). Thus, in assessing the sufficiency of plaintiff's *Monell* claims—particularly the failure to train claim—the Court keeps in mind that plaintiff has not yet had the full benefit of discovery.

**\*8** The City's position cannot be ignored. The City contends that this case simply concerns an isolated incident involving a single rogue police detective. The City may be right. However, the alleged facts, taken as true for purposes of this motion, plausibly suggest otherwise. Plaintiff alleges that multiple detectives and officers helped Sandino threaten, abuse, and sexually assault Castilla over many hours and in many locations, including at a police precinct. The complaint specifically alleges concerted action by other police officers in addition to Sandino who were not supervised and at least not immediately stopped or disciplined. Sandino is alleged to have continued for weeks after the assault to contact, proposition, and threaten Castilla. When Sandino paid Castilla a visit at her family's home, Sandino was accompanied by another officer. Furthermore, Castilla alleges that the police officers maintained a "code of silence" to cover up their misconduct.

In *Michael v. County of Nassau,* the U.S. district court in the Eastern District of New York found, on a motion to dismiss decided under *Iqbal,* that an informal custom "of at least tolerating police misconduct" and/or a failure to properly train police officers could be inferred where the alleged conduct took place over several hours, including at police headquarters, and several officers participated in the repeated denials of the plaintiff's rights. 2010 WL 3237143, at *4. Castilla, like the plaintiff in the *Michael* case, alleges a string of incidents in which she was repeatedly victimized by multiple officers in multiple locations, both on and off City property.

**\*5** More than that, Castilla alleges various other instances of male police officers taking sexual advantage of females under their custody or control. In *Ferrari v. County of Suffolk,* which was decided after *Iqbal,* the court allowed a *Monell* claim to survive a motion to dismiss in light of allegations of two instances of unconstitutional conduct in addition to plaintiff's own claim. 2011 WL 2297125, at *9. *See also Colon v. City of New York,* Nos. 09 Civ. 8–9, 2009 WL 4263362, at *2 (E.D.N.Y. Nov. 25, 2009); *cf. Cash,* 2011 WL 3625093 at *9 (finding that a jury could reasonably conclude that a single prior complaint of sexual exploitation, in light of prison guards' duty to protect prisoners, could put a municipality on notice that its existing policy was insufficient to deter such misconduct). Although the City challenges the admissibility of the evidence plaintiff cites as relevant

examples of police misconduct, the Court need not decide that issue at this time.

Finally, the City argues that plaintiffs' allegations do not demonstrate an unconstitutional policy or custom, but rather show the opposite: a readiness on the part of the City to investigate and discipline police officers who misbehave. In particular, the City points to the IAB's responsiveness to Castilla's IAB complaint and the fact that Sandino was ultimately punished for his wrongdoing. While these facts inure to the City's benefit on this motion, Castilla also alleges that not all the individual perpetrators have been investigated and disciplined. In any event, the issue of whether the City eventually investigates and disciplines employees accused of misconduct is distinct from whether the City was deliberately indifferent to the violation of citizens' constitutional rights in the first place. In other words, even if the City took corrective action, its training and supervision of male officers vis-avis female detainees and informants still may have been inadequate.

The Court is not evaluating the ultimate merits of plaintiff's *Monell* claims here. The Court is simply finding that the allegations of very serious police misconduct, supported by adequate facts, raise an inference of municipal liability that is plausible enough to permit the claims to proceed.

### III. CONCLUSION

Accordingly, for the reasons set forth above, the City's motion for judgment on the pleadings with respect to Castilla's claims against the City is denied. Plaintiff is entitled to discovery regarding the City's policies and practices regarding training, supervision, and discipline in connection with male officers' handling of female suspects, prospective confidential informants, and informants.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 3871517

2010 WL 4967844

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, S.D. New York.

Gordon GLASPIE, Plaintiff,

v.

NEW YORK CITY DEPARTMENT OF CORRECTIONS, et al., Defendants.

No. 10 CV 00188(GBD)(JCF).

Nov. 30, 2010.

### *MEMORANDUM DECISION AND ORDER*

GEORGE B. DANIELS, District Judge.

**\*1** *Pro se* Plaintiff Gordon Glaspie filed this suit under 42 U.S.C. § 1983, alleging that Defendants violated his civil rights by assigning him to a cell block area where swine flu (H1N1) cases had been discovered. Plaintiff alleged injuries of mental and emotional stress. Defendants moved to dismiss Plaintiff's Complaint on two grounds: (1) FED. R. CIV. P. 12(b)(1) for Plaintiff's failure to exhaust his administrative remedies; and (2) FED. R. CIV. P. 12(b)(6) for Plaintiff's failure to state a claim. This Court referred the motion to Magistrate Judge James C. Francis IV for a Report and Recommendation ("Report"). Magistrate Judge Francis recommended that the Defendants' motion to dismiss for failure to state a claim be granted.

The Court may accept, reject or modify, in whole or in part, the findings and recommendations set forth within the Report. 28 U.S.C. § 636(b)(1). When there are objections to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made. *Id.; see also Rivera v. Barnhart,* 432 F.Supp.2d 271, 273 (S.D.N.Y.2006). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b) (1)(c). It is not required, however, that the Court conduct a *de novo* hearing on the matter. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusions" regarding

those portions to which objections were made. *Nelson v. Smith,* 618 F.Supp. 1186, 1189–90 (S.D.N.Y.1985) (quoting *Hernandez v. Estelle,* 711 F.2d 619, 620 (5th Cir.1983)). When no objections to a Report are made, the Court may adopt the Report if "there is no clear error on the face of the record." *Adee Motor Cars, LLC v. Amato,* 388 F.Supp.2d 250, 253 (S.D.N.Y.2005) (citation omitted).

In his report, Magistrate Judge Francis advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). This Court has received no objections to the Report, and the time to do so has expired.

**\*10** Magistrate Judge Francis properly determined that Plaintiff failed to adequately allege a deprivation of "basic human needs" that was "objectively sufficiently serious." Plaintiff, therefore, did not identify conduct constituting an Eighth Amendment violation for cruel and unusual punishment. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994). In particular, Magistrate Judge Francis found that: (1) mere exposure to swine flu does not involve an "unreasonable risk of serious damage to ... future health" ; (2) no residual risk exists because Plaintiff was moved to a different correctional facility; and (3) the Amended Complaint lacked factual allegations of an illness resulting from Plaintiff's exposure or risk of latent health effects.*Helling v. McKinney,* 509 U.S. 25, 35–36 (1993); *see also* Report at 7 (collecting cases). [1]

3    As to the Rule 12(b)(1) ground for dismissal, Magistrate Judge Francis determined that, "because the instant motion can be determined on other grounds, it need not be determined whether plaintiff exhausted his claims." Report at 3; *see* 42 U.S.C. § 1997e(c)(2) ; *Woodford v. Ngo,* 548 U.S. 81, 85, 101 (2006) (the "exhaustion requirement is not jurisdictional, and thus [allows] a district court to dismiss plainly meritless claims without first addressing what may be a such more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies")

**\*2** After carefully reviewing the Report and Recommendation, this Court finds that the Report is not facially erroneous, and adopts the Report's recommendation to dismiss all claims against all Defendants. The Defendants' motion to dismiss is GRANTED.

SO ORDERED:

### All Citations

Not Reported in F.Supp.2d, 2010 WL 4967844

2013 WL 4008881

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Rubin GONZALVO, Plaintiff,

v.

The STATE OF NEW YORK, Defendant.

No. 9:11–CV–0909 (NAM/DEP).

|

Aug. 2, 2013.

**Attorneys and Law Firms**

Ruben Gonzalvo, Woodburne, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney General, Cathy Sheehan, Esq, Assistant Attorney General, of Counsel, Albany, NY, for Defendant.

### *ORDER*

NORMAN A. MORDUE, Senior District Judge.

**\*1** The above matter comes to me following a Report–Recommendation by Magistrate Judge David E. Peebles, duly filed on the 10th day of July 2013. Following fourteen (14) days from the service thereof, the Clerk has sent me the file, including any and all objections filed by the parties herein.

After careful review of all of the papers herein, including the Magistrate Judge's Report–Recommendation, and no objections submitted thereto, it is

ORDERED that:

1. The Report–Recommendation is hereby adopted in its entirety.

2. The defendant's motion to dismiss for failure to state a claim (Dkt. No. 29) is denied.

3. The Clerk of the Court shall serve a copy of this Order upon all parties and the Magistrate Judge assigned to this case.

**IT IS SO ORDERED.**

### *REPORT AND RECOMMENDATION*

DAVID E. PEEBLES, United States Magistrate Judge.

*Pro se* plaintiff Ruben Gonzalvo, a New York State prison inmate, has commenced this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.,* and section 504 of the Rehabilitation Act ("section 504"), 29 U.S.C. § 794. In his complaint, Gonzalvo generally alleges that, as a qualified individual with a disability under the ADA, the defendant, the State of New York, wrongfully denied him the right to participate in or the benefit from sign language classes.

Currently pending before the court is the State of New York's motion seeking dismissal of plaintiff's complaint based upon its assertion that the court lacked jurisdiction to *sua sponte* deem plaintiff's complaint amended to substitute the State of New York as the sole defendant. Having carefully reviewed defendant's motion, I recommend that the motion be denied.

### I. *BACKGROUND*

Plaintiff is a prison inmate who is now being held in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"). *See generally* Compl. (Dkt. No. 1). At all times relevant to this action, plaintiff was confined at the Eastern Correctional Facility ("Eastern"), located in Napanoch, New York. *Id.* at 6.

Construed liberally, plaintiff's complaint alleges that he qualifies as a disabled person under the ADA and section 504 because he is deaf or hearing impaired. Compl. (Dkt. No. 1) at 7–10. According to plaintiff, several of the originally named defendants, all of whom are no longer parties to this action and are employed by the DOCCS, failed to provide him with access to participation in sign language classes. *Id.* at 11–12. It is alleged that plaintiff is

in need of sign language classes in order to learn "another way of communication." *Id.* at 13.

### II. *PROCEDURAL HISTORY*

**\*11** This action was commenced on August 3, 2011, by the filing of a complaint and an accompanying application to proceed *in forma pauperis* ("IFP"). Compl. (Dkt. No. 1). Although plaintiff Gonzalvo is the only remaining plaintiff, the complaint named five other plaintiffs that have now been dismissed from the case by virtue of a decision and order issued on May 4, 2012, by District Judge Norman A. Mordue. Decision and Order (Dkt. No. 11). Additionally, the complaint named six individual defendants, five of whom were dismissed following Judge Mordue's initial review of the complaint. Decision and Order (Dkt. No. 5). Service of process could not be effectuated with respect to the remaining defendant, identified in the complaint as "Mr. Williams," because he is deceased. Decision and Order (Dkt. No. 22). Accordingly, Judge Mordue dismissed that defendant from the action, and *sua sponte* "deem[ed] the complaint amended to name the State of New York as the sole defendant." *Id.* Plaintiff's complaint asserts two causes of action, one under the ADA and another under section 504, but it fails to set forth a prayer for relief. *See generally* Compl. (Dkt. No. 1).

**\*2** On December 19, 2012, in lieu of an answer, defendant filed a motion seeking dismissal of plaintiff's complaint, arguing that the court lacked jurisdiction to *sua sponte* amend the complaint on behalf of the plaintiff to name the State of New York as the sole defendant. Def.'s Memo of Law (Dkt. No. 29–1) at 4–6. Defendant's motion, to which plaintiff failed to respond, [1] is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b) (1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

[4]     Plaintiff's failure to oppose defendant's motion does not preclude the court from recommending disposition of its motion. *See, e.g., White v. Mitchell,* No. 99–CV–8519, 2001 WL 64756, at \*1 (E.D.N.Y. Jan. 18, 2001). Because a motion to dismiss tests only the legal sufficiency of a plaintiff's complaint, the court can determine a complaint's sufficiency as a matter of law based on its own reading of the complaint and knowledge of the relevant case law. *McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000). Before granting an unopposed motion, however, the

court must make a threshold finding that the moving party has met its burden demonstrating entitlement to that relief. *McCall,* 232 F.3d at 323.

### III. *DISCUSSION*

In a decision and order dated September 19, 2012, Judge Mordue held that, "[i]n light of plaintiff's pro se status, ... the Court hereby dismisses Williams as a defendant and deems the complaint amended to name the State of New York as the sole defendant." Decision and Order (Dkt. No. 22) at 2. Judge Mordue explained that, because the proper party to sue under the ADA and section 504 is either the public entity responsible for the conduct in dispute, or a public official acting in his official capacity, the State of New York was the appropriate entity to substitute following the death of defendant Williams. *Id.; see also, e.g., Parra v. Wright,* No. 11–CV–6270, 2011 WL 3608475, at *3 (W.D.N.Y. Aug. 10, 2011). Although defendant argues that the court did not have jurisdiction to make that substitution, it candidly acknowledges the absence of any legal authority to support its position. Def.'s Memo. of Law (Dkt. No. 29–1) at 5. Rather, defendant simply states that, "[f]or the same reason the Court lacked the jurisdiction to substitute Williams' with his successor, the Court lacks jurisdiction to substitute Williams with the State of New York." *Id.*

Having carefully considered defendant's argument, and conducting my own research on the issue, I find there is no merit to its argument. Because a claim under the ADA and section 504 may be commenced against the public entity responsible for the alleged acts, plaintiff could have commenced this action against the State of New York from its inception. Instead, plaintiff opted to commence the action against a public official, Mr. Williams. Compl. (Dkt. No. 1). For the sake of judicial efficiency, and in its inherent authority to manage its docket, the court *sua sponte* substituted the State of New York, instead of, for example, issuing an order directing plaintiff to amend his complaint to name the State of New York as defendant. The court's authority to issue such a directive is well supported. *See, e.g., Zuk v. Gonzalez,* No. 07–CV–0732, 2007 WL 2163186, at *2 (N.D.N.Y. July 26, 2007) (Scullin, J.) ("[T]o the extent that Plaintiff has named the individual Defendants in their official capacities, he has in essence named Onondaga County ... as a Defendant. Construing Plaintiff's complaint liberally in light of his *pro se* status, and in the interest of judicial economy, the Court will *sua sponte* substitute Onondaga County as the sole Defendant

in place of the individually named defendants." (internal citations omitted)); *Dockery v. Tucker,* No. 97–CV3584, 2006 WL 5893295, at *7 (E.D.N.Y. Sept. 6, 2006) (adding the United States as a defendant, *sua sponte,* in a Federal Tort Claims Act claim brought by a *pro se* plaintiff); *Ciancio v. Gorski,* No. 98–CV–0714, 1999 WL 222603, at *1 (W.D.N.Y. Apr. 14, 1999) (substituting, *sua sponte* and "in the interest of eliminating undue complication without affecting the substantial rights of the parties," the County of Erie as a defendant where it was unclear that the plaintiff could sue an individual in his official capacity under Title VII but well established that the county was a proper defendant).[2] Accordingly, I recommend that defendant's motion to dismiss plaintiff's complaint be denied.

5    All unreported decisions have been appended to this report for the convenience of the *pro se* plaintiff. [Editor's Note: Appended decisions deleted for Westlaw purposes.]

### IV. *SUMMARY AND RECOMMENDATION*

**\*3** Plaintiff's complaint originally asserted claims under the ADA and section 504 against six individual defendants. Following the dismissal of five of those defendants, and learning that the sixth defendant is deceased, Judge Mordue substituted the State of New York as the sole defendant. His authority to *sua sponte* make that substitution in the interest of judicial efficiency, and in light of plaintiff's *pro se* status, is well supported. For these reasons, it is hereby respectfully

RECOMMENDED that defendant's motion to dismiss for failure to state a claim (Dkt. No. 29) be DENIED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), (d); Fed.R.Civ.P. 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

It is hereby ORDERED that the clerk of this court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

### All Citations

Slip Copy, 2013 WL 4008881

2004 WL 1732006

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Scott W. LASHER, Plaintiff,

v.

THE CITY OF SCHENECTADY, Edward
Ritz, Kenneth Hill, Dan Kane, Yoni Moskow,
Robert W. Glasser, Individually and as Agents,
Servants, and/or Employees and Police Officers
of the City of Schenectady and the City of
Schenectady Police Department Defendants.

No. 02–CV–1395.

Aug. 3, 2004.

**Attorneys and Law Firms**

Castillo & Associates, Albany, NY, for Plaintiff, Gaspar
M. Castillo, Jr., of counsel.

The Tuttle Law Firm, Latham, New York, for Defendant
Hill, James B. Tuttle, of counsel.

Carter, Conboy Law Firm, Albany, NY, for Defendants
City of Schenectady, Ritz, Kane, Mozkow, and Glasser,
Louis U. Gasparini, of counsel.

***MEMORANDUM—DECISION and ORDER***

MCAVOY, Senior J.

### I. INTRODUCTION

**\*1** Plaintiff Scott W. Lasher ("Plaintiff") commenced the
instant action pursuant to 42 U.S.C. §§ 1983 and 1988,
asserting claims of excessive force, false arrest, unlawful
imprisonment, malicious abuse of process, denial of
prompt medical care, assault and battery, and violations
of his Fourth and Fourteenth Amendment rights, arising
out of his arrest on January 20, 2002. Presently before

the Court are motions for summary judgment submitted
pursuant to FED. R. CIV. P. 56 by Defendant Kenneth
Hill and Defendants City of Schenectady, Edward Ritz,
Dan Kane, Yoni Moskow, and Robert W. Glasser seeking
dismissal of the Complaint in its entirety.

### II. FACTS

On January 20, 2002, Plaintiff and Damien Schon
("Schon") were at a bar in downtown Schenectady. Also
present at the bar were Defendants Kenneth Hill ("Hill")
and Edward Ritz ("Ritz"). At all times relevant hereto,
Hill and Ritz were off-duty, non-uniformed police officers
for the Defendant City of Schenectady ("the City"). While
at the bar, Plaintiff and Ritz consumed alcohol. Hill stated
that he may have drank alcoholic beverages, but does not
recall what he consumed.

**\*13** Plaintiff and Schon left the bar when it closed at 4:00
a.m. They entered Plaintiff's Honda sport utility vehicle,
drove out of the parking lot and proceeded past the bar.
At the same time, Hill and Ritz also left the bar and
entered Hill's vehicle. As they began to exit the parking
lot, Michael Parisi, the bar owner, ran towards them. He
told Hill and Ritz that a gunshot emerged from a vehicle
as it passed by the bar. Parisi pointed to Plaintiff's passing
vehicle as the source of the shot. [1] Hill and Ritz then exited
the lot and began to follow Plaintiff's vehicle.

[6]    Plaintiff contends that as his vehicle passed the bar,
       Schon threw a billiard ball from the passenger's side.
       He asserts that the sound of the ball hitting the bar's
       outside wall was mistaken for a gunshot. There is no
       dispute, however, that Parisi reported a gunshot.

Parisi also reported the incident by telephone to the
Schenectady Police Department, describing the vehicle as
a red Blazer (sports utility vehicle). An employee of the
bar also called in a report that a "drive-by" shooting had
occurred and identified the vehicle as a red Blazer or red
Rodeo.

After being followed for several blocks, Plaintiff stopped
his vehicle at an intersection near Schenectady Police
Department Headquarters. Hill stopped four to five car
lengths behind Plaintiff and remained in his vehicle with
Ritz. Plaintiff and Schon then exited their vehicle. Plaintiff
put his hand in his jacket in a manner indicating that he
had a weapon. [2] Plaintiff and Schon then returned to their
vehicle and drove away. Hill ran into the police station to
report the incident. Ritz moved into the driver's seat of

Hill's vehicle and continued to follow Plaintiff's vehicle. He eventually stopped to use a pay phone to contact police dispatch. After five to ten minutes at the police station, Hill learned that Plaintiff's vehicle had been located. He and Officer Thomas Kelly left to go to the scene.

[7]    Plaintiff contends that because he was unaware that the individuals who were following him were police officers, he feared their intentions and tried to scare them away by pretending to have a weapon. Hill and Ritz contend that they saw two muzzle flashes from gunshots, prompting Hill to accelerate his vehicle in reverse.

At approximately 4:45 a.m., uniformed officers apprehended Plaintiff and Schon as they were walking on a sidewalk. Officer Thomas Harrigan ("Harrigan") instructed Plaintiff to get down on the ground. Harrigan then handcuffed Plaintiff and helped him to stand up. [3] Next, Harrigan and Defendant Schenectady Police Officer Dan Kane ("Kane") escorted Plaintiff to a police car operated by Officer Phillip Feldhaus ("Feldhaus") and Defendant Schenectady Police Officer Yoni Moskow ("Moskow"). Plaintiff asserts that on the way to the car, a non-uniformed man approached him, asked "[r]emember me?", and then punched him in the face, causing him to bleed profusely. Plaintiff was then seated in the police car where his nose continued to bleed. No ambulance was called to the scene.

[8]    Harrigan does not recall seeing blood or injury to Plaintiff after Plaintiff stood up.

**\*2** Officers Hill and Ritz were the only persons employed by the City of Schenectady Police Department who were not in uniform on the night in question and who were present at some point in time at the location where Plaintiff was arrested. Hill contends that when he arrived at the scene with Officer Kelly, Sergeant Peters asked him to identify Plaintiff and advised him that Plaintiff was in the back of a police car. Hill states that he walked to the police car operated by Feldhaus and Moskow and identified Plaintiff. Feldhaus and Moskow state that they never saw Hill approach the car.

 **\*14** Ritz asserts that he stayed at the location of the payphone until uniformed officers arrived and reported the arrest. He states that he then drove Hill's vehicle to the scene and remained in the vehicle while he identified Plaintiff. He contends he did not exit the vehicle at any time while Plaintiff was handcuffed.

Plaintiff, who stands 5'11", states that the man who punched him was taller than he. According to a Schenectady Police Department Personal Information Sheet, Ritz is 5'8" tall. Hill states that he is 5'10" tall, however at a deposition held in a previous action, he testified that he was 6' tall. At the time Plaintiff was punched, he was not walking at his full height, but was "bent over" from the handcuffs connecting his wrists from the rear.

At approximately 5:06 a.m., Feldhaus and Moskow left with Plaintiff in custody. Paramedics with the Schenectady Fire Department arrived at the police station to treat Plaintiff's injuries at 6:37 a.m. At 4:10 p.m., after he had been released from custody, Plaintiff received treatment for his injuries at the hospital. His medical records indicate that he suffered a "nasal fracture with deformity and obstruction." Plaintiff also complained of a chipped lower front tooth and wrist pain.

Plaintiff was eventually charged by Defendant Robert W. Glasser ("Glasser"), a detective with the Schenectady City Police Department, for violating New York Penal Law § 120.20, reckless endangerment in the second degree, for attempting to assault Hill and Ritz with a handgun. The matter was adjourned in contemplation of dismissal pursuant to N.Y. CRIM. PROC. § 170.55 (McKinney 2004).

Plaintiff commenced the instant action contending that Defendants violated his constitutional rights under the Fourth and Fourteenth Amendments and that he was subject to excessive force, false arrest, unlawful imprisonment, malicious abuse of process, denial of prompt medical care, and assault and battery. Defendants now move to dismiss the Complaint in its entirety pursuant to FED. R. CIV. P. 56.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In applying this standard, courts must " 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party

opposing summary judgment." ' *Brown v. Henderson,* 257 F.3d 246, 251 (2d Cir.2001) (quoting *Cifra v. General Electric Co.,* 252 F.3d 205, 216 (2d Cir.2001)). Once the moving party meets its initial burden by demonstrating that no material fact exists for trial, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citations omitted). Rather, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown,* 257 F.3d at 251 (citation omitted). Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment. *Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

## IV. DISCUSSION

### a. False Arrest, Unlawful Search and Seizure, Malicious Abuse of Process, and Unlawful Imprisonment

**\*15  \*3** Plaintiff asserts claims for false arrest, unlawful search and seizure, malicious abuse of process, and unlawful imprisonment. The existence of probable cause is a complete defense to each of these claims. *See Weyant v. Okst,* 101 F.3d 845, 852–53 (2d Cir.1996) (false arrest under New York State and federal law, unlawful search and seizure, unlawful imprisonment); *Cook v. Sheldon,* 41 F.3d 73, 80 (2d Cir.1994) (malicious abuse of process); *Berman v. Silver, Forrester, & Schisano,* 156 A.D.2d 624, 625 (2d Dep't 1989).

Whether probable cause exists is based upon the totality of the circumstances. *Marshall v. Sullivan,* 105 F.3d 47, 54 (2d Cir.1996) (citing *Illinois v. Gates,* 462 U.S. 213, 231–33 (1983)). It exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Provost v. City of Newburgh,* 262 F.3d 146, 157 (2d Cir.2001). "It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir.2000) (quoting *Miroslavsky v. AES Eng'g Soc'y,* 808 F.Supp. 351, 355 (S.D.N.Y.1992), *aff'd* 993 F.2d 1534 (2d Cir. 1993)). Probable cause can also exist "even where it is based on mistaken information, so long

as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (citing *Colon v. City of New York,* 60 N.Y.2d 78, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (N.Y.1983)).

In the present case, Hill and Ritz had probable cause to believe that Plaintiff committed a crime. As they were leaving the parking lot at the bar, bar owner Michael Parisi ran towards them and reported that a gunshot had been fired from a passing vehicle. Parisi identified Plaintiff's vehicle as the source of the gunshot. Plaintiff contends that Schon threw a billiard ball from Plaintiff's vehicle, and that Parisi mistook the sound of the ball striking an outside wall of the bar for the sound of a gunshot. However, even if Parisi gave Hill and Ritz mistaken information, there is no evidence that they had any reason to believe that Parisi's report was mistaken or erroneous. Thus, because Parisi's information would lead a person of reasonable caution to believe that a gunshot emerged from Plaintiff's vehicle, Hill and Ritz had probable cause to believe that Plaintiff committed a crime.

In addition, the uniformed police officers, namely Kane and Moskow, had probable cause to arrest Plaintiff. Two phone calls were received by the Schenectady Police Department indicating that gunshots had been fired at the bar. The police department also received a description of a vehicle similar to Plaintiff's as a source of the shots. In addition, when Hill ran into Schenectady Police Headquarters, he reported that he saw "two muzzle flashes" after Plaintiff emerged from his vehicle and reached into his jacket in a manner indicating that he had a weapon. Because the totality of information available to Kane and Moskow would lead a person of reasonable caution to believe that Plaintiff had committed a crime, Kane and Moskow had probable cause to arrest Plaintiff.

**\*16  \*4** Plaintiff contends that probable cause was lacking because both Hill's statement and a similar statement made by Ritz were false. However, Plaintiff has submitted no evidence suggesting that the uniformed officers had reason to doubt the truthfulness of Hill's or Ritz's account of gunshots being fired at Hill's vehicle or the other reports of a gunshot at the bar. Thus, Kane and Moskow were permitted to rely on these reports.

Finally, Plaintiff concedes that Glasser had probable cause to issue criminal process against Plaintiff. Glasser, relying on the statements of Hill and Ritz, charged

Plaintiff with violating New York Penal Law § 120.20, reckless endangerment in the second degree, for attempting to assault Hill and Ritz with a handgun. Even if the statements of Hill and Ritz were false, Plaintiff admits that there is no evidence that Glasser believed them to be false at the time that he filed the charge. Thus, Glasser had probable cause to file the charge against Plaintiff.

For the foregoing reasons, Plaintiff's claims for false arrest, malicious abuse of process, and unlawful imprisonment are dismissed.

### b. Deliberate Indifference to Serious Medical Needs

Plaintiff also claims that Defendants denied him prompt medical care. Claims raised by pre-trial detainees alleging inadequate or untimely medical attention are to be analyzed under the Due Process Clause of the Fourteenth Amendment. *See Revere v. Massachusetts Gen. Hosp.,* 463 U.S. 239, 244 (1983). The "standard for analyzing a pre-trial detainee's Fourteenth Amendment claim is the same as the Eighth Amendment standard [afforded to inmates]." *Bourdon v. Roney,* No. 9:99–CV–0769, 2003 WL 21058177, *10 (N.D.N.Y. March 6, 2003) (citing *Revere,* 463 U.S. at 244). To survive summary judgment, Plaintiff must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 98, 106 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513, U.S. 1154 (1995); *Davidson v. Harris,* 960 F.Supp. 644, 646 (W.D.N.Y.1997).

The deliberate indifference standard embodies both an objective and a subjective prong. *Hathaway,* 37 F.3d at 66. First, the injury must be, in objective terms, "sufficiently serious." *Id.* (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Second, the charged official must act with a sufficiently culpable state of mind. *Id.*

### 1. Serious Medical Need

A serious medical need exists when "the failure to treat a prisoner's condition could result in further significant injury" or the "unnecessary and wanton infliction of pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7 th Cir.1997)). Conditions that qualify as serious are those of "urgency" that may result in "degeneration" or "extreme pain." *Hathaway,* 37 F.3d at 66. Among the relevant factors in what is a fact-intensive inquiry are

"[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance,* 143 F.3d at 702 (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9 th Cir.1992)).

**\*5** Here, there is evidence that Plaintiff's nose was broken and was bleeding profusely. In addition, Plaintiff complained that he had a chipped tooth and bruised wrists. Some courts have held that injuries similar to Plaintiff's are insufficient to constitute a serious medical need. *See, e.g., Kaup v. DeTella,* No. 98 C 4814, 1999 WL 286288, at *4 (N.D.Ill.1999) (holding that the plaintiff failed to sufficiently identify a serious medical need because he alleged only a broken nose and chipped teeth); *Gibson v. Borough of West Chester,* No. Civ. A. 02–9089, 2004 WL 203175, at *7 (E.D.Pa. Jan. 12, 2004) (finding that the plaintiff was not in such physical distress as to require emergency medical care after being punched in the face and sustaining a broken and bloody nose); *Wesson v. Oglesby,* 910 F.2d 278, 284 (5 th Cir.1990) (holding that an inmate's swollen and bleeding wrists from handcuffing did not constitute serious medical need).

**\*17** However, in this case, the evidence of the severity and duration of Plaintiff's nose bleed does not preclude a conclusion that his condition was sufficiently serious. Plaintiff's injury was sustained sometime between 4:45 a.m., when he was apprehended by the officers, and 5:06 a.m., when he was taken from the scene to the police station. Plaintiff states that his nose was bleeding profusely from the time he was punched until well after he was in the police station. Ronald Maslanka, a lieutenant and paramedic with the Schenectady Fire Department, examined Plaintiff at the police station at 6:52 a.m. At that time, he observed that Plaintiff had dried blood around the opening of his nose. Thus, it could be reasonably concluded that Plaintiff's nose was bleeding for approximately two hours. Courts have found similar conditions of profuse bleeding to be actionable. *See Aldridge v. Montgomery,* 753 F.2d 970, 972–73 (11 th Cir.1985) (one-and-a-half-inch cut over detainee's eye that was bleeding profusely for two and a half hours was a serious medical need); *Maxy v. Larson,* No. 03–C–623–C, 2004 WL 253350, at *3 (W.D.Wis. Feb. 5, 2004) (lacerations on the plaintiff's head and severe bleeding constituted a serious medical need). Thus, Plaintiff has

raised a triable issue of fact as to whether his condition was sufficiently serious.

### 2. Deliberate Indifference

"Deliberate indifference is shown ... by failure to provide prompt attention to the medical needs of a pre-trial detainee." *Estelle,* 429 U.S. at 105. Delays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims. *Gutierrez,* 111 F.3d at 1371. A few hours' delay in receiving medical care for emergency needs such as broken bones and bleeding cuts may constitute deliberate indifference. *Brown v. Hughes,* 894 F.2d 1533, 1538 (11 [th] Cir.1990).

As previously shown, it could reasonably be concluded that Plaintiff's bloody nose was left untreated for approximately two hours. Courts have found that delays of a few hours in treating injuries involving profuse bleeding sufficiently demonstrate deliberate indifference. *See Aldridge,* 753 F.2d at 972 (one-and-a-half-inch cut over detainee's eye that was bleeding for two and a half hours was an actionable delay); *Baker v. Dist. of Columbia,* No. 2:01CV472, 2002 WL 32539618, at *6 (E.D.Va.2002) (one-hour delay was reasonable in treating plaintiff's leg injury because plaintiff was not bleeding or in shock and no bones were broken). Thus, triers of fact could reasonably conclude that Defendants acted with deliberate indifference.

**\*6** For the foregoing reasons, Plaintiff has raised triable issues of fact as to whether Defendants acted with deliberate indifference to a serious medical need.

### c. Excessive Force

Plaintiff also claims that he was subjected to the excessive use of force. To establish a claim of excessive force, Plaintiff must show that the force used by the officer was, in light of the facts and circumstances confronting him, "objectively unreasonable" under Fourth Amendment standards. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Finnegan v. Fountain,* 915 F.2d 817, 821 (2d Cir.1990). The United States Supreme Court elaborated,

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—

about the amount of force that is necessary in a particular situation.

*Graham,* 490 U.S. at 396–97. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene. *Id.* at 396.Factors to consider include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Finnegan,* 915 F.3d at 823.

There is sufficient evidence in the record from which a fair-minded trier of fact could reasonably conclude that the use of force against Plaintiff was excessive. Plaintiff states that at the moment he was handcuffed on the ground, he had no physical injuries. He also states that he was lifted from the ground to his feet without incident. This is corroborated by Harrigan, who stated that he saw no blood or injury to Plaintiff when he stood up after being handcuffed. Kane and Harrigan then began to lead Plaintiff to a police car. There is no evidence that, at this point, the circumstances could be categorized as "tense," "uncertain," or "rapidly evolving." *See Graham,* 490 U.S. at 396–97. Indeed, there is evidence in the record that Plaintiff was handcuffed, posed no physical threat to those surrounding him, and was not resisting arrest. However, it was under these circumstances that Plaintiff states that a non-uniformed man approached and punched him in the face. Such circumstances would not require a split-second judgment to use force against Plaintiff. Thus, there is sufficient evidence from which it could be concluded that Plaintiff was subjected to the excessive use of force. *See, e.g., Newland v. Achute,* 932 F.Supp. 529, 534 (S.D.N.Y.1996) (holding that it could reasonably be concluded that the defendants used excessive force against plaintiff who was assaulted by prison guards while he was handcuffed).

### 1. Direct Participation

**\*18** It is well-settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991)). A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the

victim even though he had a reasonable opportunity to do so. *See Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 129 (2d Cir.1997); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994).

**\*7** Reasonable jurors could conclude that Hill was a direct participant in the excessive use of force against Plaintiff. Plaintiff admits that he cannot say with certainty which particular officer punched him. However, under the facts and circumstances of this case, Plaintiff need not establish who, among the group of officers, directly participated in the attack because there is sufficient circumstantial evidence from which the trier of fact could make reasonable conclusions concerning who, if anyone, struck Plaintiff. *See Skorupski v. County of Suffolk,* 652 F.Supp. 690, 694 (E.D.N.Y.1987) (rejecting defendants' argument that they were entitled to summary judgment because plaintiff cannot specify which of the officers struck him and finding that all of the officers were potentially liable because they had an affirmative duty to intervene).

Plaintiff states that he was being escorted to a police car by Harrigan and Kane when a non-uniformed man approached him, asked "[r]emember me?", and then punched him in the face. The question "[r]emember me?" indicates that the non-uniformed man saw Plaintiff prior to his arrest. In addition, it could reasonably be concluded that the non-uniformed man was a police officer because there is no evidence that anyone else was at the scene or that Harrigan and Kane tried to prevent anyone from reaching Plaintiff. A trier of fact could reasonably conclude that Harrigan and Kane would not have reason to try to keep fellow officers away from Plaintiff. Moreover, neither Hill nor Ritz was wearing a uniform that evening; both had seen Plaintiff in a previous encounter that evening; and both were at the scene sometime after Plaintiff was handcuffed.

It is uncontested that while Ritz was at the scene, he did not exit his vehicle at any time while Plaintiff was handcuffed. Hill states that while he was at the scene, the only time he saw Plaintiff was when he identified him sitting in back of the police car operated by Feldhaus and Maskow. However, Feldhaus and Moskow indicate that they never saw Hill approach the car.

Plaintiff also states that the man who punched him was taller than he. According to personnel data, Ritz stands 5'8" tall. Hill states that he is 5' 10" tall, however he

testified in a previous action that he was 6' tall. Plaintiff stands 5'11". As a result of being handcuffed, he was walking in a "bent over" manner at the time he was punched. It would be reasonable to conclude that under Plaintiff's circumstances, a man who stands 5'10" to 6' tall would appear taller than him.

Based on the foregoing, a fair minded trier of fact could reasonably conclude that Hill used excessive force against Plaintiff.

### 2. *Failure to Intercede*

An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, *see O'Neill v. Krzeminski,* 839 F.2d 9, 11–12 (2d Cir.1988); (2) that a citizen has been unjustifiably arrested, *see Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir.1982); or (3) that any constitutional violation has been committed by a law enforcement official, *see O'Neill,* 839 F.2d at 11. For liability to attach, there must have been a realistic opportunity to intervene to prevent harm from occurring. *See id.* at 11–12. Whether an officer had sufficient time to intercede or was capable of preventing the harm being used by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise. *Id.*

**\*19 \*8** Plaintiff states that the uniformed officers, presumably Defendants Kane and Moskow, did not try to protect him by stepping between him and the non-uniformed man. Plaintiff further claims that the uniformed officers held him while the non-uniformed man punched him. Defendants contend that they did not have a realistic opportunity to prevent the incident. Indeed, the single punch may have occurred without warning, providing no time for the uniformed officers to prevent it. *See, e.g., id.* at 11 (holding that a police officer had "no realistic opportunity" to react when the plaintiff was struck by three blows in rapid succession). However, there is a triable issue of fact as to whether the uniformed officers held Plaintiff so that he could be punched or whether they had an insufficient opportunity to react to an unexpected punch. [4]

9

> Because it is uncontested that Defendant Ritz did not exit his vehicle at any time while Plaintiff was handcuffed, he could not have participated in holding Plaintiff during the punch. Also, a fair minded

trier of fact could only reasonably conclude that Ritz, who was seated in his vehicle, did not have a sufficient opportunity to react to an unexpected punch. Therefore, Plaintiff's claim of excessive force against Ritz is dismissed.

### d. Equal Protection

Plaintiff's complaint also asserts an equal protection violation. The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *Delisser v. Goord,* No. Civ. 9:02cv00073, 2003 WL 133271, at *6 n.8 (N.D.N.Y. Jan. 15, 2003) (citing *City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). "To prove an equal protection violation, claimants must prove purposeful discrimination directed at an identifiable or suspect class." *Id.* (citing *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995)). Here, Plaintiff offers no evidence that he was treated differently than similarly situated persons. Thus, his equal protection claim is dismissed.

### e. Qualified Immunity

Defendants next claim that they are entitled to qualified immunity. As the Second Circuit has explained:

We conduct a two part inquiry to determine if an official is entitled to qualified immunity. The threshold question is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier [v. Katz],* 533 U.S. [194, 201], 121 S.Ct. 2151 [ ( 2001) ]. Addressing this initial question serves the important role of providing a clear standard against which officers can measure the legality of future conduct.... Thus, although we have under certain circumstances bypassed this first step and proceeded directly to the qualified immunity inquiry, that is the exception rather than the rule....

If we determine that the officer's conduct did not violate a constitutional right, we proceed no further and hold that the officer is entitled to qualified immunity. *See Saucier,* 533 U.S. at 201. However, if we decide otherwise, we proceed to "ask whether the right was clearly established" at the time it was allegedly infringed. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151....

**\*9** Said differently, if the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions.... If the officer reasonably believed that his actions did not violate the plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken.... However, if his belief was not objectively reasonable, qualified immunity offers him no solace and the plaintiff's claims must be allowed to proceed. *See Harlow [v. Fitzgerald],* 457 U.S. [800, 818–819 (1982) ].

**\*20** *Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir.2002).

### 1. *Glasser's and Ritz's Entitlement to Qualified Immunity*

Because Glasser and Ritz did not violate Plaintiff's Fourth Amendment rights, they are entitled to qualified immunity. Indeed, Glasser had probable cause to issue criminal process against Plaintiff and Ritz had probable cause to believe that Plaintiff committed a crime. Even assuming there was a constitutional violation, reasonable officers could disagree whether there was probable cause and Defendants Glasser and Ritz, therefore, are entitled to qualified immunity as to all of Plaintiff's claims. *See Saucier,* 533 U.S. at 201.

### 2. *Hill's Entitlement to Qualified Immunity*

It is clearly established that pre-trial detainees have the right to be free from excessive force. As previously discussed, it could be reasonably concluded that Plaintiff's Fourth Amendment freedom from the use of excessive force was violated. Thus, the inquiry becomes whether the officers' belief in the lawfulness of their actions was reasonable. The facts alleged, taken in the light most favorable to Plaintiff, demonstrate that Hill used excessive force against Plaintiff. There is evidence from which it could reasonably be concluded that Plaintiff was struck without any purpose other than to inflict pain or cause injury to him. If true, such actions would be unreasonable and no fair minded trier of fact could conclude otherwise. *See Graham,* 490 U.S. at 396. Thus, Defendant Hill is not entitled to summary judgment on the issue of qualified immunity as to the claim of excessive force.

### 3. *Kane's and Moskow's Entitlement to Qualified Immunity*

Also as previously shown, there are triable issues of fact as to whether Defendants Kane and Moskow had a

reasonable opportunity to protect Plaintiff from the use of force. If Kane and Moskow were holding Plaintiff in place while he was punched, any belief in the lawfulness of their action would be unreasonable. Thus, Defendants Kane and Moskow are not entitled to summary judgment on the issue of qualified immunity as to the claim of excessive force.

### f. Municipal Liability Under § 1983

Plaintiff claims that the City established an unwritten custom of ratifying and authorizing unconstitutional actions of its employees. *See Hogan v. Franco,* 896 F.Supp. 1313, 1319 (N.D.N.Y.1995) (the existence of the policy or custom does not need to be evidenced by a writing); *Poulsen v. City of North Tonawanda,* 811 F.Supp. 884, 896 (W.D.N.Y.1993) ("[a] municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials."). Specifically, Plaintiff claims that the City failed to properly train and supervise its officers. He asserts that the City of Schenectady Police Department established the customs or practices of utilizing excessive force in arrests and failing to investigate internal affairs complaints against officers involved in unconstitutional conduct. [5]

[10]    Plaintiff asserts several other grounds for municipal liability by listing histories of other alleged unconstitutional actions by City police officers. However, either the actions are not similar to the actions of the Defendant officers which reasonable factfinders could conclude to be unconstitutional or they do not exemplify constitutional violations.

***21  *10** When subordinate municipal officials are alleged to have committed a constitutional violation, municipal liability turns on the plaintiff's ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policymaking authority. *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 126 (2d Cir.2004). One method of implicating a policymaking official through subordinates' conduct is to show that the policymaker was aware of the subordinates' unconstitutional actions and consciously chose to ignore them, effectively ratifying the actions. *Id.* Thus, where a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a "deliberate choice," that acquiescence may "be properly thought of as a city 'policy or custom' that is actionable under § 1983." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)

(citations omitted); *see also Jeffes v. Barnes,* 208 F.3d 49, 63 (2d Cir.2000); *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995).

To prove "deliberate indifference," a plaintiff must demonstrate that (1) "a policymaker knows 'to a moral certainty' that [his or] her employees will confront a given situation" ; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; [6] and (3) "the wrong choice by the [municipality] employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker v. City of New York,* 974 F.2d 293, 297–98 (2d Cir.1992) (internal quotations and citations omitted). Because the failure to properly train theory and the failure to properly supervise theory emphasize different facts and require different showings in order to establish the official's deliberate indifference, they must be analyzed independently. *Amnesty America,* 361 F.3d at 127.

[11]    If there is a history of police officers using excessive force against citizens, the municipality may then be required to train officers not to engage in this type of activity, since the test requires a choice that is either difficult or frequently mishandled.

### 1. *Failure to Properly Train*

A municipality can be liable for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training. *City of Canton,* 489 U.S. at 387–90. Plaintiff must identify a specific deficiency in the city's training program and establish that the deficiency caused a deprivation of his constitutional rights. *Id.* at 391.Such evidence is necessary to show that "the officer's shortcomings ... resulted from ... a faulty training program" rather than from the negligent administration of a sound program or other unrelated circumstances. *Id.* at 390–91.

In the present case, Plaintiff has proffered no evidence of the City's training program or advanced any theory as to how a training deficiency caused a deprivation of his rights. He only concludes that the City failed to train its officers not to engage in certain unconstitutional acts. Plaintiff offers as evidence a list of prior felony convictions of City police officers, sworn testimony regarding the behavior of City police officers, and case

law in which City police officers were found liable for civil rights violations. However, the factfinder's inferences of inadequate training and causation must be based on more than the mere fact that misconduct occurred in the first place. *City of Canton,* 489 U.S. at 390–92. "To adopt lesser standards of fault and causation would open municipalities to unprecedented liability under § 1983." *Id.* Plaintiff has provided no evidence as to whether the City trained its officers between the cited incidents, how the training was conducted, or how better or different training could have prevented his injury. *See Amnesty America,* 361 F.3d at 130. Neither has Plaintiff provided evidence tending to rule out those causes of his injury that would not support municipal liability, such as the negligent administration of a valid program, or one or more officers' negligent or intentional disregard of their training. *Seeid; City of Canton,* 489 U.S. at 390–91. Therefore, no reasonable trier could conclude that the City failed to properly train its officers as Plaintiff alleges.

### 2. *Failure to Properly Supervise*

**\*22 \*11** In the context of a failure to supervise case, deliberate indifference may be established by showing that policymaking officials deliberately ignored an obvious need for supervision. *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents. *Id.* When it is claimed that a municipality negligently supervised its officers in their use of force, the evidence that a number of claims of police brutality has been made by other persons against the city, together with evidence as to the City's treatment of these claims, is relevant. *Fiacco v. City of Rensselaer, N.Y.,* 783 F.2d 319, 328 (2d Cir.1986).

In the present case, Plaintiff has presented triable issues of fact as to whether the City failed to properly supervise its officers. Plaintiff cites the prior civil rights actions of *John C. Rodick v. City of Schenectady, et. al.,* No. 90–cv–0937 (N.D.N.Y.), and *DiSorbo, et. al. v. City of Schenectady, et. al.,* No. 99–cv–1131 (N.D.N.Y.), in which it was found that City officers used excessive force against citizens. Specifically, in *DiSorbo,* a jury found that Defendant Hill failed to intervene during another officer's use of excessive force even though he ultimately was found to be entitled to qualified immunity. *See DiSorbo v. Hoy,*

343 F.3d 172, 180 (2d Cir.2003). As previously discussed, it could also be concluded that the Defendant officers engaged in similar conduct during Plaintiff's arrest. Thus, Plaintiff has presented sufficient evidence to support the conclusion that there was a recent history of City officers using excessive force.

In addition, it could also be concluded that City officials were aware of repeated incidents of officer misconduct and deliberately failed to take any remedial steps. The claims of excessive force against City police officers in *Rodick* and *DiSorbo* were commenced in 1990 and 1999, respectively. This supports a conclusion that the City had notice that its officers were using excessive force well before the events in the present case. However, in *DiSorbo,* the plaintiff presented evidence from *Rodick* which showed that the City took no disciplinary action against officers who used excessive force. *See Hoy,* 343 F.3d at 181. Moreover, Plaintiff provides circumstantial evidence that ranking members of the City police department had notice of incidents of officer misconduct and consciously chose not to take any disciplinary action. Former Schenectady Police Department internal affairs officer Eric Yager stated in an affidavit that he informed Schenectady Police Department Chief Gregory Kaczmarek that some patrol division officers were entering into investigations without proper training, that the officers were not following proper procedures and policies, and that the officers were acting in an illegal manner towards citizens. Yager stated that Kaczmarek did not believe the information and refused to open an investigation. Furthermore, former Schenectady Police Department internal affairs officer Daniel Johnson stated that the chief requested that complaints regarding certain officers be referred to assistant chiefs, but not to Johnson, for investigation. Taking this evidence in the light most favorable Plaintiff, a fair minded trier of fact could reasonably conclude that the City had notice that its officers engaged in illegal activities with citizens, including the excessive use of force, but exhibited deliberate indifference by declining to properly investigate or impose disciplinary measures.

### V. CONCLUSION

**\*23 \*12** For the foregoing reasons, Defendants Ritz, Kane, Moskow, Glasser, and City of Schenectady's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's claims of false arrest, unlawful search and seizure, malicious abuse of

process, unlawful imprisonment, equal protection, and failure to properly train are DISMISSED as to those Defendants. Plaintiff's claim of excessive force is dismissed only as to Defendants Ritz and Glasser. Defendant Hill's motion for summary judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's claims of false arrest, unlawful search and seizure, malicious abuse of process, unlawful imprisonment, and equal protection are DISMISSED as to Defendant Hill. In all other respects, Defendants' motions are DENIED.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1732006

2014 WL 3695488

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.

Justin MUNLYN, Plaintiff,

v.

Correction Officer PIETRIE, Correction Officer Koon, Correction Officer Newark, Dr. Adams, Upstate Corr. Fac. 11 Bldg, RN Wilson, Upstate Corr. Fac. 11 Bldg, Nurse John Doe, Upstate Corr. Fac. 11 Bldg, Defendants.

No. 13–CV–6170FPG.

|

Signed July 24, 2014.

**Attorneys and Law Firms**

Justin Munlyn, Attica, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office, Rochester, NY, for Defendants.

**DECISION AND ORDER**

FRANK P. GERACI, JR., District Judge.

## I. INTRODUCTION

**\*1** *Pro se* Plaintiff Justin Munlyn ("Plaintiff"), an inmate in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), filed a Complaint on March 29, 2013 against Defendants CORRECTION OFFICER PIETRIE ("CO.Pietrie"); CORRECTION OFFICER KOON ("C.O.Koon"); CORRECTION OFFICER NEWARK ("CO.Newark"); DR. ADAMS ("Dr.Adams"), Upstate Corr. Fac. 11 Bldg; RN WILSON ("RN Wilson"), Upstate Corr. Fac. 11 Bldg; and NURSE JOHN DOE ("Nurse Doe"), Upstate Corr. Fac. 11 Bldg, pursuant to 42 U.S.C. § 1983, alleging as the constitutional bases for his claim cruel and unusual punishment in violation of the Eighth Amendment and a violation of the Equal Protection Clause of the Fourteenth Amendment. ECF No. 1. The Complaint also shows Plaintiff checked the following grounds for his § 1983 action: "Equal Protection," "Excessive Force," "Failure to Protect," and "Denial of Medical Treatment." *Id.* at 5.

Defendants have filed a motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting Plaintiffs failure to state a claim upon which relief can be granted (ECF No. 10), and Plaintiff has submitted his Memorandum in Opposition to the Motion to Dismiss (ECF No. 15).[1] Upon review of this matter, including to the extent that Plaintiff alleged the checked claims, and for the reasons set forth herein below, the Defendants' motion to dismiss the Complaint is hereby granted.

[12]  On December 31, 2013, this Court entered an Order denying Plaintiff's Notice of Motion seeking "an extension to prepare a request for discovery and a motion to compel of interrogatories." ECF No. 17. Subsequently, due to the pendency of Defendants' Motion to Dismiss and Plaintiff's timely filed response thereto, the Court denied Plaintiff's request for discovery pursuant to Fed.R.Civ.P. 12(b) and *Applewhite v. Sheahan,* No. 08–CV–6045–CJS, at \*5, 2013 WL 144957 (W.D.N.Y. January 11, 2013). ECF No. 19.

## II. FACTUAL BACKGROUND

The Complaint sets forth two separate claims. The following allegations comprise the first claim (ECF No. 1, p 6–8): On February 27, 2012, Plaintiff and other two inmates were transported from Five Points Correctional Facility ("Five Points") to court in Seneca County by

C.O. Pietrie, C.O. Koon and C.O. Newark. Before being transported and after arriving at the Seneca County Court building, Plaintiff informed them that his leg braces were on incorrectly. Initially, Plaintiff was told to "Wait until we feel like changing them," and at the Seneca County Court his escort officer "checked them only with a[n] eyes view," and told Plaintiff to "sit down." After court, again, Plaintiff pleaded to change the direction of his leg irons, but no change was made. Their attention diverted by a female officer transporting another inmate and "neglecting their responsibilities," CO. Pietrie and CO. Koon directed Plaintiff, in full restraints, and another inmate to go down the stairs unattended. As Plaintiff proceeded to do so, the cuff on the leg iron poked him in the ankle and when he tried to regain his balance, the chain of the leg iron tripped his left foot causing him to fall on his back and slide with another inmate, who tried to help him, down a flight of stairs. Plaintiff, along with the other inmate, was transported by ambulance to Geneva Medical Center where Plaintiff was treated for injuries to his neck, back and right wrist, given pain medication by injection, a cushion neck brace, a wheel chair and a cane. Upon his return to Five Points, Plaintiff was seen by a nurse who took his statement for his medical files. After complaining all night about his pain and making a written complaint about how he was treated, Plaintiff was transferred the next morning to Downstate Correctional Facility ("Downstate"), where Plaintiff was given everything ordered.

**\*24 \*2** The second claim (ECF No. 1, p 6, 9–11) alleges that from February 28, 2012 until May 23, 2012, Plaintiff, then an inmate at Upstate Correctional Facility ("Upstate"), sent many complaints requesting to be seen by the doctor for chronic neck, back and wrist pains. Nurse Doe, against whom Plaintiff had used the grievance procedure, stopped by his cell, but was disrespectful and denied all requests to see the doctor. Plaintiff was finally seen once by Dr. Adams who "has a long history of being unprofessional and negligent to inmates." Dr. Adams stated, "He could care less of my pains" and asked about "my asthma." At that time, Doctor Adams ordered officers to "forcefully" take Plaintiff's neck brace and walking cane, and upon Plaintiff's refusal and repeated statements that he was in pain, Dr. Adams denied him permission to see the Upstate physical therapist. According to Plaintiff, RN Wilson neglected all of Plaintiff's complaints and stated, "Stop lying your [sic] fine." "In result to negligence," Plaintiff was subsequently transferred to Clinton Correctional Facility where he was

treated and provided pain medication and, thereafter, transferred to Auburn Correctional Facility where he is seeing a mental health specialist and receiving physical therapy to help relieve pain.

## III. DISCUSSION

### A. Legal Standard for Motion to Dismiss

A court deciding a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The determination regarding "whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Under this plausibility standard, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

"[W]ell-pleaded factual allegations" permit a court to "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Although Plaintiff's factual allegations set forth in the Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* at 678. If a plaintiff "ha[s] not nudged [his/her] claims across the line from conceivable to plausible, [his/her] complaint must be dismissed." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "In ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6), the duty of the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable L.L.C.,* 622 F.3d 104, 113 (2d Cir.2010).

**\*3** Where the complaint was filed *pro se,* "it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer,* 738 F.3d 509, 515 (2d Cir., 2013) (citing

*Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011) (internal quotation marks omitted)). Notwithstanding this solicitous approach, a *pro se* complaint must state a plausible claim for relief. *See Harris v. Mills,* 572 F.3d 66, 73 (2d Cir.2009).

### B. 42 U.S.C. § 1983 Claims

**\*25** Section 1983 does not itself create any substantive rights, but provides a means by which a person alleging a constitutional violation may bring a claim.[2] (*Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (citing *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)) (Section 1983, itself, is not " 'a source of substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.' ")). Thus, to state a claim under § 1983, a person must allege that a defendant acting under color of state law has deprived him of a right, privilege, or immunity guaranteed by the Constitution and laws of the United States. *See* 42 U.S.C. § 1983. Here, Plaintiff alleges violations of his Eighth Amendment rights by excessive force, denial of medical treatment and failure to protect his safety, and violations of his Fourteenth Amendment right to equal protection under the law.

13    42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

### 1. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment," U.S. Const. amend. VIII, and this prohibition includes punishments that "involve the unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). Inmates "have the right to be free from the 'unnecessary and wanton infliction of pain' at the hands of prison officials," *Romano v. Howarth,* 998 F.2d 101, 104 (2d Cir.1993) (*citing Estelle v. Gamble,* 429 U.S. at 104) (quoting *Gregg v. Georgia* 428 U.S. at 173).

### a. Excessive Force

To bring an excessive force claim under the Eighth Amendment, a plaintiff must allege both an objective element and a subjective element. *Hudson v. McMillian,* 503 U.S. 1, 7–8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999). The objective element is "contextual and responsive to contemporary standards of decency" and requires a demonstration that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection." *Hudson v. McMillian,* 503 U.S. at 9–10. Thus, the Eighth Amendment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* "Consequently, not every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.") Yet, "when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated .... whether or not significant injury is evident." *Id.* at 9.

**\*4** The subjective component of an excessive force claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in view of the particular circumstances surrounding the challenged conduct. *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) (citing *Blyden v. Mancusi,* 186 F.3d at 262) (quoting *Wilson v. Setter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). Whether conduct in an excessive force case was "wanton" turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. at 7;*see also Blyden v. Mancusi,* 186 F.3d at 262–63.

**\*26** Assuming, as I must, that the factual allegations of the complaint are true and interpreting the Complaint to raise the strongest claims that it suggests, and to the extent that Plaintiff's allegations suggest an excessive force claim, I conclude that Plaintiff has failed to state a plausible claim under the Eighth Amendment. Read liberally, the Complaint merely alleges the leg irons were placed on improperly or incorrectly and reflects no allegations that

any force whatsoever was used by the corrections officers in the placement of the leg irons, or that Plaintiff suffered harm or physical injury in the placement of the leg irons. Unlike in *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994) (complaint alleged too tightly placed restraints, causing serious and permanent physical injury, were placed wantonly and maliciously in retaliation for being a litigious inmate), Plaintiff's allegations are insufficient to meet the objective standard, and absent from the Complaint are any allegations from which the necessary subjective component of "wantonness" may be gleaned. The allegations of excessive force set forth in this claim fail both prongs of the Eighth Amendment analysis. To the extent alleged, this claim is dismissed.

**b. Denial of Medical Treatment**

Plaintiff also alleges as a constitutional basis for his § 1983 action the denial of medical treatment. ECF No. 1. Construing Plaintiffs allegations to suggest the strongest possible arguments, he is alleging a violation of the Eighth Amendment due to inadequate medical treatment or care by Upstate medical officials. To establish an Eighth Amendment claim for inadequate medical treatment or care, a plaintiff must prove that the defendant(s) acted with "deliberate indifference to [his] serious medical needs," *Estelle v. Gamble,* 429 U.S. at 104, as distinguished from offering mere proof of "negligen[ce] in diagnosing or treating a medical condition." *Id.* at 106; *see also Farmer v. Brennan,* 511 U.S. 825, 834–35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

This deliberate indifference standard is comprised of objective and subjective components. *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996). "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* (internal quotation marks omitted). Assessment of this objective component requires a court to determine whether the inmate was actually deprived of adequate medical care, *i.e.,* in violation of the prison official's duty to provide reasonable care, *and* whether this inadequacy in medical care is sufficiently serious to have caused or will likely cause harm, if any, to the inmate. *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006) (internal citations omitted).

**\*5** "The objective component of an Eighth Amendment claim is ... [necessarily] contextual and fact-specific,

as such the serious medical need inquiry must be tailored to the specific circumstances of each case." *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003) (internal citation and quotation marks omitted). Factors considered relevant in determining the existence of a serious medical condition include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (citations omitted). A deprivation of medical treatment can occur by prisoner officials unnecessarily delaying or interrupting medical care. *See Smith v. Carpenter,* 316 F.3d at 185. When the prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court addresses its seriousness inquiry to "the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Id.*

"Subjectively, the charged official must act with a sufficiently culpable state of mind," *i.e.,* "something more than mere negligence," and "the equivalent of criminal recklessness." *Hathaway v. Coughlin,* 99 F.3d at 553. Thus, under the subjective component, an official acts with the requisite deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance v. Armstrong,* 143 F.3d at 702 (quoting *Farmer v. Brennan,* 511 U.S. at 837). No claim of deliberate indifference under the Eighth Amendment is stated by "mere allegations of negligent malpractice." *Estelle v. Gamble,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.").*Id.*

**\*27** Courts have recognized that not every claim of inadequate medical treatment made by a prisoner states an Eighth Amendment violation. *See Salahuddin v. Goord,* 467 F.3d at 279. It has long been establish that an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth

amendment violation." *Chance v. Armstrong,* 143 F.3d at 703. "The essential test is one of medical necessity and not one simply of desirability." *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986).

**\*6** Here, construing the Complaint liberally, Plaintiff has failed to meet either the objective or the subjective component requirements of deliberate indifference to his medical needs. Absent from the Complaint are any allegations which can be construed as indicating (1) Plaintiff had an urgently, serious medical condition capable of producing "death, degeneration, or extreme pain," and (2) prison medical staff knew of and disregarded an excessive risk to Plaintiff's health and safety. Except for stating that he was "in pain," the Complaint does not describe the level or extent of the pain, the particular condition(s) with which the pain was associated, any resulting inability to engage in normal activities, or any harm consequently experienced or likely to occur. Additionally, the Complaint fails to specify the nature of the complaints made to Nurse Wilson, and the Court must disregard, as conclusory and nonfactual, Plaintiff's allegation regarding Dr. Adam's history of negligently treating prison inmates.

By his allegations, Plaintiff appears to claim that Dr. Adams, Nurse Wilson and Nurse Doe either did not believe he had any pain, or disputed the severity of the pain, and acting on these beliefs, Nurse Doe refused Plaintiff's requests to see the doctor; Dr. Adams ordered his neck brace and walking cane taken away, did not permit him to see the physical therapist; and Nurse Wilson told him to stop lying. These allegations not only fail to show that in doing so, prison medical officials acted with deliberate indifference, *i.e.,* "for the very purpose of causing harm or with knowledge that harm will result," *Chance v. Armstrong,* 143 F.3d at 703, they reflect Plaintiffs disagreement with their evaluation and assessment of his medical circumstances. Plaintiff's mere disagreement over proper medical treatment does not give rise to a constitutional claim. *Id.; see also Arnold v. Westchester County,* 2012 U.S. Dist. LEXIS 12992, at \*34–35, 2012 WL 336129 (S.D.N.Y. February 3, 2012) ("Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments not the Eighth Amendment") (citation omitted). This claim is therefore dismissed.

### c. Failure to Protect

The Eighth Amendment also imposes duties on prison officials to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan,* 511 U.S. at 832 (citing *Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). An inmate asserting a failure to protect claim under the Eighth Amendment must establish both that the deprivation alleged is sufficiently serious—imposing a substantial risk of serious harm, *id.* at 834, and that the defendant acted with a "sufficiently culpable state of mind" —" 'deliberate indifference' to the inmate's health and safety." *Hope v. Pelzer,* 536 U.S. 730, 738, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Thus, prison officials are liable for failure to protect inmates only when they "know[ +] of and disregard[ +] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. at 837. A prison "official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot ... be condemned as the infliction of punishment." *Id.* at 838. "Eighth Amendment liability requires more than ordinary lack of due care for the prisoner's interests or safety." *Id.* at 835 (internal quotes omitted). Significantly, for purposes of analyzing Eighth Amendment claims, "the Supreme Court has drawn a 'distinction between mere negligence and wanton conduct....'" *Graham v. Poole,* 476 F.Supp.2d 257, 260 (W.D.N.Y.2007) (citing *Whitley v. Albers,* 475 U.S. 312, 322, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)).

**\*28 \*7** Accepting as true, Plaintiff's allegations that the attention of CO. Pietrie, CO. Koon and CO. Newark was diverted by a female officer transporting another inmate, and they "neglected their responsibilities" by permitting him, while shackled incorrectly, to proceed unescorted down the stairs and as a result, he slipped and fell down the stairs, sustaining injuries to his neck, back and wrist, the Complaint, at most, alleges no more than a simple claim of negligence, which under well settled law, *see Daniels v. Williams,* 474 U.S. 327 (1986), does not give rise to a cause of action under § 1983, even if corrections staff had actual or constructive knowledge of the danger. *See, e.g., Cox v. Nassau County Corr. Ctr.,* 2013 U.S. District LEXIS 31622, at \*7–8, 2013 WL 831194 (E.D.N.Y. Feb. 15, 2013); *Graham v. Poole,* 476 F.Supp.2d at 260 (in case concerning prisoner slip-and-all claim, holding that "[a]lthough plaintiff alleges that defendants were aware of

the dangerous condition of the shower floor and failed to rectify it, that amounts to nothing more than negligence, and is not enough to establish an Eighth Amendment claim"). Even if C.O. Pietrie, C.O. Koon and C.O. Newark actually or constructively knew of the danger, Plaintiff has failed to state an Eighth Amendment claim in that he has alleged no facts showing that they consciously disregarded an excessive risk to his health or safety. In the absence of allegations that these corrections officers displayed deliberate indifference to his health or safety, this claim is dismissed.

**d. Denial of Equal Protection**

Lastly, the Complaint alleges, in cursory fashion and without elaboration, a violation of the Equal Protection Clause of the Fourteenth Amendment. ECF No. 1. To state a viable equal protection claim under the Fourteenth Amendment, "a plaintiff generally must allege either 'purposeful discrimination ... directed at an identifiable or suspect class,'" *Barnes v. Fedele,* 760 F.Supp.2d 296, 301 (W.D.N.Y. January 13, 2011) (quoting *Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995)) (citing *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)), or that he or she "has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment." *Id.* (citing *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)) (per curiam).

Upon even the most liberal reading, the Complaint asserts no set of facts from which to construe the occurrence of the claimed Equal Protection violation. For this reason, the claim must be dismissed.

### IV. CONCLUSION

I conclude that Plaintiff has failed to nudge any of his claims "across the line from conceivable to plausible," *Bell Atlantic Corp. v. Twombly,* 550 U.S. at 570, and the Complaint filed in Case No. 13–CV–6170 must be dismissed. Defendants' motion to dismiss (ECF No. 10) is granted. The Clerk of the Court is hereby directed to dismiss the Complaint and, accordingly, close this case forthwith.

**\*8** IT IS SO ORDERED.

**All Citations**

Slip Copy, 2014 WL 3695488

2010 WL 3169391

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Daniel RILES, Plaintiff,

v.

Daniel BANNISH, et al., Defendants.

No. 3:10–CV–652(RNC).

Aug. 11, 2010.

**Attorneys and Law Firms**

Daniel A. Riles, Jr., Somers, CT, pro se.

### *INITIAL REVIEW ORDER*

ROBERT N. CHATIGNY, District Judge.

**\*1** Plaintiff, an inmate at Northern Correctional Institution, brings this action pro se pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986 against sixteen employees of the Department of Correction ("DOC"), as well as a Connecticut state trooper, all of whom are sued in their individual capacities only. The complaint claims damages for assault, conspiracy, deliberate indifference to serious medical needs and intentional infliction of emotional distress. Under 28 U.S.C. § 1915A, the Court must review the complaint and dismiss any part of it that fails to state a claim on which relief can be granted.[1]

14      The caption of the complaint includes as defendants Dr. Rutherford and Dr. Miranda, but neither of them is mentioned in the body of the complaint. Accordingly, the complaint against them will be dismissed without prejudice for failure to state a claim on which relief can be granted.

### I. The Complaint

The complaint alleges the following. On March 17, 2008, the plaintiff was assaulted at Northern by Correction Officer ("CO") Michael Blue. A surveillance camera recorded the assault on videotape. As a result of the assault, the plaintiff sustained fractures of his left and right nasal bones. CO Carl Badeau, who witnessed the assault, ran up to Blue and remarked that he was going to have to "say something good." They agreed to falsely claim that the plaintiff had tried to spit on Blue.

**\*29** Plaintiff was taken to the medical unit at Northern, where defendant Paul Wilbur, a nurse in the medical unit, gave him an ice pack for his nose. No x-ray was taken. [2] While in the medical unit, plaintiff complained to defendants Robert Ames and Ned McCormick, both supervisors on duty at the time, that Blue had assaulted him. They assured the plaintiff that his complaint would be investigated and Ames took photographs of the plaintiff's face and head. As a result of DOC's investigation, plaintiff's complaint was substantiated and disciplinary action was taken against Blue. No disciplinary proceeding was initiated against the plaintiff, however.

[15]    A medical incident report prepared by Nurse Wilbur contains the following "assessment" of the plaintiff's condition: "Alert and oriented X3, gait steady, small amount of blood left nostril, no active bleeding noted, neuro signs intact, nose midline with slight edema right side. No other injury noted."

Plaintiff wrote to the Connecticut State Police reporting the assault. Defendant Bissaillon, a state trooper, took a statement from the plaintiff. Bissaillon told the plaintiff that he had viewed the videotape of the incident and spoken with Blue and Badeau. According to the plaintiff, Bissaillon stated that he had agreed not to arrest Blue and that the plaintiff would be arrested if he "pushed the issue."

On March 18, 2008, the day after the assault, the plaintiff submitted a sick call request to the medical staff at Northern stating that he was in pain. He requested pain management and an x-ray of his nose. Six days later, on March 24, 2008, he was seen by Dr. Carson Wright, a physician at Northern. Plaintiff told Dr. Wright that he was in excruciating pain and believed his nose was broken. Dr. Wright ordered an x-ray of the plaintiff's nose, but failed to provide the plaintiff with pain medication, allegedly telling him to "man-up" and "take the pain."

On April 7, 2008, an x-ray was taken of the plaintiff's nose. A report of the results was returned to the medical unit two days later. The report contains the following findings: "multiple nose fractures of the right and left nasal bone, mildly displaced." The medical unit did not inform the plaintiff of the results of the x-ray or provide him with any additional treatment.

**\*2** In early May 2008, the plaintiff submitted another sick call request. He stated that he was still in pain, his sense of smell was gone, and his ability to taste was diminishing. On June 23, he was seen by Dr. Wright. On that date, Dr. Wright informed him of the x-ray results. According to the plaintiff, he caught Dr. Wright attempting to make a false entry in the chart. When questioned about this, Dr. Wright allegedly told the plaintiff, "I fucked up."

On June 29, 2008, plaintiff submitted an "inmate administrative remedy form" complaining about Dr. Wright's failure to provide adequate care for his broken nose and requesting to be seen by an outside doctor.

On July 21, Dr. Wright submitted a request to the Utilization Review Committee ("URC"), headed by defendant Mark Buchanan, asking that the plaintiff be checked by an ear, nose and throat specialist ("ENT"). In his request, Dr. Wright stated that the plaintiff was complaining about losing his ability to smell and taste food, that Dr. Wright had spoken with an ENT about this, and that the ENT had recommended that the plaintiff be seen by a specialist. Dr. Wright received no response from the URC. According to the complaint, Dr. Wright followed up with additional requests for the plaintiff to be seen by an ENT but these requests also were ignored.

**\*30** In September 2008, plaintiff began to have recurring nosebleeds from his right nostril, which worsened over time. He informed medical staff at Northern. Defendant Wendy Sanders, a staff nurse, told him the nosebleeds were a normal reaction to temperature change within the unit and should be addressed by drinking fluids. To stop the nosebleeds, medical staff packed the plaintiff's nose with gauze and instructed him to do the same. The individuals who did this are not identified in the complaint. After using the nose packs, the plaintiff developed a severe nasal infection.

On December 12, 2008, Dr. Wright submitted another request to the URC asking that the plaintiff be seen by an ENT. On December 22, the URC denied the request.

Plaintiff signed the denial from the URC on December 29, 2008. That same day, he filed a grievance complaining that the URC had failed to act on the requests submitted by Dr. Wright. On January 20, 2009, defendant Sanders denied the grievance, informing the plaintiff that he should speak with Dr. Wright regarding his concerns and sign up for sick call as needed. On August 14, 2009, Dr. Wright submitted another request to seeking approval for an ENT consult. This request was denied on September 15, 2009.

In October 2009, the plaintiff was examined by Dr. Syed Naqvi. Dr. Naqvi indicated that the nose packs used to stop the plaintiff's nosebleeds had been counterproductive in that they had caused the plaintiff's nasal infection and increased the bleeding. The doctor also indicated that a "smell test" administered to the plaintiff by Northern medical staff would not have aided in the diagnosis and treatment of his condition.

**\*3** Plaintiff claims that as a result of the defendants' unconstitutional acts and omissions, he continues to suffer recurring nosebleeds, can no longer smell or taste food and has "developed an ailment that will require his nose to be re-broken in order to be straightened." [3]

16    The nature of the "ailment" allegedly requiring that the plaintiff's nose be re-broken is not alleged.

## II. Analysis

### A. § 1983 Excessive Force Claim

Accepting the allegations of the complaint as true, they are sufficient to state a claim for compensatory and punitive damages against Blue under § 1983 for use of excessive force in violation of the Eighth Amendment.

### B. Conspiracy Claims Under §§ 1983 and 1985(3)

To adequately plead a conspiracy claim under § 1983, the plaintiff must allege facts showing that the defendants reached an agreement to violate one or more of his substantive constitutional rights and that he was actually injured as a result. To adequately plead a conspiracy claim under § 1985(3), he must further allege that the defendants' misconduct was racially motivated. Plaintiff's allegations do not satisfy these requirements.

The complaint alleges that Blue and Badeau conspired to falsely accuse the plaintiff of trying to spit on Blue. Filing a false charge of misconduct against a prisoner does not in itself violate a constitutional right. *Freeman v. Rideout,* 808

F.2d 949, 951–52 (2d Cir.1986)("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."). Moreover, the complaint expressly alleges that the plaintiff was never disciplined as a result of the defendants' false statements. This claim is therefore dismissed without prejudice for failure to state a claim on which relief can be granted.

The complaint alleges that Ames and McCormick conspired to deprive the plaintiff of photos of pooled blood at the scene of the assault, which would help support a claim against Blue. The substantive constitutional right at issue here appears to be the right of access to courts. *See Bounds v. Smith,* 430 U.S. 817, 821–23 (1977); *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987). To allege a violation of this right, the plaintiff must allege that the defendants intentionally took action to obstruct or impede his ability to pursue a claim against Blue resulting in actual prejudice to his legal position. *See Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997); *Duff v. Coughlin,* 794 F.Supp. 521 (S.D.N.Y.1992). Plaintiff's allegation that Ames and McCormick conspired against him is implausible, particularly in light of the allegations of the complaint showing that the assault was recorded on videotape and Ames took photos of the plaintiff's face and head. Moreover, there is no allegation that the absence of photos of the scene has caused the plaintiff any actual prejudice. For these reasons, the claim against Ames and McCormick is dismissed without prejudice for failure to state a claim on which relief can be granted.

**\*31 \*4** The complaint alleges that Bissaillon conspired with Blue and others to deprive him of "the pursuit of justice through the criminal division." This claim appears to be based solely on Bissaillon's failure to take steps to have Blue prosecuted for assault. [4] Generally, a person is not entitled to sue a state official based solely on the nonprosecution of a criminal suspect. *See Thompson v. Grey,* 2009 WL 2707397, (E.D.N.Y. Aug. 26, 2009), aff'd, 2010 WL 2836637 (2d Cir. July 20, 2010). Accordingly, this claim is dismissed without prejudice for failure to state a claim on which relief can be granted.

17    Plaintiff does not allege that he is in danger of sustaining personal injury in the future as a result of Bissaillon's alleged agreement not to arrest Blue. *See Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 378 (2d Cir.1973) ; *see also Okin v.*

*Village of Cornwall–n–Hudson Police Dept.,* 577 F.3d 414 (2d Cir.2009).

### C. Deliberate Indifference Claims

Plaintiff alleges that numerous individuals were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. A person is deliberately indifferent if he is aware of a serious medical need, and fails to provide treatment, consciously disregarding a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994). This state of mind is the "equivalent of criminal recklessness." *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1994). Generally, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." *Id.*

Viewed in a light most favorable to the plaintiff, the allegations against Dr. Wright are sufficient to state a claim of deliberate indifference. According to the complaint, Dr. Wright responded to plaintiff's complaints of excruciating pain and his specific request for "pain management" by telling him to "man-up" and "take the pain." These allegations are sufficient to withstand review under § 1915A because the plaintiff may be able to prove that the failure to provide him with pain medication amounted to deliberate indifference. *See Dulany v. Carnahan,* 132 F.3d 1234, 1244 (8th Cir.1997)(callous comments can be evidence of deliberate indifference). In addition, the complaint alleges (expressly or by reasonable implication) that Dr. Wright failed to properly diagnose and treat the plaintiff's broken nose in a timely manner even though the injury and need for treatment were obvious. These allegations also are sufficient at this stage, especially in view of Dr. Wright's alleged comments to the plaintiff. Accordingly, the action will proceed against Dr. Wright. [5]

18    Whether the allegations of the complaint are sufficient to support a claim for deliberate indifference against Dr. Wright with regard to the plaintiff's other medical problems (i.e. his recurring nosebleeds and alleged loss of the ability to taste and smell) is an issue that need not be addressed at this time and is better left until the plaintiff has the assistance of appointed counsel, which he has requested. By separate order, his request for appointed counsel will be granted.

The allegations of the complaint also are sufficient to state a claim for deliberate indifference against defendant

Buchanan, head of the URC. According to the complaint, the URC ignored repeated requests by Dr. Wright that the plaintiff be seen by an ENT. These requests were based on the recommendation of an ENT, with whom Dr. Wright had spoken regarding the plaintiff's symptoms. The complaint, construed favorably to the pro se plaintiff, implicitly alleges that Buchanan was aware of Dr. Wright's repeated requests and failed to act due to deliberate indifference.

**\*32** The allegations of the complaint fall short of supporting a deliberate indifference claim against Nurses Wilbur and Sanders. The complaint charges these defendants with "gross incompetence." But there is no allegation of an act or failure to act on the part of either of them evincing conscious disregard of a substantial risk of serious harm to the plaintiff's health. Both attempted to provide treatment for the plaintiff's symptoms and, although there were some delays in responding to his complaints, neither of them ignored his medical needs. *See Demata v. New York State Correctional Dep't of Health Services,* 1999 WL 753142, at *2 (2d Cir. Sept. 17, 1999)*(*"Although a delay in providing medical care may in some cases constitute deliberate indifference, this Court has reserved such classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fastdegenerating condition for three days; or delayed major surgery for over two years.")(internal citations and quotations omitted). Importantly, in contrast to Dr. Wright, there are no allegations of callousness on the part of Wilbur or Sanders. [6] Accordingly, the deliberate indifference claim against them is dismissed without prejudice for failure to state a claim on which relief can be granted.

19    The allegation that nose packs should not have been used to stop the plaintiff's nosebleeds does not support a deliberate indifference claim against Nurse Wilbur or Nurse Sanders because there is no allegation that either of them used or instructed the plaintiff to use nose packs and, in any event, improper use of nose packs would not amount to deliberate indifference. The same is true of the allegations regarding the use of an incorrect "smell test" (i.e. there is no indication that either of these defendants was involved in the test and the use of an incorrect would not constitute deliberate indifference in any case). The allegation that Nurse Sanders denied the plaintiff's medical grievance concerning the URC's delay in responding to Dr. Wright's requests for a

consult with an ENT also fails to support a claim against her. As she noted in the written denial, the plaintiff was being followed by Dr. Wright at that time.

**\*5** The allegations of the complaint also are insufficient to state a claim for deliberate indifference against defendants Bannish, Marcial, Hicock, Fury, Weiskopf and LaPalme. The complaint lumps these defendants together and asserts that they supported a policy designed to encourage incompetence on the part of medical staff. A prison official who is personally responsible for creating or maintaining a policy of deliberate indifference may be subject to liability, *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995), but the allegation of such a policy must be more than merely conclusory. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009). [7]

[20]     With the exception of Bannish and LaPalme, there are no allegations that these defendants were aware of the plaintiff's injury or involved in his treatment. To the extent Bannish and LaPalme were made aware of plaintiff's health concerns, documents attached to the complaint indicate that they did not ignore plaintiff's concerns but relayed them to Dr. Wright.

### D. Intentional Infliction of Emotional Distress

The complaint includes a claim for intentional infliction of emotional distress under § 1983. There is no recognized cause of action under section 1983 for intentional infliction of emotional distress. Accordingly, this claim is dismissed without prejudice for failure to state a claim on which relief can be granted.

### III. Orders

In accordance with the foregoing analysis, the Court enters the following orders:

(1) All claims against defendants Badeau, Ames, McCormick, Bissaillon, Wilbur, Sanders, Bannish, Marcial, Hicock, Fury, Weiskopf, LaPalme, Rutherford and Miranda are hereby dismissed without prejudice for failure to state a claim on which relief can be granted.

(2) The claims for damages against defendants Blue, Wright and Buchanan in their individual capacities will proceed. No other claim or defendant will be included in the case unless a motion to amend filed in compliance with Federal Rule of Civil Procedure 15 is granted by the Court.

**\*33** (3) Within ten (10) business days of this order, the Clerk will verify the current work addresses for defendants Blue, Wright and Buchanan and mail a waiver of service of process request packet to each in his individual capacity at his current work address. If any of these defendants fails to return the waiver request, the Clerk will make arrangements for in-person service by the U.S. Marshal and that defendant will be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4) The Pro Se Prisoner Litigation Office will send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

(5) The Pro Se Prisoner Litigation Office will send written notice to the plaintiff of the status of this action along with a copy of this order.

(6) Defendants will file their response to the complaint, either an answer or motion to dismiss, within seventy (70) days from the date of this order. If the defendants choose to file an answer, they will admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, will be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.

**\*6** (8) All motions for summary judgment will be filed within eight months (240 days) from the date of this order.

(9) Pursuant to Local Civil Rule 9(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion may be granted absent objection.

So ordered.

### All Citations

Not Reported in F.Supp.2d, 2010 WL 3169391

2015 WL 1471643

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.

Gerjuan TYUS, Plaintiff,

v.

Roger NEWTON, et al., Defendants.

No. 3:13–cv–1486(SRU).

|

Signed March 31, 2015.

**Attorneys and Law Firms**

Gerjuan Tyus, Somers, CT, pro se.

Elliot B. Spector, David C. Yale, Hassett & George, P.C., Simsbury, CT, Jonathan Zellner, John Wade Cannavino, Jr., Ryan Ryan Deluca, LLP, Stamford, CT, Karen Folster Lesperance, U.S. Attorney's Office, Albany, NY, for Defendants.

*RULING ON NEW LONDON
DEFENDANTS' MOTION TO DISMISS*

STEFAN R. UNDERHILL, District Judge.

**\*1** Gerjuan Tyus is currently incarcerated at Northern Correctional Institution in Somers, Connecticut. In October 2013, in both this Court and the Connecticut Superior Court for the Judicial District of New London, Tyus filed a civil rights action against defendants Roger Newton, City of New London, County of New London, City of New London Police Department, Chief of New London Police Department Margaret Ackley, Lieutenants Brian Wright and Todd Bergeson, Sergeants Christina and Kevin McBride, Officers Todd Lynch, Zelinski, Timothy Henderson, Liachenko, Marcaccio, Pelchat, Melissa Schafranski, Darrin Omara and Lamontagne, and Bureau of Alcohol, Tobacco and Firearms ("ATF") Agents Wheeler, Scott Riordan, Robert Harrison, Dennis Turman and Guy Thomas. On November 19, 2013, the defendants removed the state-court action to this Court. (*See Tyus v. City of New*

*London, et al.,* Case No. 3:13cv1726(SRU), Pet. Removal, Doc. No. 1.)

On January 6, 2014, I granted a motion to consolidate the present case with the action that had been removed to this Court by the defendants, *Tyus v. City of New London, et al.,* Case No. 3:13cv1726(SRU). The present case is the lead case and the member case, *Tyus v. City of New London, et al.,* Case No. 3:13cv1726(SRU), has been closed.

**\*34** On April 29, 2014, I granted the plaintiff leave to file an amended complaint that named the City of New London, Chief of New London Police Department Margaret Ackley, Lieutenants Brian Wright and Todd Bergeson, Sergeant Christina, Sergeant Kevin McBride, Officers Roger Newton, Todd Lynch, Timothy Henderson, Melissa Schafranski, Darrin Omara, Zelinski, Liachenko, Marcaccio, Pelchat, Lamontagne and ATF Agents Wheeler, Scott Riordan, Robert Harrison, Dennis Turman and Guy Thomas as defendants. I also denied without prejudice the motion to dismiss filed by the New London defendants and dismissed the Sixth Amendment claims in Count 1 of the Amended Complaint and the conspiracy claims contained in Count V of the Amended Complaint pursuant to 28 U.S.C. § 1915A(b)(1). Thus, all claims in Count I and the conspiracy claims in Count V of the Amended Complaint have been dismissed. The remaining federal claims under the Fourth, Fifth and Fourteenth Amendments and state law tort and constitutional claims as set forth in Counts II, III(a), III(b), IV, V, VI, VII, VIII, IX, X, XI and XII[1] remain pending against all defendants in their individual and official capacities.

[21]     There are two counts labeled Count III, two counts labeled Count IX and two counts labeled Count X. I construe the first Count III as Count III(a) and the second Count III as Count III(b). I construe the second Count IX as Count XI and the second Count X as Count XII. (*See* Amended Complaint at 21–22, 25–27).

The New London defendants[2] have moved to dismiss the claims against them pursuant to Rule 12(b)6. The plaintiff has filed a memorandum in opposition to the motion.

[22]     The New London defendants include: the City of New London, Chief of New London Police Department Margaret Ackley, Lieutenants Brian Wright and Todd Bergeson, Sergeant Christina,

Sergeant Kevin McBride, Officers Todd Lynch, Timothy Henderson, Melissa Schafranski, Darrin Omara, Zelinski, Liachenko, Marcaccio, Pelchat. Officer Roger Newton no longer works for the City of New London. He is represented by separate counsel, and has not moved to dismiss the Amended Complaint.

## I. Standard of Review

When deciding a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)6, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.,* 343 F.3d 140, 143 (2d Cir.2003). The court's review is limited to "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken" *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993). The court considers not whether the plaintiff ultimately will prevail, but whether he has asserted sufficient facts to entitle him to offer evidence to support his claim. *See York v. Association of Bar of City of New York,* 286 F.3d 122, 125 (2d Cir.), *cert. denied,* 537 U.S. 1089 (2002).

**\*2** In reviewing the complaint in response to a motion to dismiss, the court applies "a 'plausibility standard,' which is guided by two working principles." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). First, the requirement that the court accept as true the allegations in the complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (quoting *Iqbal,* 129 S.Ct. at 1949). Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Even under this standard, however, the court liberally construes a *pro se* complaint. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (*per curiam*) (internal quotation marks and citations omitted).

## II. Facts

**\*35** The facts as they relate to the defendants identified as the New London defendants are taken from the Amended Complaint and are assumed to be true for purposes of this motion. In October 2010, a jury in this Court acquitted the plaintiff of all federal criminal charges in connection with an arrest that occurred in November 2009. *See United States, et al. v. Muller, et al.,* No. 3:09cr247(RNC) (Judgment of Acquittal after Jury Trial, Doc. No. 494). After his release from custody, Officers Henderson, Lynch, Pelchut and Newton began to follow the plaintiff as he drove around City of New London.

On January 18, 2011, Officers Henderson and Lamontagne pulled the plaintiff over because they claimed the light on his marker plate was out. The officers claimed they smelled the odor of marijuana in the car and asked the plaintiff to exit the vehicle. Officer Lamontagne searched the plaintiff and removed cash and a knife from his pockets and Officer Henderson searched the plaintiff's vehicle. Officers Henderson and Lamontagne then returned the cash and the knife to the plaintiff and issued him a warning ticket for the defective marker plate light.

On January 22, 2011, Officers Henderson and Newton pulled the plaintiff over because his vehicle had no front marker plate. The officers said they smelled the odor of marijuana in the plaintiff's car and asked him to exit the vehicle. Officer Newton then searched the plaintiff. During the search, Officer Newton repeatedly reached into the plaintiff's pockets and gripped the plaintiff's buttocks and crotch. Officer Newton removed cash and a knife from plaintiff. After the search, Officer Newton returned the cash and the knife to the plaintiff and issued him a ticket for failure to display a front marker plate.

**\*3** Sergeant Kevin McBride verified the report prepared by Officer Newton regarding the stop and search of the plaintiff on January 22, 2011. When the plaintiff later attempted to challenge the traffic violation, a clerk at the Norwich Superior Court informed him that there was no traffic violation on record.

On February 5, 2011, Officer Newton pulled the plaintiff over for failure to display a front marker plate and for having tinted car windows. Officer Marcaccio arrived at the scene just after Officer Newton pulled the plaintiff

over. Officer Newton asked the plaintiff to exit the vehicle. Officers Lynch and Pelchat then arrived at the scene.

Officer Newton conducted a search of the plaintiff. He repeatedly reached into the plaintiff's pockets and forcefully grabbed under and reached up into the plaintiff's buttocks and crotch area during the search. Officer Newton removed cash and a knife from the plaintiff. Officers Pelchat and Marcaccio stood by and observed the search. Officers Newton, Lynch, Pelchat and Marcaccio arrested the plaintiff on charges of carrying a dangerous weapon and possession of a weapon in a motor vehicle. Officer Marcaccio transported the plaintiff to the New London Police station.

At the station during booking, Officer Lynch searched the plaintiff again. Sergeant Christina then authorized a body-cavity search of the plaintiff without seeking permission from the Chief of Police. Officers Newton, Lynch and Pelchat escorted the plaintiff to a room in order to perform the body cavity search. Officer Lynch put the plaintiff in a choke-hold from behind and slammed him to the floor while Officer Pelchat and Sergeant Christina looked on. Sergeant Christina threatened to use a taser on the plaintiff. Officer Newton pulled the plaintiff's pants down, conducted a body cavity search and retrieved two plastic bags that allegedly contained narcotics.

**\*36** After the search, officers charged the plaintiff with additional criminal violations including: interfering with a police officer, possession of drug paraphernalia, possession of marijuana, possession of marijuana within 1500 feet of a housing project, possession of crack cocaine with intent to sell and possession of crack cocaine with intent to sell within 1500 feet of a housing project. Lieutenant Brian Wright verified the criminal complaint report prepared by Officer Newton regarding the stop and searches of the plaintiff on February 5, 2011. Subsequently, the plaintiff was able to post bond and officers released him from custody.

On February 28, 2011, a United States Magistrate Judge issued a warrant for the plaintiff's arrest on federal criminal charges based on the narcotics found on the plaintiff during the body cavity search conducted on February 5, 2011 by New London officers. *See United States v. Tyus,* No. 3:11cr45(EBB) (Docket Entry 1.) On March 3, 2011, Officers Newton, Omara, Henderson and Schafranski stopped the plaintiff's vehicle because there was an outstanding federal warrant for his arrest. Officer

Newton asked the plaintiff to exit the vehicle because he said he smelled the odor of marijuana in the car.

**\*4** Officer Newton conducted a search of the plaintiff as Officers Omara, Henderson and Schafranski looked on. Officer Newton forcefully grabbed under and reached up into the plaintiff's buttocks and crotch area while searching him. Officer Newton removed cash and a knife from the plaintiff, arrested the plaintiff pursuant to the outstanding federal arrest warrant as well as on charges of possession of a dangerous weapon and then transported him to the New London Police station. At the station, Lieutenant Bergeson authorized a body-cavity search of the plaintiff. Officers Newton and Henderson conducted the search as Lieutenant Bergeson looked on.

On March 4, 2011, ATF Agents Riordan and Wheeler transported the plaintiff to federal court for his arraignment on the charge of possession of narcotics with intent to distribute in violation of federal criminal statutes 21 U.S.C. § 841(a) (1) and (b)(1)(B)(iii). On February 17, 2012, the United States moved to dismiss the federal criminal charges against the plaintiff after they became aware that one of the arresting New London Police officers had been identified as having planted drugs on a suspect during an arrest. *See United States v. Tyus,* No. 3:11cr45(EBB) (Doc. No. 71.) On February 21, 2012, the federal judge assigned to the plaintiff's criminal case, granted the motion to dismiss. (*See id.* at Doc. No. 72.) Tyus claims that the State of Connecticut later dismissed the weapon and drug charges that were the basis for his arrest on February 5, 2011.

### III. Discussion

The New London defendants argue that the plaintiff has failed: (1) to assert any facts regarding Officers Zelinski and Liachenko; (2) to state a claim of false arrest with regard to the February 5, 2011 and March 3, 2011 arrests; (3) to allege the personal involvement of defendants Ackley, Wright, Bergeson, Christina and McBride in the alleged constitutional violations; (4) to allege that a private right of action exists under Article I, sections 7, 9 and 10 of the Connecticut Constitution; (5) to allege facts to state a claim of negligent or intentional infliction of emotional distress; and (6) to state a claim of municipal liability against the City of New London. The plaintiff's opposition to the motion addresses some of these arguments.

As a preliminary matter, the motion to dismiss includes a section on the conspiracy claims that were included in the Amended Complaint in Count V. On April 29, 2014, I dismissed the conspiracy claims without prejudice to the plaintiff's re-pleading those claims within thirty days. Because the plaintiff did not re-plead the conspiracy claims, those claims are not in the case.

### A. Officers Zelinski and Liachenko

**\*37** The defendants argue that the plaintiff has failed to assert any facts with regard to conduct by Officers Zelinski and Liachenko. The plaintiff identifies these defendants as employees of the New London Police Department.

Other than in the section of the Amended Complaint including a description of each defendant, the plaintiff does not otherwise refer to Officers Zelinski and Liachenko. As such, the plaintiff has not alleged that either defendant violated his federally or constitutionally protected rights or his rights under state law.

**\*5** In his response to the motion to dismiss dated July 6, 2014, the plaintiff alleges that Officers Zelinski and Liachenko were present during Officer Newton's frisk search of him on January 22, 2011. The plaintiff may not, however, amend the amended complaint in a memorandum in opposition to a motion to dismiss. *See, e.g., Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir.1998)* (declining to address merits of claim that "does not appear anywhere in the amended complaint and did not enter the case until [the plaintiff] mentioned it for the first time in her opposition memoranda to the motion to dismiss"); *Walia v. Napolitano, 986 F.Supp.2d 169, 184 (E.D.N.Y.2013)* ( "Plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss") (internal quotation marks and citations omitted); *Allah v. Poole, 506 F.Supp.2d 174, 193 (W.D.N.Y.2007)* ("Da memorandum of law or other motion papers are not proper vehicles by which to raise claims that are not asserted in the complaint").

I will not grant the plaintiff leave to file a second amended complaint to add allegations against defendants Zelinski and Liachenko because any claims against them regarding the January 22, 2011 [3] search would be barred by the statute of limitations. *See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir.1994)* (holding that, in Connecticut, the general three-year personal injury statute of limitations

period set forth in Connecticut General Statutes § 52–577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983). The motion to dismiss is granted with respect to defendants Zelinski and Liachenko for failure to state a claim on which relief may be granted.

23      It is doubtful that Tyus could allege a plausible claim against Zelinski and Liachenko for failing to intervene to stop the frisk search on January 22, 2011. Frisk searches are generally brief and the squeezing alleged to have occurred while Tyus's pockets were searched is unlikely to have been readily observable.

### B. False Arrest Claims

The defendants contend that the plaintiff has failed to state a claim of false arrest regarding both the February 5, 2011 and March 3, 2011 arrests. The defendants argue that there was probable cause to arrest the plaintiff on February 5, 2011 and the arrest by Officer Newton on March 3, 2011 was made pursuant to a valid arrest warrant.

The Fourth Amendment's protections include the right to be free from unreasonable "seizures." *See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996).* An allegation that a criminal prosecution was initiated against an individual without probable cause arises under the Fourth Amendment rather than the Fourteenth Amendment's substantive due process provision. *See Albright v. Oliver, 510 U.S. 266, 274–75 (1994).*

**\*38** "Claims for false arrest or malicious prosecution, brought under [Section] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir.2003).* Under Connecticut law, " '[f]alse imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another.'" *Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir.)* (quoting *Outlaw v. City of Meriden, 43 Conn.App. 387, 392, 682 A.2d 1112, 1115 (1996), cert. denied,522 U.S. 818 (2007)).* "It is well-established that probable cause is a complete defense to claims of false imprisonment and false arrest." *Johnson v. Ford, 496 F.Supp.2d 209, 213 (D.Conn.2007)* Probable cause only exists when police officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a

person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). Probable cause does not require a police officer to be certain that the individual arrested will be prosecuted successfully. *See Krause v. Bennett,* 887 F.2d 362, 371 (2d Cir.1989).

**\*6** Probable cause is presumed when the arrest is made pursuant to a warrant issued by a neutral magistrate. *See Walczyk v. Rio,* 496 F.3d 139, 155–56 (2d Cir.2007) ("Ordinarily, an arrest or search pursuant to a warrant issued by a neutral magistrate is presumed reasonable because such warrants may issue only upon a showing of probable cause."). A plaintiff can overcome this presumption by demonstrating that his right not to be arrested without probable cause was violated when "the officer ...'knowingly and intentionally, or with reckless disregard for the truth, made a false statement ...' or omitted material information," and where "such false or omitted information was 'necessary to the finding of probable cause.'" *Soares v. Connecticut,* 8 F.3d 917, 920 (2d Cir.1993) (citations omitted).

### 1. March 3, 2011 Arrest

The defendants argue that Officer Newton had probable cause to arrest the plaintiff on March 3, 2011 because a valid arrest warrant had been issued by a federal Magistrate Judge. The plaintiff concedes that an arrest warrant had been issued for his arrest on federal criminal charges. There are no allegations that ATF Agent Riordan, who applied for the arrest warrant, materially misled the Magistrate Judge into believing that probable cause existed for the plaintiff's arrest.

In opposition to the motion to dismiss, the plaintiff now contends that the affidavit of ATF Agent Riordan contained inaccurate information. The plaintiff did not include those allegations in the Amended Complaint. The plaintiff may not now amend his Amended Complaint by asserting new allegations regarding the veracity of statements in the affidavit in support of the arrest warrant in his memorandum in opposition to the motion to dismiss. *See, e.g., Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir.1998); *Walia v. Napolitano,* 986 F.Supp.2d 169, 184 (E.D.N.Y.2013); *Allah v. Poole,* 506 F.Supp.2d 174, 193 (W.D.N.Y.2007). I will not grant the plaintiff leave to file a second amended complaint to add new allegations regarding the viability of the warrant for his arrest because any such false arrest claim would

be barred by the statute of limitations. *See Wallace v. Kato,* 549 U.S. 384, 388–89 (2007) (statute of limitations for a claim of false arrest, which is a "species" of false imprisonment, begins to run "when the alleged false imprisonment ends." An alleged false imprisonment ends when "the victim becomes held pursuant to [legal] process —when, for example, he is ... arraigned on charges.") (emphasis omitted). [4]

24      The docket in the plaintiff's federal criminal case reflects that he was arraigned on April 8, 2011. *See United States v. Tyus,* No. 3:11cr45(EBB) (Docket Entry No. 16.) The plaintiff first asserted that the search warrant affidavit was inaccurate in his memorandum in opposition to the motion to dismiss, which was filed on July 9, 2014, more than three years later.

**\*39** Probable cause for the plaintiff's arrest on March 3, 2011 is presumed because Officers Newton, Lynch, Pelchat and Marcaccio arrested him pursuant to an arrest warrant issued by a federal magistrate judge. There are no timely allegations to overcome that presumption. Accordingly, the plaintiff's false arrest claim fails. The motion to dismiss is granted with respect to the claim that defendants Newton, Lynch, Pelchat and Marcaccio falsely arrested him on March 3, 2011.

### 2. February 5, 2011 Arrest

**\*7** The defendants contend that Officer Newton had probable cause to arrest the plaintiff on a charge of carrying a dangerous weapon on February 5, 2011. Tyus alleges that Officer Newton did not have probable cause to search or arrest him after pulling him over for a traffic violation that day. He alleges that Officer Newton claimed to have smelled marijuana in his vehicle after he pulled him over for a traffic violation, and that based on his suspicion that the plaintiff had been using marijuana in the vehicle, Officer Newton ordered him to step out of his car so that he could conduct a pat-down search. The plaintiff alleges that the pat-down search was more intrusive than necessary. The plaintiff claims that Officer Newton found a knife in his possession, which was the same knife that he had possessed when he was pulled over on January 18 and 22, 2011. The officers who pulled the plaintiff over on those two prior occasions, one of whom was Officer Newton, did not arrest the plaintiff on weapon or any other charges, but instead permitted him to leave with only a traffic violation citation. On February 5, 2011, however, Officers Newton, Lynch, Pelchat and Marcaccio decided

to charge the plaintiff with possession of a dangerous weapon and possession of a weapon in a motor vehicle in violation of Connecticut General Statutes §§ 29–38 and 53–206.

The plaintiff contends that probable cause did not exist for the search that took place outside his vehicle because there was no basis for Officer Newton's suspicion of marijuana use. The defendants do not address the legality of the pat-down search. The plaintiff also argues that the type of knife he possessed did not have the necessary characteristics to be illegal to carry under the relevant statute, and that no reasonable officer would believe otherwise, so there was no probable cause to arrest him. But even if there was probable cause to arrest him for carrying the knife, it never would have been discovered but for the challenged pat-down search. If, as Tyus alleges, the alleged suspicion of marijuana use was pretextual and the search unlawful, then the knife was fruit of the poisonous tree. The plaintiff also argues that probable cause did not exist for the additional criminal charges that were brought against him after the body cavity search was conducted at the New London Police Department later on February 5, 2011, but the defendants do not address that claim or the claim regarding the legality of the body cavity search.

I conclude that the plaintiff has asserted sufficient facts to state a plausible claim that Officers Newton, Lynch, Pelchat and Marcaccio arrested him without probable cause on February 5, 2011. The motion to dismiss is denied with respect to the claim of false arrest in connection with the February 5, 2011 arrest on dangerous weapon charges.

### C. Personal Involvement of Chief of Police Ackley, Lieutenants Wright and Bergeson and Sergeants Christina and McBride

**\*40 \*8** The defendants argue that the plaintiff has failed to sufficiently allege the involvement of supervisory officials Chief Ackley, Lieutenants Wright and Bergeson, and Sergeants Christina and McBride in the alleged violations of the plaintiff's constitutional rights. To recover money damages under section 1983, the plaintiff must show that these defendants were personally involved in the constitutional violations. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

The plaintiff may show personal involvement by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged unconstitutional acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in supervising the correctional officers who committed the constitutional violation; and (5) the defendant failed to take action in response to information regarding the occurrence of unconstitutional conduct. *See Colon,* 58 F.3d at 873 (citation omitted). In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

In *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), the Supreme Court held that a supervisor can be held liable only "through the official's own individual actions." *Id.* at 676. That decision arguably casts doubt on the continued viability of some of the categories for supervisory liability. The Second Circuit, however, has not revisited the criteria for supervisory liability following *Iqbal. See Rispardo v. Carlone,* 770 F.3d 97, 117 (2d Cir.2014) ("We have not yet determined the contours of the supervisory liability test ... after *Iqbal.*"); *Grullon v. City of New Haven,* 720 F.3d 133, 139 (2d Cir.2013) (noting that decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations," but finding it unnecessary to reach the impact of *Iqbal* on the personal involvement requirements set forth in *Colon,* 58 F.3d at 873). Because it is unclear whether *Iqbal* overrules or limits *Colon,* I will continue to apply the categories for supervisory liability set forth in *Colon.*

### 1. Chief Ackley

The defendants contend that the plaintiff has not alleged that Chief Ackley was personally involved in the traffic stops, searches or arrests of the plaintiff. The plaintiff alleges that Chief Ackley, as a supervisor and administrator who is responsible for the discipline of police officers, should have known about the misconduct that occurred when members of the New London Police

Department pulled him over for alleged traffic violations, searched him and arrested him in 2011. The plaintiff generally alleges that there was a breakdown in the City's policies and inadequate review of arrests made by New London Police officers.

**\*41 \*9** These allegations are conclusory and are not supported by any facts. There are no factual allegations to suggest that Chief Ackley was aware of the incidents involving the plaintiff in January, February and March 2011. Nor does the plaintiff allege that he or anyone else put Chief Ackley on notice of alleged unconstitutional conduct by New London Police officials. The plaintiff has failed to allege the personal involvement of Chief Ackley in the violations of his constitutional rights. The motion to dismiss is granted with respect to the claims against defendant Ackley in her individual capacity on the ground of lack of personal involvement. [5]

25    Tyus does not appear to seek any declaratory or injunctive relief against defendant Ackley, and to the extent that he seeks to include any claim against her in her official capacity, it is duplicative of his claim of municipal liability against the City of New London, discussed below. Accordingly, the motion to dismiss is granted with respect to all claims against defendant Ackley in her official capacity as well.

#### 2. Lieutenant Wright and Sergeant McBride

The plaintiff claims that Sergeant Kevin McBride verified the report prepared by Officer Newton regarding the stop and search that occurred on January 22, 2011. The plaintiff alleges that Lieutenant Brian Wright verified the criminal complaint report prepared by Officer Newton regarding the stop and searches that occurred on February 5, 2011.

The plaintiff contends that by signing off on the incident reports defendants McBride and Wright became aware of the January 22, 2011 traffic stop and pat-down search conducted by Officers Newton and Henderson and the February 5, 2011 traffic stop, pat-down search, and body cavity search conducted by Officers Newton, Lynch, Pelchat and Marcaccio as well as his arrest by those officers on various criminal charges. The plaintiff has alleged sufficient facts to plausibly demonstrate that defendants Wright and McBride became aware of the illegal traffic stops, searches and false arrest of the plaintiff, but failed to take any action to correct that unconstitutional conduct. Accordingly, the motion to

dismiss is denied on the ground that the plaintiff has alleged no facts against defendants Wright and McBride regarding the traffic stops, searches and seizure of the plaintiff that occurred on January 22, 2011 and February 5, 2011.

#### 3. Sergeant Christina and Lieutenant Bergeson

The plaintiff has alleged that Sergeant Christina authorized and was present for the body cavity search conducted by Officers Newton on February 5, 2011. In addition, the plaintiff has alleged that Lieutenant Bergeson authorized the body cavity search conducted by Officers on March 3, 2011. The plaintiff claims that both searches were illegal, intrusive, and unconstitutional. I conclude that those allegations demonstrate the involvement of defendants Christina and Bergeson in the various searches of the plaintiff. The motion to dismiss is denied with respect to defendants Christina and Bergeson on the ground of lack of personal involvement.

#### D. Municipal Liability

The defendants argue that the plaintiff has failed to state a claim of municipal liability against the City of New London. In order to impose liability on a municipal entity under section 1983 for a violation of constitutional rights, a plaintiff must show that the violation was caused by a municipal policy or custom. *See Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Municipal policies "include[ +] the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011).

**\*10** A municipality, however, cannot be held liable "solely because it employs a tortfeasor—or in other words ... on a respondeat superior theory." *Monell,* 436 U.S. at 691. Instead, municipal liability may be established if a plaintiff can "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" or that "action pursuant to official municipal policy or custom caused the alleged constitutional injury." *Cash v. Cnty of Erie,* 654 F.3d 324, 333 (2d Cir.2011) (internal quotation marks and citations omitted).

**\*42** "A municipal policy may be pronounced or tacit and reflected in either action or inaction. In the latter respect, a city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate

the Constitution." *Id.* at 334 (internal quotation marks and citation omitted). Thus, a plaintiff may "establish municipal liability by showing that a municipal policy or custom existed as a result of the municipality's deliberate indifference to the violation of constitutional rights, either by inadequate training or supervision." *Russo v. City of Hartford,* 341 F.Supp.2d 85, 107 (D.Conn.2004).

Liability based on a failure to train is the most tenuous form of municipal liability under *Monell.* To state a claim under section 1983, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under section 1983." *Connick,* 131 S.Ct. at 1359–60 (citing *Canton v. Harris,* 489 U.S. 378, 388–89 (1989) (internal quotation marks omitted)). The most important consideration is "whether the facts demonstrate the policymaker's failure to train or supervise was the result of a 'conscious choice' rather than mere negligence." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 128 (2d Cir.2004) (quoting *Canton,* 489 U.S. at 389).

Here, the plaintiff claims that he suffered violations of his constitutional rights because the City of New London failed to properly train the members of the New London Police Department in how to conduct pat-down and body cavity searches. In addition, the plaintiff's allegations may be construed to state a claim that there was a policy or custom of New London Police officers to engage in pretextual or arbitrary traffic stops, detentions, searches and arrests without reasonable suspicion or cause. The plaintiff suggests that the City of New London failed to properly train its officers to prevent the unconstitutional conduct that occurred during the multiple traffic stops and searches, as well as his arrest in 2011.

The plaintiff generally alleges that there were repeated complaints of constitutional violations and a pattern of police misconduct, but refers to another specific incident that occurred in October 2010, and involved a traffic stop by Officer Newton that resulted in an arrest after narcotics were allegedly found near the suspect's vehicle. The charges against the individual were subsequently dismissed after a videotape taken at the scene of the traffic stop allegedly showed Officer Newton planting narcotics near the individual's vehicle. The plaintiff also mentions an incident during which an unidentified

officer allegedly slapped a woman at a casino nightclub and another incident during which unidentified officers allegedly punched and pepper-sprayed a man who needed to be taken to the hospital from a detoxification center.

**\*11** "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick,* 131 S.Ct. at 1360 (quoting *Bryan Cty. v. Brown,* 520 U.S. 397, 409 (1997)). The plaintiff has alleged that in the first three months of 2011, New London Police officers pulled him over three times for alleged traffic violations, conducted intrusive pat-down searches on at least three occasions, searched his vehicle without permission on at least one occasion, and arrested him without probable cause on one occasion. In addition, officers conducted body cavity searches on two occasions.

**\*43** In view of the number of alleged unconstitutional traffic stops, searches, and arrests involving the plaintiff and at least one other individual prior to the incidents involving the plaintiff, I conclude that the plaintiff has alleged sufficient facts to state a plausible claim that the City of New London had a custom or policy of tolerating police misconduct and acted with deliberate indifference by poorly training or supervising its officers regarding motor vehicle stops, detentions, pat-down and body cavity searches, and arrests. *See Goode v. Newton,* 2013 WL 1087549, at \*8 (D.Conn. Mar. 14, 2013) (denying motion to dismiss City of New London on ground that non-conclusory allegations of one prior incident of falsifying a police report and manufacturing criminal charges in addition to the two incidents of manufactured criminality in amended complaint raised plausible inference that City had informal custom of tolerating misconduct by its officers and that custom caused the plaintiff's constitutional violations); *Castilla v. City of New York,* No. 09 Civ. 5446(SHS), 2012 WL 3871517, at \* \*4–5 (S.D.N.Y. Sept. 6, 2012) (denying motion for judgment on the pleadings regarding municipal liability because plaintiff alleged "a string of incidents in which she was victimized by multiple officers in multiple locations, both on and off City property" as well as "various other instances of male police officers taking sexual advantage of females under their custody or control"); *Michael v. County of Nassau,* No. 09–CV–5200(JS)(AKT), 2010 WL 3237143, at \*4 (E.D.N.Y. Aug. 11, 2010) (denying motion to dismiss municipal liability claims against County because multiple denials of plaintiff's rights over a long, continuous time period by at least five officers created

"plausible inference that Nassau County has an informal policy or custom of at least tolerating police misconduct ... Likewise, the alleged involvement of numerous officers, the mocking Plaintiff allegedly received when invoking his right to counsel, and the headquarters location, suffices to suggest that Nassau County poorly trained and/or supervised its officers concerning the need not to violate suspects' civil rights."). Accordingly, the motion to dismiss is denied with respect to the claims against the City of New London.

### E. Connecticut Constitutional Claims

**\*12** The plaintiff alleges that defendants Wright, Christina, Newton and Lynch violated his rights under Article I, section 7 and 10, and all individual defendants violated his rights under Article I, sections 9 and 10 of the Connecticut Constitution. Article 1, section 7 of the Connecticut Constitution provides that "people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affidavit." "Conn. Const. art. 1, § 7. Article 1, section 9 provides that [n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. art. 1, § 9 . Article 1, section 10 provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administrated without sale, denial or delay." Conn. Const. art. 1, § 10.

### 1. Article I, Section 10

The defendants contend that the plaintiff has no private right of action for money damages under Article I, section 10. There are no cases in which a Connecticut court has recognized a private right of action under Article I, section 10 of the Connecticut Constitution. See Sentementes v. General Elec. Co., Civil Action No. 3:14–CV–00131(VLB), 2014 WL 2881441, at \*10 (D. Conn. June 25, 2014) (dismissing claim that defendants violated "Article I, section 10 of the Connecticut state constitution... [because] Connecticut courts do not recognize a private right of action under that clause"); Thibault v. Barkhamsted Fire Dist., No. CV126008093S, 2013 WL 6038259, at \*4 (Oct. 21, 2013) (refusing to "recognize a cause of action for alleged violations of article first, § 10 of the Connecticut constitution");

Marinella v. Town of Darien, No. 3:07–cv–910(CFD), 2010 WL 3123298, at \*5 (D.Conn. Aug. 9, 2010) (no cause of action under Article I, sections 8 or 10 of the Connecticut constitution). Instead, the Connecticut Supreme Court has held to the contrary. Binette v. Sabo, 244 Conn. 23, 32, 710 A.2d 688, 691–92 (1998) (Article 1, section 10 "does not itself create new substantive rights but, instead protects access to our state's courts" and no direct constitutional action for damages exists under this section). Accordingly, the motion to dismiss is granted with respect to the claims for money damages under Article I, section 10 of the Connecticut Constitution.

### 2. Article I, Sections 7 and 9

In Binette v. Sabo, 244 Conn. 23, 25–26, 710 A.2d 688, 689 (1998), the Connecticut Supreme Court relied on Bivens v. Six Unknown Named Agens of Federal Bureau of Narcotics, 403 U.S. 388 (1971), to recognize a private cause of action for monetary damages against municipal police officers for violations of Article 1, sections 7 and 9 of the Connecticut Constitution based on an alleged unreasonable search and seizure and unlawful arrest. Tyus has asserted no facts to suggest that Chief Ackley was involved in or aware of searches conducted by officers or arrests of the plaintiff made in January, February or March 2011. Thus, the plaintiff has failed to allege that defendant Ackley violated his rights under the Connecticut Constitution. The motion to dismiss is granted with respect to the claims under Article I, sections 7 and 9 of the Connecticut Constitution against defendant Ackley.

**\*44 \*13** The defendants argue that the Binette decision does not imply a damages cause of action against a municipality. Thus, they move to dismiss the claims under Article I, sections 7 and 9 of the Connecticut Constitution against the City of New London. Research has revealed no Connecticut case law recognizing municipal liability for violations of Article I, sections seven or nine of the Connecticut Constitution. See Bazzano v. City of Hartford, No. CV 980584611S, 1999 WL 1097174, at \* (Conn.Super.Ct. Nov. 18, 1999) (granting motion to strike claim against municipality for violations of Connecticut Constitution Article First, sections 7 and 9 because "the deterrent effects of the Bivens remedy [against the officers] would be lost if the court was to imply a damages cause of action directly against the municipality and a supervisor"). Accordingly, the motion to dismiss is

granted with respect to the claims under the Connecticut Constitution against the City of New London.

Pursuant to *Binette,* the search and seizure claims under the Fourth Amendment will proceed against defendants Wright, Bergeson, Christina, McBride, Lynch, Henderson, Marcaccio, Pelchat, Melissa Schafranski, Omara and Lamontagne. The motion to dismiss is denied against those defendants with respect to the claims under the Connecticut Constitution's search and seizure provisions set forth in Article I, sections 7 and 9.

### F. Infliction of Emotional Distress and Negligence Claims

In Counts VIII and IX, the plaintiff alleges that the defendants subjected him to assault and battery, mental and emotional distress and physical pain. In addition, the plaintiff claims that the defendants' conduct constituted gross negligence. The defendants argue that the claims for negligence and infliction of emotional distress should be dismissed.

A claim for intentional infliction of emotional distress requires a plaintiff to prove "that the [defendant] intended to inflict emotional distress or that he knew or should have known" that his conduct would cause emotional distress, "that the conduct was extreme and outrageous," that the plaintiff's distress was caused by the defendant's conduct and that the plaintiff suffered severe emotional distress. *Appleton v. Bd. of Ed.,* 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000) (citation omitted). To state a claim of negligent infliction of emotional distress, a plaintiff must plead that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 444, 815 A.2d 119 (2003).

Tyus's allegations that the defendants' conduct caused him mental and emotional suffering and distress are not supported by facts that suggest the distress he suffered was severe enough to maintain an intentional infliction of emotional distress claim. He has not alleged facts sufficient to infer that any emotional distress he suffered was "severe enough that it might result in illness or bodily harm." *Id.* Thus, the plaintiff has not plausibly alleged a claim of intentional or negligent infliction of emotional distress.

**\*14** Furthermore, under Conn. Gen.Stat. § 52–584, "[n]o action to recover damages for injury to the person ... caused by negligence, or reckless or wanton misconduct ... shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered." Thus, any claim for negligence or negligent infliction of emotional distress should have been brought prior to March 3, 2013. The plaintiff commenced this action in October 2013. The plaintiff's claims of negligence and negligent infliction of emotional distress are time-barred. The motion to dismiss is granted as to the claims of negligence and negligent and intentional infliction of emotional distress.

### IV. Conclusion

**\*45** The Motion to Dismiss [**Doc. No. 39**] is **GRANTED** with respect to all claims against defendants Zelinski and Liachenko, the claims under Article I, sections 7 and 9 against defendants Ackley and the City of New London, all claims against defendant Ackley in her individual and official capacities, the claim that defendants Officers Newton, Lynch, Pelchat and Marcaccio falsely arrested the plaintiff on March 3, 2011, and the state law claims of negligence and intentional and negligent infliction of emotional distress and under Article I, section 10 of the Connecticut Constitution against all defendants. The Motion to Dismiss [**Doc. No. 39**] is **DENIED** in all other respects.

With regard to the New London defendants, the case will proceed on the Fourth Amendment search and seizure and excessive force claims, the Fourteenth Amendment equal protection claim, and the state law claims of assault and battery against defendants Wright, Bergeson, Christina, McBride, Lynch, Henderson, Marcaccio, Pelchat, Schafranski, Omara and Lamontagne in their individual and official capacities; the case will proceed on the Connecticut Constitutional Claims under Article I, sections 7 and 9 against defendants Wright, Bergeson, Christina, McBride, Lynch, Henderson, Marcaccio, Pelchat, Schafranski, Omara and Lamontagne in their individual capacities; and the case will proceed only on the Fourth and Fourteenth Amendment claims against the City of New London.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 1471643

**All Citations**

Slip Copy, 2016 WL 347339

---

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

### MEMORANDUM–DECISION and ORDER

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Sylvia Jenkins ("Plaintiff") against
Mr. Liadka, Mr. Sands, John Doe, and Syracuse Police
Department ("Defendants"), is Defendants' motion to
dismiss Plaintiff's Complaint for insufficient service of
process pursuant to Fed.R.Civ.P. 12(b)(5) and/or for
failure to state a claim pursuant to Fed.R.Civ.P. 12(b)
(6). (Dkt. No. 13.) For the reasons set forth below,
Defendants' motion is granted in part and denied in part.

### I. RELEVANT BACKGROUND

#### A. Plaintiff's Complaint

Generally, construed with the utmost of special
liberality, Plaintiff's Complaint asserts three claims
against Defendants arising from an investigatory stop
in September 2010, in Syracuse, New York: (1) a claim
that three Syracuse Police Officers unreasonably searched
her in violation of the Fourth Amendment; (2) a claim
that they unlawfully seized, and failed to return, her

personal property in violation of the Fourth, Fifth, and/
or Fourteenth Amendments; and (3) a claim that they
subjected her to excessive force in violation of the Fourth
Amendment. (*See generally* Dkt. No. 1 [Plf.'s Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she
was stopped on Butternut Street in the City of Syracuse
by two officers, who questioned her regarding a call
they had received; (2) when she told the two police
officers that she did not know what they were talking
about and "attempted to go on about [her] business,"
the officers became "uptight, rude, [and] abnormal in
their conversations [and] behavior," and threatened her;
(3) the officers then proceeded to conduct a search of
"all [of Plaintiff and her] personal property," and, in
the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third
police officer arrived, and she was assaulted by all three
officers (hereinafter "Defendants"), who hit her on the
back and threw her onto the police vehicle; (5) following
the deprivation on September 9, 2010, Defendants denied
her a post-deprivation remedy through a combination of
threats, intimidation and/or nonresponsiveness; and (6)
Defendants took these actions against her intentionally
because they did not personally like her, given her previous
interactions with the Syracuse Police Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back
pain, and mental suffering, (3) loss of personal property,
and, (4) loss of employment. (*Id.*) As relief, Plaintiff
requests an award of twelve thousand dollars ($12,000) in
damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations
supporting Plaintiff's three claims is assumed in this
Decision and Order, which is intended primarily for
review by the parties. (*See generally* Dkt. No. 1.)

#### B. Defendants' Motion

**\*2** On May 6, 2011, Defendants filed a motion to
dismiss. (Dkt. No. 13, Attach 2.) Generally, in support
of their motion, Defendants assert the following two
arguments: (1) because the Complaint was not served
within the time allowed by Fed.R.Civ.P. 4 or Local Rule

4.1 of the Local Rules of Practice for this Court, the Court lacks jurisdiction over Defendants in accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are following her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will

not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549

F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550

U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

[1]    It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. See *Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible

claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]     *See Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]     *See Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

*5 Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at *5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at *1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at *2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

## 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

## 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*" [4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ." [5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [6]

[4] *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at \*5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior."* ).

[5] *Powell,* 2005 WL 3244193, at \*5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's

official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under § 1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6] *Batista,* 702 F.2d at 397, accord, *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at \*12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

[7] *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133–134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

**8**    See *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must be at least an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City.") *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that

his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

**9**    See also *Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

**10**    See also *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[W]hether an official protected by qualified immunity may

be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341. [12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

### III. ANALYSIS

#### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and

returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive to the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

#### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

#### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8** After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth Amendments; and (3) a claim of excessive force under the Fourth Amendment.

**2. Whether Plaintiff's Claims Against the Individual
Defendants Should Be Dismissed for Failing to
Allege Facts Plausibly Suggesting Their Personal
Involvement in the Constitutional Violations Alleged**

After carefully considering the matter, the Court answers
this question in the affirmative for the reasons stated by
Defendants in their memorandum of law. (Dkt. No. 13,
Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of
Law].) The Court would add only the following three brief
points.

First, at the very least, Defendants have met the lightened
burden that was created by Plaintiff's failure to respond
to this argument for dismissal. *See, supra,* Part III.C. of
this Decision and Order. [13] Second, in any event, the
Court would reach the same conclusion even if it were
to subject Defendants' argument to the more rigorous
scrutiny appropriate for a contested argument. Third, and
finally, even when construed with the utmost of special
liberality, the Complaint does not identify the precise
location of the incident, which officers were responsible
for violating her rights, how she suffered the head injury
she alleges, what property was taken from her, and how
Defendants frustrated her efforts to recover that property.
*See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist.
LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct.
6, 2005) ("Plaintiffs must also allege ... the personal
involvement of the Defendant in the actions underlying
their claim."). [14]

[13] Under the circumstances, the Court finds that
Plaintiff had sufficient notice of the consequences
of failing to respond to the arguments asserted in
Defendants' motion. For example, on October 14,
2010, Plaintiff was given a courtesy copy of the
District's *Pro Se* Handbook and a courtesy copy of
the Local Rules of Practice for the Northern District
of New York. (Dkt. No. 4.) In addition, on May
6, 2011, Defendants advised Plaintiff of her need
to respond to their arguments. (Dkt. No. 15.) Also,
Plaintiff had extensive experience as a *pro se* civil
rights litigant in this District, before responding to
the motion in question. *See, infra,* Part III.D. of this
Decision and Order.

[14] Indeed, the Court notes that one of the officers that
Plaintiff lists in her Complaint has not been identified.
In a prior decision by the Court, Plaintiff was ordered
to take reasonable steps to ascertain the identity of

the unnamed officer, immediately notify the Court,
amend her complaint to include the identity of the
third Defendant, and also to have that officer served.
(Dkt. No. 5, at 14.) Because Plaintiff has not done so,
her alleged physical injuries remain attributable to an
unidentified person.

For all of these alternative reasons, Plaintiff's claims
against the individual Defendants are dismissed.

**3. Whether the Syracuse Police Department
Should Be Dismissed as a Defendant**

After carefully considering the matter, the Court answers
this question in the affirmative for the reasons stated by
Defendants in their memorandum of law. (Dkt. No. 13,
Attach 2, at 13.) The Court would add only the following
three brief points.

**\*9** First, at the very least, Defendants have met the
lightened burden that was created by Plaintiff's failure to
respond to this argument for dismissal. Second, in any
event, the Court would reach the same conclusion even
if it were to subject Defendants' argument to the more
rigorous scrutiny appropriate for a contested argument.
Third, and finally, "as Plaintiff has been told several
times, under New York State law, departments, like the
Onondaga County Sheriff's Department, that are merely
administrative arms of a municipality, do not have a legal
identity separate from the municipality and may not sue
or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,*
12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y.
filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty.
of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24
[S.D.N.Y. March 30, 2012] ). Because the Syracuse Police
Department is merely an administrative arm of the City of
Syracuse, it is not a proper defendant in this case. The real
party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police
Department dismissed as a Defendant.

**4. Whether, Even if the City of Syracuse Were Substituted
for the Police Department, Plaintiff's Claims Against
the City Should Be Dismissed for Failing to Allege
Facts Plausibly Suggesting Municipal Liability**

After carefully considering the matter, the Court answers
this question in the affirmative for the reasons stated by
Defendants in their memorandum of law. (Dkt. No. 13,
Attach. 2, at 14–15 [attaching pages "13" and "14" of

Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department, [15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]     In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

**\*10**  For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina,* 525 U.S. at 241. Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally,

Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that

the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16] More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17] More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at *27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive-force claim is dismissed on this alternative ground.

### 7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

### C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it

appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case. [18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times. [19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint. [20] Plaintiff did not comply with the Court's order to amend her complaint at all on four occasions. [21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the

first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile. [22]

[18]     *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012).

[19]     *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]     *Id.*

[21]     *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

[22]     *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti–Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal. [23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

[23]     *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v.*

*Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24]  *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Decision and Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–

CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25]  *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26]  *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994)

(where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is *GRANTED* **in part** and *DENIED* **in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally *DISMISSED;* and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW** © 2016 Thomson Reuters. No claim to original U.S. Government Works. 14

2014 WL 2435807
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Jessie J. BARNES, Plaintiff,

v.

John ALVES, et al.,[1] Defendants.

[1]  Defendant John Alves was dismissed from the
case on December 3, 2007; however, his name is
retained as the lead defendant for ease of identifying
this lawsuit.

No. 01–cv–6559 EAW.
|
Signed May 30, 2014.

**Attorneys and Law Firms**

Jessie J. Barnes, Malone, NY, pro se.

Gary M. Levine, New York State Office of the Attorney
General, Rochester, NY, for Defendants.

**DECISION AND ORDER**

ELIZABETH A. WOLFORD, District Judge.

*INTRODUCTION*

*1  Plaintiff Jessie J. Barnes ("Plaintiff") is an inmate
currently housed at the Upstate Correctional Facility in
Malone, New York. Plaintiff, proceeding *pro se,* brings
this action pursuant to 42 U.S.C. § 1983, alleging that
Defendant employees of Southport Correctional Facility
(collectively "Defendants") violated Plaintiff's civil rights
through the unlawful use of excess force in 2001 and
2002, while Plaintiff was housed at the Southport facility.
(Dkt.248). The case has been pending since November 26,
2001. (Dkt.1). The case is scheduled for a bench trial to
start on July 28, 2014. (Dkt.386).

Before the Court are various motions filed by Plaintiff in
anticipation of the upcoming bench trial. (Dkt. 327, 389,
395, 402, 404, 405, 406, 408, 412, and 419). The motions
are opposed by Defendants in declarations dated January
6, 2014, March 25, 2014, April 9, 2014, and April 29, 2014.

(Dkt. 374, 391, 400, and 414). The various motions are
addressed in turn below.

*DISCUSSION*

**I. Motion *in Limine* and Motion for Sanctions Regarding
B–Block Surveillance Tapes (Dkt. 327 & Dkt. 395)**

**A. Motion *in Limine* (Dkt.327)**
On April 30, 2010, Plaintiff submitted a letter to
the Honorable Jonathan W. Feldman, United States
Magistrate Judge, which this Court construes as a motion
*in limine.* (Dkt.327). Plaintiff stated that "the Defendants
and their counsel Mr. Levine have not admitted or denied
the facts asserted with regard to destruction of B–Block
videotape evidence in connection with the Sept. 4, 2002
and Oct. 22, 2002 use of force incidents." (*Id.*). Plaintiff
requests that the Court sanction the Defendants or
preclude Defendants from offering evidence or testimony
with regard to "above incidences." (*Id.*).

In a Decision and Order dated January 6, 2014, the
Honorable Charles J. Siragusa, United States District
Judge, directed Defendants to respond to Plaintiff's
motion *in limine* by January 24, 2014. (Dkt.372).
Defendants' counsel, Assistant Attorney General Gary
Levine, responded to the motion through his January
16, 2014 declaration. (Dkt.374). In this declaration,
Defendants deny destroying any videos, and Mr. Levine
indicates that he is in possession of the videos relating to
the incidents. (*Id.* at 1). According to Mr. Levine, Plaintiff
was provided with copies of the videos and also viewed the
videos at his deposition. (*Id.* at 2). Mr. Levine states that
"it is anticipated that the testimony at trial will support
that the video is a true and accurate representation of the
incident." (*Id.* at 3).

As a result of the foregoing, and based upon
the underlying factual dispute concerning the alleged
destruction of videos, the Court reserves decision on the
motion until the time of trial.

**B. Motion for Sanctions (Dkt.395)**
By motion dated March 28, 2014, Plaintiff seeks sanctions
against Defendants for the "spoliation of evidence." (Dkt.
395 at 1). Specifically, Plaintiff claims that Defendants
engaged in the "deliberate and wilful destruction of
B–Block surveillance videotape recordings ... related

to the September 4, 2002 and October 22, 2002 incidents...." (*Id.*). Plaintiff claims that he is a "prejudiced party" as a result of the alleged destruction of the original B–Block videotape footage. (*Id.* at 10). Plaintiff notes that he contested the validity of the tape during his deposition testimony, and that he submitted letters to various individuals, including Defendants, to the same effect. (*Id.* at 18–19). Plaintiff seeks that the Court "draw an adverse inference for spoliation of evidence because the plaintiff is 'prejudiced party' as result of defendant use of altered April 18, 2002 stage videotape to dupe court into reliance of as evidence...." (*Id.* at 20).

**\*2** In response, Mr. Levine submitted an April 9, 2014 declaration indicating that Judge Siragusa addressed Plaintiff's concerns regarding the surveillance videotape, and stated in a January 3, 2014 letter that he would render a decision on the "preclusion of evidence and sanctions." (Dkt. 400 at 2, 76). Defendants ask the Court to reserve decision on the preclusion of the videotape as well as on sanctions for the bench trial. (Dkt. 400 at 2). Defendants argue that the evidence at trial will show that the April 18, 2002 videotape was not altered, and that there were no surveillance videos of the September 4, 2002 and October 22, 2002 incidents. (*Id.*). Defendants further argue that Plaintiff will be unable to meet his burden of proof to demonstrate spoliation, as he will not be able to show that Defendants (not DOCCS) had an obligation to preserve the evidence and that Defendants destroyed the evidence with a "culpable state of mind." (*Id.* at 2–3) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir.2002)).

Based on the foregoing, the Court reserves decision on the preclusion of the videotape and on sanctions until the time of trial.

## II. Motion for Miscellaneous Relief (Dkt.389)

On March 19, 2014, Plaintiff submitted a letter request to the undersigned which the Court construes as a motion for miscellaneous relief. (Dkt.389). In this motion, Plaintiff requests the discovery of two television programs, *Nightline News* and *The View,* in which Plaintiff claims Defendant Bennett appeared. (*Id* . at 1). Plaintiff argues that the Attorney General's office has retained a copy of each of these programs. (*Id.*).

On March 25, 2014, Mr. Levine submitted a declaration to the Court rejecting Plaintiffs claims. (Dkt.391). Mr.

Levine noted that Judge Feldman previously addressed Plaintiff's requests for the television clips, and rejected the request. (*Id.* at 1). A letter from Plaintiff to Judge Feldman requesting the clip from *The View* television show is attached to Mr. Levine's declaration. (*Id.* at 5).

Indeed, the Court has addressed Plaintiff's requests for copies of the television show clips on multiple occasions. Most recently, the undersigned instructed Plaintiff at a March 10, 2014 videoconference to contact ABC News to determine if the tapes are available, or to have a friend or family member search the internet for the video clips. (Dkt.384). Despite these instructions, Plaintiff continues to demand that copies be produced by the Defendants or by defense counsel, who maintain that they do not possess copies of the tapes. (Dkt. 391 at 1). As a result, Plaintiff's request for the production of the videos is denied.

In his motion for miscellaneous relief, Plaintiff also contends that Mr. Levine never provided Plaintiff with requested hearing tapes or color photos and instead returned the check that Plaintiff sent to pay for the copies. (Dkt.389). Plaintiff claims the returned check was ultimately confiscated for restitution. (*Id.*).

**\*3** In response, Mr. Levine notes that he consulted Judge Feldman concerning the check, and decided to return the check to Plaintiff. (Dkt. 391 at 1, 6). Further, Mr. Levine contends that he has provided Plaintiff with "thousands of pages of documents provided to plaintiff over the past decade" and attaches two color photographs of boxes of documents. (*Id.* at 1, 3–4). The Court notes that these images are insufficient to demonstrate that Defendants have indeed submitted discovery materials to Plaintiff, as the pictures do not show the contents of the boxes.

In any event, it does not appear that Plaintiff is seeking any affirmative relief from this portion of his motion, but rather is complaining to the Court about his dissatisfaction with the way that discovery was conducted in his case. Accordingly, Plaintiff's motion for miscellaneous relief is denied.

## III. Letter Request for a Jury Trial (Dkt.402)

On March 27, 2014, Plaintiff submitted a letter to the Court requesting a jury trial. (Dkt.402). In this letter, Plaintiff claims that Judge Siragusa "resigned" from the case because "he could no longer disadvantage [Plaintiff] in favor of attorney general." (*Id.*). Plaintiff argues that

the undersigned cannot preside over the case because she has "continued same prejudice mularky, refusen to appoint counsel for a 13 years under same repetitive garbage." (*Id.*). Plaintiff submits that he is entitled to a jury trial because Judge Siragusa "resigned" and because "Judge Wolford is new." (*Id.*).

"It is well established that the right to a jury trial is a fundamental right and that purported waivers are to be 'scrutinized with the utmost care.' " *S.E.C. v. Masri,* 551 F.Supp.2d 320, 321 (S.D.N.Y.2008) (quoting *Heyman v. Kline,* 456 F.2d 123, 129 (2d Cir.1972)). Fed.R.Civ.P. 38 acknowledges the Seventh Amendment and statutory right to a jury trial. This demand must be timely made. Fed.R.Civ.P. 38. Failure to make a demand constitutes a waiver of a jury trial. *Id.* Pursuant to Fed.R.Civ.P. 39(a)(1), the parties may also stipulate to a bench trial. Even where a party fails to make a proper jury demand, the court may use its discretion to overcome the waiver and order a jury trial. Fed R. Civ. P. 39(b).

A waiver of a jury trial does not have to be formal and may be inferred by the conduct of the parties or counsel. *See Royal American Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1018 (2d Cir.1989). For example, acquiescing to a bench trial without objection constitutes the waiver of the right to a jury and will not be reversed. *See Kahn v. General Motors Corp.,* 865 F.Supp. 210, 212 (S.D.N.Y.1994); *see also Power v. Tyco Int'l, Inc.,* No. 02 Civ. 6444(GEL), 2006 WL 1628588, at *2 (S.D.N.Y. June 13, 2006) (denying plaintiff's demand for a jury trial following plaintiff's waiver of a jury trial due to plaintiff's mere inadvertence in failing to initially timely request a jury trial). Moreover, a *pro se* plaintiff's failure to timely inform the defendants of a jury trial demand constitutes an irreversible waiver of a jury trial. *See Favors v. Coughlin,* 877 F.2d 219, 220–21 (2d Cir.1989). "*[P]ro se* litigants are not treated differently with regard to waiver of a jury right." *Kahn,* 865 F.Supp. at 213.

**\*4** Here, Plaintiff properly demanded a jury trial in his complaint, and then later requested orally in a video conference that his jury trial be adjourned and rescheduled as a bench trial. (Dkt.356). On August 22, 2012, the Defendants agreed to a bench trial in writing in a letter to the Court. In a July 4, 2013 letter to the Court, Plaintiff states that he needs a jury trial because "I am convinced now that you are not 'only' bias against me but prejudice and I feel I will be doomed to volunteer my

own demise." Judge Siragusa responded in a July 12, 2013 letter, informing Plaintiff that the Court would schedule a jury trial because Plaintiff is entitled to a jury trial and did not waive a jury trial in writing. Shortly thereafter, Plaintiff stated in his July 22, 2013 letter to the Court that he would waive a jury trial and submit to a bench trial. (Dkt.357). He attached the formal written waiver of a jury trial. (*Id.*).

The history of the case shows that Plaintiff willingly and knowingly signed a formal waiver of a bench trial, stating:

> "I, Jessie J. Barnes, the plaintiff in the above-captioned case, move that my demand for a trial by jury of this action be withdrawn and that this action at law be tried by the Court without a jury. This motion and request is made under Rule 38(d) of the Federal Rules of Civil Procedure."

(Dkt. 357 at 8). Further, in the letter to the Court accompanying this waiver, Plaintiff stated, "I have decided to sign the waiver sir sorry for flip-flopping all over the place." (Dkt. 357 at 1).

Moreover, the change in District Judges assigned to this case does not negate Plaintiff's prior waiver. As an initial matter, contrary to Plaintiff's belief, Judge Siragusa did not "resign" from the case, but rather, he transferred the case to the undersigned in order to redistribute the Court's caseload. In addition, as explained by the Court in *Kahn:*

> To permit parties to condition jury waivers on having a bench trial before a specific judge would not only corrupt the assignment system in this district but, would disrupt the orderly management of cases generally throughout the Federal courts. It is a basic proposition that all district judges are equal and that litigants have no right to choose a particular judge once a case has been filed.... Cases are assigned by lot to new district judges from the docket of other judges.... Litigants know that long pending civil cases may frequently

be transferred from one judge to another for disqualification, death, illness, and resignation of a judge.

865 F.Supp. at 214–15.

In sum, the Court is presented with a written waiver of a jury trial. Because Plaintiff knowingly and formally waived his right to a jury trial, the Court denies Plaintiff's request for a jury trial. The case will proceed as a bench trial.

### IV. Motion for Extension of Time to File (Dkt.404)
By letter dated April 10, 2014, Plaintiff requests a five day extension to submit his request for expert testimony and additional witnesses, to be filed with the Court "before April 21, 2014." (Dkt.404).

**\*5** The Court notes that, pursuant to the Pretrial Order, Plaintiff has until June 1, 2014 to submit his list of expert testimony witnesses. (Dkt 386 at 4). Additionally, Plaintiff has submitted additional requests for the production of witnesses, and these requests are considered below. As a result, Plaintiffs motion for an extension of time to file his request is denied as moot.

### V. Motion to Compel (Dkt.405)
By motion dated April 10, 2014, Plaintiff moves to compel Defendant P. Mastrantonio, Jr. to file an amended response to Plaintiff's interrogatories numbers 1–6, 8, 10, and 13–16 from docket entries 29, 31, and 48. (Dkt. 405 at 2). Plaintiff claims that Defendant P. Mastrantino, Jr.'s full response will demonstrate a "plan, motive and intent to retaliate and use excessive force upon Plaintiff...." (*Id.* at 3).

In a declaration dated April 29, 2014, Mr. Levine opposes Plaintiff's motion, and notes that discovery is closed. (Dkt. 414 at 3). Indeed, this Court has previously addressed Plaintiff's motions to compel Defendant Mastrantonio, Jr.'s responses to the same interrogatories. (Dkt. 188–2; Dkt. 371).

In his reply dated May 2, 2014, Plaintiff argues that he should be able to readdress his motion to compel because his original motion was denied without prejudice. (Dkt. 416 at 4) (citing Dkt. 90). However, Plaintiff only had the ability to renew his motion within the relevant discovery

period. Discovery closed in 2008. (Dkt.247). Accordingly, Plaintiff's motion to compel is denied.

### VI. Motion to Remand (Dkt.406)
On April 9, 2014, Plaintiff moved for an order of "remand and retention of the Plaintiff to Wendy[sic] or Auburn Correctional Maximum Security Facility ... at least (30) thirty days prior to July 28, 2014 trial to retrieve discovery documents in (2) two bins from family...." (Dkt. 406 at 1). Plaintiff notes that he is currently housed at a facility approximately 240 miles from Rochester, New York, and that this distance prohibits Plaintiff from contacting his family friend to retain his discovery documents. (*Id.* at 3–4). Plaintiff argues that he is only asking for a temporary order so that he might obtain and organize his trial documents. (Dkt. 416 at 5).

As Mr. Levine notes, the "[p]lacement of an inmate at particular facilities involves determining available cells, known enemies and a variety of other issues best determined by DOCCS and not the Court." (Dkt. 414 at 4).

With regard to Plaintiff's concerns about having the opportunity to review and organize his papers before trial, Plaintiff may have his friend deliver the papers to the Court, where they will be stored until he arrives for trial. Plaintiff will be given a reasonable amount of time to review his papers before the commencement of trial.

As a result, Plaintiff's motion is denied.

### VII. Motion to Produce, for Subpoenas, to Appoint Counsel (Dkt.408)

#### A. Inmate Witnesses
**\*6** Plaintiff asks the Court to issue writs of habeas corpus *ad testificandum* for the following individuals: (1) Omar Adams (12–A–4750); (2) Carlos Vasquez (97–A–1363); (3) Daniel Dieguez (94–R–9305); (4) Francisco Ramos (90–T–3989); (5) Willie Baines (97–A–7286); (6) Samuel Winbush (13–A–2512); (7) Maurice Boatwright (93–A–1769); (8) Roberto DeJesus (12–A–0084); and (9) Korane Womack (05–B–0022). (Dkt. 408 at 3–6).

According to Mr. Levine, the only requested inmate witnesses remaining in custody include: (1) Francisco Ramos, (90–T–3989); (2) Willie Baines (97–A–7286); (3)

Samuel Winbush (13–A–2512); and (4) Roberto DeJesus (12–A–0084). (Dkt.414).

As to Mr. Ramos, the Court previously sent a letter asking Mr. Ramos to state whether he witnessed any of the incidents alleged and if so, to state what incident was witnessed as well as what Mr. Ramos saw or heard. Mr. Ramos responded that he only recalled one incident "where an altercation occurred between Mr. Barnes and some officers while they were en route to the shower." (Dkt. 367 at 2–3). Mr. Ramos stated that he provided an affidavit to Mr. Barnes concerning that incident, but that he would need to review the affidavit to refresh his recollection. (*Id.* at 3). In a letter order dated November 25, 2013, Judge Siragusa informed Plaintiff that the Court files do not include a statement from Mr. Ramos, and therefore the Judge was unable to determine whether or not Mr. Ramos would be a relevant witness. (*Id.* at 1). However, Judge Siragusa provided Plaintiff the opportunity to respond as to whether or not he wanted to call Mr. Ramos as a witness. (*Id.*). Plaintiff requests the presence of Mr. Ramos to testify as to the April 30, 2001 incident. (Dkt. 408 at 4). The Court will issue a writ of habeas corpus *ad testificandum* to secure the presence of Mr. Ramos at trial.

Plaintiff requests the testimony of inmate witnesses Mr. Baines and Mr. DeJesus to address evidence of events from July 2002. (Dkt. 408 at 4–5). However, the events in the instant case concern alleged incidents on April 30, 2001, April 18, 2002, September 4, 2002, and October 22, 2002, and therefore any testimony relating to July 2002 incidents would be irrelevant. (Dkt.248). Although Plaintiff alleged claims related to July 2002 incidents in his original and first amended complaints (Dkt. 1 & Dkt. 28), his second amended complaint governs this case and does not incorporate any claims or allegations relating to incidents in July 2002 (Dkt.248). Therefore, the Court denies Plaintiff's request for a writ to produce Mr. Baines or Mr. DeJesus.

Plaintiff asks that the Court secure the presence of Mr. Winbush at trial to testify to the alleged October 22, 2002 incident. (Dkt. 408 at 5). Plaintiff attaches a document that he alleges is Mr. Winbush's affidavit as to what he observed on October 22, 2002. (Dkt. 408–3 at 11–12). In this affidavit, Mr. Winbush directly addresses the October incident that Plaintiff alleges. (*Id.*). If Mr. Winbush did actually draft this affidavit, it does appear

that Mr. Winbush would be a relevant witness. However, the Court has attempted to contact Mr. Winbush and has not received a response. The Court will send a follow-up letter to Mr. Winbush that states the following:

**\*7** Dear Samuel Winbush 13–A–2512:

> Jessie Barnes, an inmate in the New York State Department of Correctional and Community Services, has named you as a potential witness in his Federal civil rights case against Randy Banks, Courtney Bennett, T. Berg, Carey Bubcaz, D. Davis, Thomas Dinninny, Gregory Hungerford, James Marshall, Angelo Mastrantonio, Peter Mastrantonio Jr., Donald Mcintosh, T. Murley, B. Potter, Franklin Raub, M. Vandergrift, Paul Weed, and H. Wetzel.

> The complaint alleges the use of excessive force against Jessie Barnes on April 30, 2001, April 18, 2002, September 4, 2002, and October 22, 2002, as well as retaliatory harassment against Jessie Barnes on May 31, 2001, by P. Mastrantonio Jr.

> In order to determine whether you would qualify as a relevant and necessary witness, would you please answer the following questions:

> 1. Did you witness any of the incidents about which Jessie Barnes is suing?

> 2. If so, which incident did you witness and what did you see or hear?

> Please send your answers *by June 13, 2014,* to the Court at the following address: Hon. Elizabeth A. Wolford, U.S. District Court, 100 State Street, Rochester, N.Y. 14513. If you qualify as a witness, you will be notified of the trial date.

The Court will forward any response from Mr. Winbush to Plaintiff, and Plaintiff can then inform the Court if he would still like to have Mr. Winbush produced for trial.

### B. Requests for Subpoenas of Non–Party Witnesses

Plaintiff requests subpoenas for at least three non-party witnesses. (Dkt. 408 at 6). "[T]he Court must ... determine whether the testimony proffered by these witnesses is relevant, necessary, and not cumulative before the subpoenas shall issue." *Haywood v. Hudson,* No. CV–

90–3287 (CPS), 1993 WL 150317, at *4 (E.D.N.Y. Apr.23, 1993).

Plaintiff requests a subpoena to require former Superintendent Michael McGinnis to speak about Defendant Mastrantonio, Jr.'s "violent propensities," as well as the alleged destruction of the surveillance videotapes. (Dkt. 408 at 6; Dkt. 416 at 2). Defendants oppose this request, stating that "such testimony would not be admissible nor relevant therefore the subpoena should not be issued." (Dkt. 414 at 2). The Court agrees that any testimony by Superintendent McGinnis would be inadmissible or irrelevant. There is no claim that Superintendent McGinnis was personally involved in the alleged incidences. As a result, he could not testify to personal knowledge at the trial. Plaintiff's request to subpoena Superintendent McGinnis is denied.

Plaintiff requests a subpoena to secure the presence of Sergeant Fields and Lieutenant Strong at trial to testify about the urinalysis test ordered for Plaintiff on September 4, 2002. (Dkt. 408 at 6). Plaintiff claims the incident is relevant because it was the order of the test that led to the following September 4, 2002 incident that is at issue in the present case. (Dkt. 416 at 2). Even if this is true, Plaintiff has offered no explanation to support the conclusion that the ordering of a urinalysis test is relevant to the alleged use of excessive force that occurred later in the day. Therefore, Plaintiff's request to have Sergeant Fields and Lieutenant Strong subpoenaed to testify regarding the September 4, 2002 urinalysis is denied as irrelevant.

**\*8** Plaintiff asks the Court to issue a subpoena *duces tecum* to Chemung County Supreme Court to obtain the civil file of one of Plaintiff's prior cases. (Dkt. 408 at 7). The facts and circumstances of Plaintiff's prior Supreme Court case are not relevant to the present federal action. Therefore, Plaintiff's request for a subpoena *duces tecum* is denied.

### C. Expert Witnesses

Plaintiff seeks the testimony of Leslie Jones, Esq. as an "expert witness" to speak to Defendant Mastrantonio, Jr.'s alleged "violent history or propensities" as well as Plaintiff's history of treatment during his incarceration. (Dkt.408).

Plaintiff has failed to comply with the requirements of Fed.R.Civ.P. 26(a)(2)(A), (B), and (C) that a party seeking to present expert testimony must provide a written report prepared and signed by the expert witness containing a statement of all "opinions to be expressed and the basis and reasons therefore." Fed.R.Civ.P. 26(a)(2)(B). "Further, '*pro se* litigants are generally required to inform themselves regarding procedural rules and to comply with them.'" *Abdul–Jabbar v. West*, No. 05–CV–0373F, 2008 WL 596884, at *2 (W.D.N.Y. Feb.28, 2008) (quoting *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir.1995)). Plaintiff has procedurally failed to properly request subpoenas for expert witnesses, and therefore his request for a subpoena to obtain Ms. Jones as a witness is denied.

Plaintiff also asks the Court to appoint an "expert videographer" from Lavega & Associates to testify as to the authenticity of the videotapes of the alleged incidents. (Dkt. 408 at 8; Dkt. 416 at 3).

"The Court has broad discretion in determining whether to appoint an expert witness." *Dowdell v. City of Rochester*, No. 11–cv–6493G, 2013 WL 5504145, at *2 (W.D.N.Y. Oct.2, 2013). "The Court considers 'such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view.'" *Id.* (quoting *Benitez v. Mailloux*, No. 9:05–CV–1160, 2007 WL 836873, at *1 (N.D.N.Y. Mar.15, 2007)). Here, there is nothing to suggest that the issues are so complex as to require the Court to appoint an expert witness. Accordingly, Plaintiff's request for the appointment of an expert videographer witness is denied.

### D. Motion to Appoint a Private Investigator

Plaintiff requests that the Court appoint a private investigator to Plaintiff's case to "investigate whereabouts and the availability of the witnesses listed by the plaintiff." (Dkt. 408 at 8). Plaintiff has not provided a sufficient explanation for why the Court should engage in appointing a private investigator to permit Plaintiff to locate potential witnesses. Indeed, the trial date is quickly approaching. If the Plaintiff is able, he is free to personally hire and utilize the services of a private investigator. Therefore, Plaintiff's request for the appointment of a private investigator is denied.

### E. Motion for Appointment of Counsel

**\*9** Plaintiff requests the appointment of *pro bono* counsel or, in the alternative, a legal advisor. (Dkt. 408 at 8–9). The Court has addressed Plaintiff's request on numerous occasions, and most recently in a Decision and Order dated March 20, 2014. (Dkt.387). Plaintiff has presented no new information to persuade the Court to find that Plaintiff requires the assistance of *pro bono* counsel. Accordingly, Plaintiff's request for the appointment of counsel, or, in the alternative, a legal advisor, is denied.

Therefore, Plaintiff's motion to produce, for subpoenas, and to appoint counsel, as well as other requests within the text of the motion, are granted in part and denied in part as set forth above.

### VIII. Motion for a "Gag" Order (Dkt.412)

In an April 14, 2014 motion, Plaintiff requests a "gag order" against Defendants to "inform all of its court agents and staff to inform court should they observe Randy Banks or any other Defendants making faces, taunting, or making any jestures[sic] which would humiliate, antagonize, or make a mockery and or make side show or spectacle of this trial...." (Dkt. 412 at 4). [2] Plaintiff requests a legal instrument that does not exist. A gag order is typically issued by a court to place general limits on speech outside of the courtroom concerning a case. *See Dorsett v. County of Nassau,* 289 F.R.D. 54, 64 (E.D.N.Y.2012) (distinguishing a gag order from a protective order, and describing a gag order). The Court expects all trial participants to conduct themselves in a professional manner. Plaintiff's motion for a "gag" order is denied.

[2]   In this motion, Plaintiff again requests that Defendant Bennett and Attorney General Eric T. Schneiderman be compelled to produce the dates, name, title, and television networks involved in the "restricted diet" videos in which Defendant Bennett allegedly appeared. (Dkt. 412 at 2). This issue has been addressed. Further, Plaintiff requests a subpoena to produce copies of newspaper articles from *The New York Times* as well as *The Albany Times Union* that allegedly addressed the same "restricted diet" situation. (Dkt. 412 at 5). Discovery is closed. (Dkt.247). Plaintiff's requests are denied.

### IX. Motion for Extension of Time to File Pretrial Documents (Dkt.419)

In a letter dated May 26, 2014, which this Court construes as a motion for an extension of time to file, Plaintiff asks the Court to extend the time for Plaintiff to file his responses to the Pretrial Order. (Dkt.419). Plaintiff indicates that his production of documents will be delayed due to the time it takes to get copies back from the correctional facility's law library. (*Id.*). Currently, all pretrial submissions are due by June 1, 2014. (Dkt.386). Plaintiff requests an extension to June 17, 2014. (Dkt.419). Plaintiff's request to extend the time for pretrial submissions is granted. The deadline of June 1, 2014, set forth in the Pretrial Order (Dkt.386) is hereby changed to June 17, 2014.

### *CONCLUSION*

For the foregoing reasons, it is hereby

ORDERED, that the Court reserves decision on Plaintiff's Motion in Limine (Dkt.327) and Motion for Sanctions (Dkt.395) until the time of trial;

ORDERED, that Plaintiff's Motion for Miscellaneous Relief (Dkt.389) is denied;

ORDERED, that Plaintiff's Request for a Jury Trial (Dkt.402) is denied;

ORDERED, that Plaintiff's Motion for Extension of Time to File (Dkt.404) is denied;

ORDERED, that Plaintiff's Motion to Compel (Dkt.405) is denied;

ORDERED, that Plaintiff's Motion to Remand (Dkt.406) is denied;

**\*10** ORDERED, that Plaintiff's Motion to Produce, for Subpoenas, and to Appoint Counsel (Dkt.408) is granted in part and denied in part in accordance with the reasons set forth in this Decision and Order;

ORDERED, that Plaintiff's Motion for a "Gag" Order (Dkt.412) is denied; and

ORDERED, that Plaintiff's Motion for Extension of Time to File is granted, and all pretrial submissions are now due by June 17, 2014.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 2435807

**End of Document**

© 2016 Thomson Reuters. No claim to original U.S. Government Works.