**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

NAKIA CHANEY,

                      **Plaintiff,**

v.

CITY OF ALBANY, ALBANY POLICE DEPARTMENT, STEVEN KROKOFF, SCOTT GAVIGAN (BADGE #1826), RICHARD GORLESKI (BADGE #2232), DANIEL KUHN (BADGE #1952), KEVIN MEEHAN (BADGE #2407), JOHN DOE (BADGE #889), BRIAN KISLING, MATTHEW STALEY, DANIEL JAMES, JASON WILSON, SEEBER, SCHENECTADY COUNTY, SCHENECTADY COUNTY JAIL, ANTHONY SINATRA (BADGE #270), JOSEPH GLASSER (BADGE #065), KRIS VAN HOESEN (BADGE #291), ERNIE REAULO (BADGE #24), UNKNOWN JOHN DOES FROM SCHENECTADY SHERIFF, UNKNOWN JOHN DOES FROM SCHENECTADY COUNTY JAIL, and ALAN BELL,

                      **Defendants.**

6:16-CV-1185
(NAM/TWD)

_____

**APPEARANCES:**

Nakia Chaney
Schenectady, New York 13206
_Plaintiff Pro Se_

THE REHFUSS LAW FIRM, P.C.
Stephen J. Rehfuss, Esq.
Abigail W. Rehfuss, Esq.
40 British American Blvd.
Latham, New York 12110
_Attorneys for Defendants City of Albany, Krokoff, Gavigan, Gorleski, Kuhn, Meehan, Kisling, Wilson, Seeber, Staley, James_

BURKE, SCOLAMIERO, MORTATI & HURD LLP
Judith B. Aumand, Esq.
7 Washington Square
Albany, New York 12212
_Attorney for Defendant Alan Bell_

GOLDBERG SEGALLA, LLP
James F. Faucher, II, Esq.
Jonathan M. Bernstein, Esq.
8 Southwoods Blvd., Suite 300
Albany, New York 12211
*Attorneys for Defendants Schenectady County,*
*Reaulo, Sinatra, Vanhoesen, Glasser*

**Hon. Norman A. Mordue, Senior District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.     INTRODUCTION

Plaintiff *pro se* Nakia Chaney ("Plaintiff") brings this action under 42 U.S.C. § 1983 alleging various claims arising out of encounters with the Defendant law enforcement officers. (Dkt. No. 1).  Currently before the Court are Defendants' motions for summary judgment, (Dkt. Nos. 165, 167, 168), which Plaintiff has opposed, (Dkt. No. 176, 177, 178).  For the reasons that follow, Defendants' motions are granted in part and denied in part.

### II.    BACKGROUND

#### A.  Procedural History

Plaintiff commenced this action on September 30, 2016, asserting at least nine claims for alleged violations of his constitutional rights by known and unknown individuals.  (Dkt. No. 1). Specifically, Plaintiff first alleges that Defendants Schenectady County, Schenectady County Sheriff's Department, Schenectady County Jail, and Officers Sinatra, Glasser, Van Hoesen, Reaulo, and other unknown John Does (collectively, the "Schenectady County Defendants") conducted "unlawful [ ] visual body cavity searches" on Plaintiff's person prior to his admission to Schenectady County Jail in 2013 and 2014.  (*Id.*, p. 22).[1]  Plaintiff also alleges that on December 28, 2013, Defendant Glasser used "excessive force [by] unlawfully tasering plaintiff

---

[1] All citations to documents in the record reference the page numbers identified on the CM/ECF page stamp.

while [in] handcuffs . . . ." (*Id.*, p. 23). Defendant further claims that the Schenectady County Defendants unlawfully denied him medical care immediately following the December 28th incident. (*Id.*, p. 7).

Plaintiff claims that the Albany Police Department ("APD"), Police Chief Steven Krokoff, and Officers Gavigan, Gorleski, Kuhn, Meehan, Kisling, Staley, James, Wilson and Seeber (collectively the "Albany Defendants") conducted "unlawful [ ] visual body cavity searches" on Plaintiff's person at the Albany police station. (Dkt. No. 1, p. 22). Plaintiff further alleges that the Albany Defendants violated his constitutional rights in August 2014 and October 2014 for separate incidents involving alleged "unlawful gun point stop[s], arrest or frisk, forcible touching [], sexual assault, excessive force, and abuse of legal process." (*Id.*). Plaintiff claims that the Albany Defendants violated his right to privacy through their unlawful touching of his "private parts" during several alleged strip searches. (*Id.*, p. 23).

Finally, Plaintiff alleges that Defendant Alan Bell of the Niskayuna Police Department, along with Defendant Gavigan, conducted "unlawful [GPS] tracking of [Plaintiff's] every move for over 9 months without a warrant . . . ." (Dkt. No. 1, pp. 10, 23). Specifically, Plaintiff claims that Defendant Bell "requested [that] [D]efendant Scott Gavigan use the unlawful GPS tracking device," and "controlled the GPS device in the Town of Niskayuna [while] Defendant Scott Gavigan covered the GPS device for the Albany Police without a warrant [ ] or probable cause." (*Id.*, p. 10).

In November 2017, the Court granted the Albany County Defendants' motion for judgment on the pleadings, dismissing them from this action. (Dkt. No. 110, pp. 7–8). In that same order, the Court denied Defendant Alan Bell's motion to dismiss. (*Id.*, pp. 11–14). On December 15, 2017, the Court granted Plaintiff's motion to substitute Joseph Glasser for

Defendant Schenectady County Sheriff Badge #SCP 065; and granted Plaintiff's motion to substitute APD Officers Daniel Kuhn, Brian J. Kisling, Jason A. Wilson, Seeber, Matthew Staley, and Daniel James for "Defendant John Does Albany Police." (*See* Dkt. No. 111).

## B. Record Before the Court[2]

While the Court "is not required to consider what the parties fail to point out," in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court has nevertheless conducted "an assiduous review of the record" to determine whether there is evidence that might support any of Plaintiff's claims. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). The Court has construed the following undisputed facts in the light most favorable to the Plaintiff.

### 1. December 28, 2013 Arrest

On December 28, 2013, Plaintiff was a passenger in a vehicle driven by Lorenzo McGill. (Dkt. No. 165-28, p. 114). McGill led police on a high-speed chase after he was observed driving without headlights. (*Id. see also* Dkt. No. 165-29, ¶ 4). The chase ended at 767 Westmoreland Drive in the Town of Niskayuna, where Plaintiff lived at the time. (Dkt. No. 165-28, pp. 117, 123). There, Plaintiff was involved in a brief struggle with Schenectady County Sheriff's Deputy Glasser, who used a taser to subdue Plaintiff. (Dkt. No. 165-29, ¶ 4). Plaintiff appeared in court and was released on bail that same night. (Dkt. No. 165-28, p. 125). Plaintiff did not receive medical treatment for any injuries while in police custody, nor did he seek medical treatment following his release. (*Id.*, pp. 127–28). Plaintiff was later charged with obstructing governmental administration and resisting arrest; he pled guilty to disorderly conduct

---

[2] The discovery deadline expired on November 30, 2018. Defendants deposed Plaintiff on July 31, 2018. (*See* Dkt. No. 165-28). Plaintiff did not depose any of the Defendants.

in full satisfaction of those charges.  (Dkt. No. 165-28, p. 116; Dkt. No. 165-29, ¶ 9; *see also* Dkt. No. 165-36, pp. 3–4; Dkt. No. 165-37, p. 2).

### 2.  August 14, 2014 Arrest

On August 14, 2014, Plaintiff was a passenger in a vehicle driven by his friend, Jonathan Smith.  (Dkt. No. 165-28, p. 25).  APD officers stopped the vehicle after Smith failed to use a turn signal.  (Dkt. No. 167-2, p. 4).  The police report states that APD officers then observed Smith throw three glassine envelopes, each containing a quantity of heroin, out of the vehicle. (*Id.*).  Smith was arrested and charged with criminal possession of a controlled substance and criminal possession of a hypodermic instrument.  (*Id.*).  Plaintiff was not charged with any crime, and he was released from the scene.  (Dkt. No. 165-28, p. 45).

### 3.  October 13, 2014 Arrest

On October 13, 2014, APD Officer Gavigan received information from a confidential informant that Plaintiff and the informant would be transporting heroin to the Albany area from New Jersey.  (Dkt. No. 167-2, p. 93).  When Plaintiff and the informant exited the highway in Albany, APD officers stopped the vehicle and ordered Plaintiff to show his hands and exit the vehicle.  (*Id.*, pp. 93–94).  The Arrest Report indicates that APD recovered 198 glassine envelopes from the left pocket of Plaintiff's coat located in the trunk of the vehicle.  (*Id.*, p. 6). Each envelope contained a quantity of heroin, with an aggregate weight of 4 grams.  (*Id.*). Plaintiff was later charged and convicted of Criminal Possession of a Controlled Substance in the Third Degree in violation of Penal Law § 220.16(1).  (Dkt. No. 167-2, p. 7).

### 4.  Visual Body Cavity Searches

In 2014, Plaintiff was convicted of drug crimes in Niskayuna Town Court based on activities unrelated to this action.  (Dkt. No. 165-28, p. 46).  Plaintiff was sentenced to serve 30

consecutive four-day weekends in Schenectady County Jail.  (*Id.*).  While serving that sentence,

Plaintiff was required to submit to a "visual body cavity search" before each admission to the

Schenectady County Jail.  (Dkt. No. 165-28, pp. 15–16).  Plaintiff was admitted to the

Schenectady County Jail and searched according to the County's admission policy on at least six

occasions in August and September 2014.  (Dkt. No. 165-38, ¶ 4).

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if

all the submissions, taken together, "show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48

(1986).  The moving party bears the initial burden of demonstrating "the absence of a genuine

issue of material fact."  *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the

outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at

248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).

If the moving party meets this burden, the nonmoving party must "set out specific facts

showing a genuine issue for trial."  *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at

323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  Further, "[w]hen no rational jury

could find in favor of the nonmoving party because the evidence to support its case is so slight,

there is no genuine issue of material fact and the grant of summary judgment is proper."  *Gallo v.*

*Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citing *Dister v.*

*Continental Grp., Inc*., 859 F.2d 1108, 1114 (2d Cir. 1988)).  "When ruling on a summary

judgment motion, the district court must construe the facts in the light most favorable to the

nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). "Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). To that end, "sworn statements are more than mere conclusory allegations subject to disregard [ ]; they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion." *Id.* at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Further, where a plaintiff proceeds *pro se*, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, a *pro se* party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

## IV. DISCUSSION

Plaintiff asserts a number of claims against each of the Defendants. The Court has construed Plaintiff's Complaint liberally, and will address each of the Defendants' arguments for summary judgment in turn.

### A. Claims Against the Schenectady County Defendants

#### 1. Excessive Force on December 28, 2013[3]

---

[3] To the extent they are alleged, the Court dismisses Plaintiff's claims against "Unknown John Does from Schenectady County Sherriff" arising from the encounter between Plaintiff and Officer Glasser on December 28, 2013. The Court has reviewed the record and finds that there is no evidence to support a claim that excessive force or other unlawful conduct was committed by any unidentified officer(s) on that date.

Plaintiff alleges that on December 28, 2013, Officer Glasser of the Schenectady County Sheriff's Department used "excessive force [by] unlawfully tasering plaintiff while [in] handcuffs." (Dkt. No. 1, p. 23). The Schenectady Defendants counter that the force deployed by Officer Glasser was proper under the circumstances, and they argue that "Plaintiff is estopped from claiming that he was a passive recipient of police violence." (Dkt. No. 165-43, pp. 6–11).

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). To succeed on an excessive force claim, "a plaintiff must ultimately demonstrate that the defendant's use of force was objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Hulett v. City of Syracuse*, 253 F. Supp. 3d 462, 491 (N.D.N.Y. 2017); *see also Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004). The "objective reasonableness" inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy*, 623 F.3d at 96 (citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004)).

In evaluating an excessive force claim, courts consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "[A] court must evaluate the record from the perspective of a reasonable officer on scene, rather than with the 20/20 vision of hindsight." *Hulett*, 253 F. Supp. 3d at 491 (citing *Tracy*, 623 F.3d at 96; *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)). "[G]ranting summary judgment against a plaintiff on

an excessive force claim is not appropriate unless no reasonable fact finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am.*, 361 F.3d at 123.

Here, the parties have offered vastly different versions of the events that occurred after the police chase on December 28th. Plaintiff claims that he "did not run [from police] and had no reason to run," and adds that he was "snatched out of the vehicle by several officers at gun point [sic] flanked by several officers and immediately handcuffed and tasered." (Dkt. No. 176, p. 2). These allegations are consistent with the Complaint, and align with his recollection of events during his deposition testimony. (Dkt. No. 1, p. 7; *see also* Dkt. No. 165-28, pp. 117–28). According to Plaintiff, he was hit by the taser in the leg near his hamstring, causing bleeding and leaving a scar. (Dkt. No. 165-28, pp. 120–21).

Officer Glasser recalls the encounter quite differently, asserting that when the chase ended at 767 Westmoreland Drive:

> Plaintiff Nakia Chaney jumped out of the passenger side door and ran to the front door of the house trying to get the door open. I took plaintiff to the ground where he resisted and refused to place his hands behind his back. I gave Plaintiff direct orders to put his hands behind his back, which he ignored. I used my taser to drive stun plaintiff in the back. This caused plaintiff's hands to move from the front of his body to the back. Once that occurred, I was able to handcuff plaintiff.
>
> At the time of arrest, I did not know why plaintiff had tried to run away. I also did not know if plaintiff was armed and why plaintiff was resisting so hard to keep his hands in front of him. For my safety and the safety of the other officers involved, Plaintiff needed to be handcuffed so that he could not access a weapon or flee the scene. . . .
>
> Since the taser did not cause any injury to plaintiff, he was not given medical treatment. No taser darts were used. I employed the taser using a drive stun. A drive stun is when the taser is held against someone's body without firing the projectiles, and is used to employ electricity to gain compliance.

(Dkt. No. 165-29, ¶¶ 4–5, 8). Officer Glasser's recollection appears to be consistent with his Arrest Report and Taser Use Report from the night of the incident. (*See* Dkt. No. 165-33, p. 2; Dkt. No. 165-30, p. 2).

Aside from these accounts, the parties offer no additional evidence to support their opposing versions of events. At a minimum, there are material issues of fact as to whether Plaintiff ran and resisted arrest, where the taser struck him, and whether it did so before or after he was in handcuffs, all of which affect the reasonableness of the use of force. Weighing the competing evidence and the parties' credibility is a task reserved for the trier of fact. Accordingly, the disputed issues of material fact preclude resolution as a matter of law, and the Schenectady County Defendants' motion for summary judgment on this claim must be denied.[4]

## 2. Denial of Medical Attention

Plaintiff also appears to claim that he was unlawfully denied medical attention by the Schenectady County Defendants following his arrest on December 28, 2013. (Dkt. No. 1, p. 7). Plaintiff alleges that he required medical treatment because "he became extremely hot, nervous, heart racing [sic], shocked scared weird feeling but was denied initial medical treatment to document complaints." (Dkt. No. 176, p. 2).

A claim for deliberate indifference to a pre-trial detainee's serious medical needs is analyzed under the Fourteenth Amendment, and requires a two-part showing: (1) that Plaintiff had a serious medical need for treatment; and (2) that the Schenectady County Defendants acted

---

[4] The Court rejects the Schenectady County Defendants' argument that judicial and collateral estoppel bar Plaintiff's excessive force claim because Plaintiff pled guilty to disorderly conduct. (*See* Dkt. No. 165-43, pp. 16–19). Here, a favorable adjudication of Plaintiff's excessive force claim would not "necessarily imply the invalidity" of Plaintiff's guilty plea because disorderly conduct involves materially different elements than obstructing governmental administration and resisting arrest—the original charges against him. *See Shapard v. Attea*, 710 F. App'x 15, 17–19 (2d Cir. 2017) (reversing the district court's finding that Section 1983 claims were barred where the excessive force claims were not incompatible with the plaintiff's prior guilty plea to second degree assault against an officer).

with deliberate indifference to such needs.  *See Gabriel v. County of Herkimer*, 889 F. Supp. 2d 374, 392 (N.D.N.Y. 2012) (citing *Caiozzo v. Koreman*, 581 F.3d 63, 71–72 (2d Cir. 2009)).  The first element requires "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (citing *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).  The second element is met when "the official 'acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'"  *Id*. (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)).

Here, Plaintiff offers no evidence of a serious medical condition capable of producing extreme pain, degeneration, or death.  (*See generally* Dkt. No. 1; Dkt. No. 176).  Plaintiff's claim that he was "extremely hot," "nervous," and "shocked" falls far short of the necessary showing.  *See Bradley v. Village of Greenwood Lake*, 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (dismissing excessive force claim against an arresting officer who kicked the plaintiff in the stomach causing temporary nausea and an abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005) (dismissing an excessive force claim where the arresting officer caused the plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly, resulting in bruising, swelling and unsubstantiated claims of nerve damage); *Roundtree v. City of New York*, 778 F. Supp. 614, 622 (E.D.N.Y. 1991) (dismissing an excessive force claim where the arresting officer pushed the plaintiff into a patrol car causing alleged pain and suffering).

Further, Plaintiff admits that he did not seek medical attention for his alleged medical needs following his release, and he does not claim any lasting physical injuries from the December 28th encounter.  (*See* Dkt. No. 165-28, p. 128).  Indeed, courts have found that a plaintiff's failure to seek medical attention after being released from custody undermines any claim of serious pain or that urgent care was needed.  *See, e.g.*, *Carey v. Maloney*, 480 F. Supp. 2d 548, 557–58 (D. Conn. 2007) (dismissing a plaintiff's claim for denial of medical treatment where the plaintiff never requested medical attention from the police, and did not seek medical attention until nearly twenty-four hours after his release from custody); *see also Rivera v. Goord*, 253 F. Supp. 2d 735, 756 (S.D.N.Y. 2003) ("Evidence that a plaintiff has refused medical care has been found to effectively rebut claims of deliberate indifference to serious medical needs."). After careful review of the record, the Court concludes that there are no facts from which a jury could find that Plaintiff had a serious medical need on December 28, 2013.

Moreover, even if Plaintiff could show a serious medical need, he has not presented any evidence that the Defendant officers ignored or rejected a specific request by Plaintiff for medical attention.  Indeed, there is no evidence that the Schenectady County Defendants were even aware of Plaintiff's alleged serious medical condition.  Thus, the record offers no facts whatsoever to show deliberate indifference by the Defendant officers.

Accordingly, because no reasonable jury could return a verdict in Plaintiff's favor for denial of medical attention, the Schenectady County Defendants' motion for summary judgment is granted on this claim.

### 3. Unlawful Visual Body Cavity Searches

Next, Plaintiff alleges that he was subjected to unlawful visual body cavity searches performed by the Schenectady County Defendants prior to each admission for his weekend stays

at the Schenectady County Jail. (Dkt. No. 1, p. 22). Plaintiff adds that the "schenectady county jail admission policy in which [Plaintiff] was forced to undress and spread apart his rectal and lift up his penis was without justification as there was no reason to believe that weapons or contraband was being concealed on or in the body and therefore violated [Plaintiff's] constitutional rights." (*Id*., pp. 19–20). Plaintiff claims that Defendants Van Hoesen, Reaulo, and Sinatra performed an "unlawful admission visual body cavity search" on Plaintiff on several occasions in August, September, and October of 2014. (*Id.*). Plaintiff also alleges that unidentified John Does of the Schenectady County Sherriff's Department performed unlawful visual body cavity searches in December 2013, and May and August of 2014. (*Id.*). Defendants acknowledge that Plaintiff was admitted to the Schenectady County Jail on six separate occasions in August and September 2014. (Dkt. No. 165-38, ¶ 4).

It is well-established that "[t]he general practice of strip searching a detainee during housing searches and on the way to and from court appearances is not unconstitutional, even if the detainee is accused only of a misdemeanor." *Thompson v. City of New York*, No. 16-CV-824, 2017 WL 1929552, at *2, 2017 U.S. Dist. LEXIS 70423, at *5 (S.D.N.Y. May 9, 2017) (citing cases). The Supreme Court has recognized that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities." *Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328 (2012). In *Florence*, the Supreme Court held that a county jail did not violate prisoners' rights when it permitted visual inspection body cavity searches, without reasonable suspicion, prior to the prisoners' introduction to a general population unit. *Id*. at 339. As in *Florence*, Plaintiff's allegations of unlawful searches relate specifically to "visual body cavity searches" conducted upon his admission to the Schenectady County Jail. (*See, e.g*., Dkt. No. 1, p. 7).

In support of summary judgment, the Schenectady County Defendants argue that Plaintiff's claims have been expressly rejected by the Supreme Court, and that his allegations "fail[ ] to show that the alleged admission visual strip searches violated a clearly established law in the Second Circuit." (Dkt. No. 180-4, pp. 11–12). According to Captain Gregory Cufari of the Schenectady County Sheriff's Office, "[e]ach time the plaintiff entered the jail he was a security risk because he was coming off the street and going into the jail's general population. By coming into the jail from the street, plaintiff had the ability [ ] to bring into the jail such items as weapons, drugs or other contraband." (*Id*.). In response, Plaintiff argues that "there was no reason to conduct a cavity search after plaintiff cleared all boss chairs and handwands without detection," and he contends that "[a]ny cavity searches was only to humiliate as there was no reasonable suspicion as plaintiff cleared security and unrelated to legitimate penological interests." (Dkt. No. 176, p. 4).

On this claim, the Court's previous ruling dismissing Plaintiff's claim against the Albany County Defendants applies with equal force. (*See* Dkt. No. 110, pp. 7–8). Plaintiff alleges that the searches he underwent at the Schenectady County Jail were unconstitutional because the Schenectady County Defendants did not have reasonable suspicion of concealed contraband— precisely the same claim rejected by the Supreme Court in *Florence*. Again here, Plaintiff's argument fails "because *Florence* permits correction officers to strip search detainees without particularized suspicion . . . and recognizes that strip searches are specifically 'designed to uncover contraband that can go undetected by a patdown, metal detector, and other less invasive searches.'" *Thompson*, 2017 WL 1929552, at *2, 2017 U.S. Dist. LEXIS 70423, at *6 (quoting *Florence*, 566 U.S. at 334). That includes searches involving visual inspection of body cavities. *Florence*, 566 U.S. at 340–41. Moreover, there is no evidence that the searches "did not serve a

legitimate penological purpose," or that they were "instead designed to intimidate, harass, or embarrass [Plaintiff]." *See Smith v. City of New York*, No. 14-CV-5934, 2015 WL 3929621, at *2, 2015 U.S. Dist. LEXIS 81337, at *7 (S.D.N.Y. June 17, 2015).

Accordingly, Plaintiff's claims of unlawful searches fail as a matter of law, and the Schenectady County Defendants' motion for summary judgment on these claims is granted. Plaintiff's claims against the Schenectady County Jail and Officers Van Hoesen, Reaulo, Sinatra, and other "Unknown John Does from Schenectady County Jail" are dismissed with prejudice.

### 4. *Monell* Claim

Next, Plaintiff alleges that "[t]he wrongful conduct alleged herein in regards to the admission visual body cavity searches has been conducted generally upon all members of the plaintiff class in that the strip searches were conducted pursuant to a long-established plan, policy, or procedure of the [Schenectady County Sherriff.]" (Dkt. No. 1, p. 20). This could be construed as a municipal liability claim against Schenectady County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694–95 (1978). In general, municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *Monell*, 436 U.S. at 691. In order to sustain a claim for municipal liability under Section 1983, a plaintiff must show that he suffered a constitutional violation in the first place, and that the violation resulted from an identified municipal policy or custom. *Monell*, 436 U.S. at 694–95. The same is true for claims against other government entities such as the County of Schenectady. *See Sheriff's Silver Star Ass'n of Oswego County, Inc. v. County of Oswego*, 56 F. Supp. 2d 263, 266 (N.D.N.Y. 1999).

As noted by the Schenectady County Defendants, Plaintiff's *Monell* claim is limited to

the alleged policy and practice of conducting visual body cavity searches upon admission to the Schenectady County Jail. Because the Court has already determined that the County's pre-admission search practices for the jail did not violate the Constitution, Plaintiff's *Monell* claim fails for the same reason. *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (municipal liability under *Monell* may only lie where there is an underlying constitutional violation). Accordingly, the Schenectady County Defendants' motion for summary judgment on Plaintiff's *Monell* claim is granted.

### B. Claim Against Defendant Bell

Plaintiff alleges that Defendant Alan Bell, a sergeant with the Niskayuna Police Department, "requested [that] Defendant Scott Gavigan use the unlawful GPS tracking device," and "controlled the GPS device in the Town of Niskayuna . . . without a warrant [ ] or probable cause." (Dkt. No. 1, pp. 10, 23). Plaintiff claims that "[t]he unlawful GPS tracking on plaintiff [sic] vehicle or cellphone was done without a warrant," resulting in a "massive invasion of [his] privacy." (*Id.*, p. 20). Plaintiff admits that these allegations are solely based on logs from the Albany-area license plate reader ("LPR") system, which identify dates, times, and locations when Plaintiff's vehicle was observed on public roads. (Dkt. No. 165-28, p. 141). Plaintiff testified that he is aware that Albany has cameras stationed throughout the city, and that these cameras are used to "record everything that goes by them," including license plates on passing vehicles. (*Id.*, pp. 133–34). Plaintiff also acknowledged that he does not believe that any LPR technology was placed directly on his vehicle. (*Id.*, pp. 135–37). Nonetheless, he argues that the use of numerous cameras throughout the city operated like a tracking device for law enforcement "because it continuously tracks and it works the same way as the GPS works." (*Id.*).

Defendant Bell argues that summary judgment is appropriate "because there is no evidence that Defendant Bell placed or directed to be placed a GPS device on Plaintiff's vehicle(s) and/or cellphone." (*See* Dkt. No. 168-32, pp. 6–9). Defendant Bell contends that Plaintiff's allegations about unlawful GPS tracking stem from a misunderstanding of the LPR technology. (*See id.*). According to Defendant Bell, "it is without question that [LPRs] are lawful, constitutional technology and may be used by law enforcement as a valuable tool." (*Id.*, p. 7).

Indeed, courts have consistently upheld the use of LPR and similar technologies by law enforcement agencies. *See, e.g.*, *United States v. Miranda–Sotolongo*, 827 F.3d 663, 668 (7th Cir. 2016) ("Because the police conducted a check of a database containing only non-private information and did so using only registration information that could be seen by any member of the public, the police did not conduct a Fourth Amendment search."); *United States v. Diaz–Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) (stating that "when police officers see a license plate in plain view, and then use that plate to access additional non-private information about the car and its owner, they do not conduct a Fourth Amendment search"); *United States v. Ellison*, 462 F.3d 557, 563 (6th Cir. 2006) ("Thus, so long as the officer had a right to be in a position to observe the defendant's license plate, any such observation and corresponding use of the information on the plate does not violate the Fourth Amendment"). In *People v. Bushey*, the New York Court of Appeals addressed a similar challenge to police-use of license plate information collected through LPR technology. *See generally* 29 N.Y.3d 158 (2017). There, the Court of Appeals explained that:

> Because the purpose of a license plate is to readily facilitate the identification of the registered owner of the vehicle for the administration of public safety, a person has no reasonable expectation of privacy in the information acquired by the State for

this purpose and contained in a law enforcement or DMV database. Indeed, the information is typically provided voluntarily by a driver to a government agency in exchange for the privilege of a valid license and registration. Considering that police officers are authorized by law to inspect and check for violations of licensing and registration requirements (*see* Vehicle and Traffic Law §§ 390, 401), drivers cannot claim any objectively reasonable expectation of privacy with respect to the DMV information being obtained by law enforcement. An officer's observation of that which is publicly displayed and the use of the information relative thereto contained in the DMV database does not violate defendant's Fourth Amendment rights, nor any provision of our New York State Constitution. As defendant did not have any reasonable expectation of privacy in either his license plate or the information lawfully obtained and accessible through the DMV database, there was no search or seizure cognizable under federal or state constitutional law.

*Id*. at 163–64.

Here, Defendant Bell has explained how the Albany Crime Analysis Center ("ACAC"), a division of the Albany Police Department, tracks license plate information throughout the Albany area. (*See* Dkt. No. 168-31, ¶ 5). Relevantly, Defendant Bell states that:

Plaintiff has relied on print outs from the [ACAC] to claim that I placed or caused to be placed a GPS device on his vehicle(s) and/or cell phone. I did not. Instead, I requested information from the ACAC pertaining to license plates known to be associated with the plaintiff. It just so happens that the license plate information I entered into the system was captured by some of the license plate readers in Albany and the print out demonstrates when and where the license plates passed any of the various cameras.

(*Id*., ¶ 6). Defendant Bell further explains the LPR log forms cited by Plaintiff as follows:

One heading of the print out states "GPS". In this context, it is not a GPS in the way plaintiff alleges where a device is placed onto a vehicle or cell phone and then sends out information as to the vehicle's whereabouts at any point in time. Instead, in the context of the license plate readers, "GPS" refers to the location of the license plate reader itself. Based on this, I am able to tell whether the license plate associated with the plaintiff was captured as it drove by a stationary camera or a camera affixed to a police vehicle. If a vehicle associated with Mr. Chaney did not drive by a license plate

18

reader, I would not know his whereabouts. Had there actually been a GPS placed on the vehicle, I would be able to know his whereabouts at all times. Because I only accessed the database and did not use a GPS, I would not know where Mr. Chaney was at any given time, only the occasions when he passed a camera.

(*Id.*, ¶ 7).

In sum, the record shows that APD used fixed cameras throughout the city that indiscriminately recorded 24-hours a day, without any particular focus on specific individuals, a fact acknowledged by Plaintiff. (*See* Dkt. No. 165-28, pp. 135–36). And Plaintiff has presented no evidence that Defendant Bell used any technology other than LPR to track the location of Plaintiff's vehicles or his cell phone. Thus, for the reasons outlined by the Court of Appeals in *Bushey*, Defendant Bell's use of the LPR technology did not violate Plaintiff's Fourth Amendment rights because he had no reasonable expectation of privacy in his license plate information while traveling on public roads.

Accordingly, Defendant Bell's motion for summary judgment is granted.

### C. Claims Against the City of Albany Defendants[5]

#### 1. Excessive Force Claim

Plaintiff claims that he was subjected to excessive force during encounters with APD officers on August 14, 2014 and October 13, 2014. (Dkt. No. 1, pp. 7–8, 22–23). Specifically, Plaintiff claims that an unknown officer (Defendant John Doe Badge #889) "used excessive force by tackling [ ] plaintiff to the ground and handcuffing plaintiff as he tried to enter the store on central ave on the night of August 14, 2014." (*Id.*, p. 7). Plaintiff also claims that he was subjected to excessive force on October 13, 2014 when APD Officers Gavigan, Gorleski, Kuhn,

---

[5] The Court notes that the Albany Defendants have not moved for summary judgment on Plaintiff's unlawful tracking claims against APD and Officer Gavigan. (*Compare* Dkt. No. 1, *with* Dkt. No. 167).

and Meehan "roadblocked plaintiffs [sic] vehicle at gun point and strong armed plaintiff facedown in the middle of interstate I-90." (*Id.*, p. 8). During his deposition, Plaintiff stated that he was "snatched out of the vehicle at gunpoint, . . . rustled, handcuff[ed], and arrested." (Dkt. No. 165-28, pp. 55–56). Plaintiff claims that the APD Officers had no reason to use force against him.

The Albany Defendants argue that Plaintiff's excessive force claim is subject to summary judgment because "[Plaintiff] fails to articulate any specific physical injuries," and "never sought or received medical treatment as a result of either incident." (Dkt. No. 167-1, pp. 10–11). In response, Plaintiff argues that officers used "extreme and excessive force" on both occasions, but he fails to identify any resulting injuries. (Dkt. No. 177, p. 3).

As discussed above, excessive force claims brought under Section 1983 are evaluated under the Fourth Amendment's "objective reasonableness" standard. *See Terranova v. New York*, 676 F.3d 305, 308 (2d Cir. 2012). "[A] plaintiff must present sufficient evidence to establish that the alleged use of force is 'objectively sufficiently serious or harmful enough' to be actionable." *Washpon v. Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). "[T]he Second Circuit and district courts in the Circuit recognize the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013); *see also Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993). Furthermore, a "'[d]e minimis* injury can serve as conclusive evidence that *de minimis* force was used.'" *Washpon*, 561 F. Supp. 2d at 407 (quoting *Carr v. Deeds*, 453 F.3d 593, 606 (4th Cir. 2006)). However, "the absence of any significant injury to [Plaintiff] does not end the [excessive force] inquiry, for our standards of decency are violated even in the

20

absence of such injury if the defendant's use of force was malicious or sadistic." *Wright v. Goord*, 554 F.3d 255, 270 (2d Cir. 2009).

Here, Plaintiff does not allege *any* specific injuries resulting from the claimed excessive force by APD officers on August 14 or October 13 in 2014. (*See generally* Dkt. No. 1; Dkt. No. 171). Plaintiff merely asserts that, on August 14th, he was "surrounded by all the officers who basically just took me down," and that "[t]hey came over with guns drawn, threw me down to the floor, rushing me down, and handcuffing me." (Dkt. No. 165-28, pp. 29–30). After being pushed to the ground, Plaintiff states that the APD officers "searched around me, took my phone and stuff out of my pocket, searched my pocket and my, you know, genital area around me at first. And then after that they went and told me to sat [sic] down on the curb, like helped me sit down because I was handcuffed." (*Id.*, p. 32). As for October 13th, Plaintiff recalls that he "got tooken [sic] out of the car, snatched to the ground, handcuffed, and -- rustled me out of the car and took me down to the precinct." (*See id*, pp. 55–56).

For both arrests, it is undisputed that APD officers had probable cause to believe that drug crimes had been committed and did not know whether Plaintiff and his associates were armed. (*See* Dkt. No. 167-2, pp. 4–9, 93–94). Crediting Plaintiff's allegations, the officers made these arrests by taking Plaintiff down to the ground and placing him in handcuffs. There is no evidence whatsoever that Plaintiff suffered any injury resulting from their actions, much less a significant one. Nor could malicious or sadistic intent be inferred based on their actions. On these facts, no jury could find that the force used against Plaintiff was unreasonable. Therefore, Plaintiff's excessive force against the APD Defendants must be dismissed. *See Bermudez v. Waugh*, No. 11-CV-947, 2013 WL 654401, at *5, 2013 U.S. Dist. LEXIS 23422, at *13–16 (N.D.N.Y. Feb. 21, 2013) (finding that tackling of inmate that caused minor bruising constituted

*de minimis* force) (collecting cases); *Bradley v. Village of Greenwood Lake,* 376 F. Supp. 2d 528, 535 (S.D.N.Y. 2005) (dismissing excessive force claim against arresting officer who kicked the plaintiff in the stomach causing temporary nausea and an abdominal scratch); *Esmont v. City of New York*, 371 F. Supp. 2d 202, 213–15 (E.D.N.Y. 2005) (dismissing excessive force claim where arresting officer caused the plaintiff to bump her head as she was placed in patrol car, resulting in a headache; left her in hot patrol car for ten minutes, resulting in profuse sweating; and applied handcuffs too tightly, resulting in bruising, swelling and unsubstantiated claims of nerve damage).

### 2. October 13, 2014 Arrest Report

Plaintiff next claims that Defendant Gavigan "falsified the arrest report/accusatory instrument on October 13, 2014 by alleging the red jacket found in the trunk belonged to this plaintiff as opposed to the driver who owned the vehicle." (Dkt. No. 1, p. 9). As a result, Plaintiff claims that his due process rights were violated because the "perjured arrest report/accusatory instrument" did not meet the "requirements of CPL 100.40 and CPL 100.15" since Gavigan "failed to provide any facts to support his conclusory statements[.]" (*Id.*).

In response, the Albany Defendants argue that Plaintiff's drug conviction related to the October 13th incident precludes him from asserting that Detective Gavigan falsified the related arrest report. (Dkt. No. 167-1, pp. 7–8). This argument relies on the Supreme Court's decision in *Heck v. Humphrey*, which held that:

> [I]n order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that

relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a Section 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486–87 (1994).

Here, Plaintiff offers no evidence that his conviction for Criminal Possession of a Controlled Substance in the Third Degree (*see* Dkt. No. 167-2, p. 7) has been reversed or invalidated. Furthermore, the undisputed facts demonstrate that Plaintiff's conviction stems entirely from the evidence obtained by APD officers on October 13th, which included 198 glassine envelopes of heroin recovered from Plaintiff's left coat pocket. (*See id.*, p. 6). Thus, the success of Plaintiff's claim challenging the arrest report would necessarily imply the invalidity of his conviction.

For these reasons, the Court finds that Plaintiff's claim challenging the validity of the October 13th arrest report is barred by *Heck* and must be dismissed. *See Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 123 (2017) (finding that the appellant's claims alleging that defendants "conspired to fabricate evidence and testimony against him and introduced such fabricated evidence and perjury at trial," if proved, "would demonstrate the invalidity of his conviction," and were therefore barred by *Heck*); *Monroe v. Gould*, 372 F. Supp. 3d 197, 202–03 (S.D.N.Y. 2019) (granting summary judgment on a plaintiff's Section 1983 claim challenging the validity of the police search of a vehicle where the plaintiff's success would have implied the invalidity of the plaintiff's prior conviction).

### 3. Unlawful Strip and Visual Body Cavity Searches

Plaintiff also claims that APD officers subjected him to a number of unlawful strip and visual body cavity searches. (Dkt. No. 1, pp. 23–24). Specifically, Plaintiff alleges that while he was handcuffed on August 14, 2014, "[Defendant John Doe Badge #889], Detective Scott Gavigan and members of his unit arrived on scene and performed there [sic] own search of plaintiff private area [sic]." (*Id.*, p. 8). According to Plaintiff, several APD officers, including Defendant Gavigan, took him to a parking lot and searched his pockets, waistband, shoes, socks, and then removed his belt. (Dkt. No. 165-28, pp. 33–35). Plaintiff states that "my genitals and all that was lift up, [officers] searched inside my pants . . . up under my arms, my shoes and socks was tooken [sic] off and then the back was also searched." (*Id.*, pp. 35–36). When asked specifically whether the officers touched his genitals, Plaintiff testified: "Yes. Yes. Yes. Outside and at the precinct also, when I got down to the station house." (*Id.*, p. 36).

Plaintiff also alleges that APD officers conducted a similar unlawful search when he was arrested on October 13, 2014, wherein Defendant Officers Gavigan and Kuhn performed a public search of Plaintiff's "private areas." (Dkt. No. 1, pp. 8–9, 22–23). And Plaintiff claims that APD Officers Gorleski, Kuhn and Meehan performed another unlawful visual body cavity search when Plaintiff arrived at the Albany police station. (*See id.*, pp. 8–9, 22). Plaintiff claims that, on both occasions, the APD officers lacked probable cause to "forcibly search" his underwear in public. (*Id.*, pp. 8–9). Consistent with these allegations, Plaintiff testified that the police strip-searched him in public and again at the police station. (Dkt. No. 165-28, pp. 57, 66). According to Plaintiff, APD officers, including Defendant Gavigan, physically touched his genitals during both searches. (*Id.*, pp. 66–67).

The Albany Defendants admit that a visual body cavity search was conducted in a private room at the police station on October 13th, but they insist that no strip-searches were ever conducted in public.[6] (Dkt. No. 167-1, p. 9). Further, the Albany Defendants argue that Plaintiff's claims about public strip-searches are "simply unbelievable and unsupported by evidence," and that "the facts and totality of the circumstances rendered the strip [at the police station] necessary and constitutional." (*Id.*, pp. 9–10).

The Fourth Amendment protects individuals from unreasonable searches by the government. *See* U.S. Const. amend. IV. A search of a person is presumptively unreasonable if conducted without a warrant, but warrantless searches may be justified if they fall under an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967). For example, strip-searches at detention facilities are generally valid under the Fourth Amendment, as discussed above. Under the circumstances here, Plaintiff's allegations about searches at the police station also fall in this category. Notably, the record shows that Plaintiff was arrested with a large amount of narcotics in glassine envelopes and has a criminal history involving narcotics. (*See* Dkt. No. 167-2, p. 6). Therefore, the police also had reasonable suspicion that Plaintiff could be carrying and concealing drugs on his person, which justified the search. Further, Plaintiff admits that the search at the station was performed in a private room, limiting the intrusion on his privacy. (*See* Dkt. No. 165-28, p. 64).

Accordingly, Plaintiff's allegations about searches at the police station do not permit a rational finding that his Fourth Amendment rights were violated. *See Elk v. Townson*, 839 F. Supp. 1047, 1052 (S.D.N.Y. 1993) (holding that the defendant's presence in a vehicle in which drugs were found gave the sheriff's office "reasonable grounds" to conduct a strip-search at the

---

[6] Regarding the October 13th encounter, Defendant Gavigan states that police performed a "pat down" search on Plaintiff's person. (Dkt. No. 167-2, ¶ 9).

precinct); *Easton v. City of New York*, No. 05-CV-1873, 2009 WL 1767725, at *3–4, 2009 U.S. Dist. LEXIS 53519, at *8–12 (E.D.N.Y. June 23, 2009) (holding that reasonable suspicion existed for visual body cavity search where the plaintiff was arrested while in possession of marijuana and cash, allowing the rational inference that he was engaged in the sale and distribution of marijuana); *see also United States v. Doutre*, No. 08-CR-10215, 2009 WL 1211048, at *5, 2009 U.S. Dist. LEXIS 37758, at *12–13 (D. Mass. May 5, 2009) (holding that police had reasonable suspicion to conduct a strip-search of the defendant at the station where the defendant was arrested for a drug trafficking crime and police had received information from an informant that defendant possessed cocaine earlier that evening).

However, as to the alleged public strip-searches, the parties' contrasting accounts preclude summary judgment because there is an issue of fact as to whether Plaintiff was subjected to a public strip-search/visual body cavity inspection. A public search as alleged would rise to the level of a Fourth Amendment violation. In sum, the Albany Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claims is granted as to the strip and/or visual body cavity searches conducted upon intake at the Albany police station, but denied as to Plaintiff's claims that APD officers touched his genitals during public strip-searches on August 14th and October 13th of 2014.[7]

---

[7] The Court rejects the Albany Defendants' argument that Officers Kisling, Wilson, Seeber, and James were not personally involved in any of the alleged conduct. (*See* Dkt. No. 167-1, p. 6). Plaintiff has consistently recalled that numerous officers were involved in the alleged unlawful searches on August 14th. Plaintiff specifically alleges that after his apprehension on August 14th, "Defendant Scott Gavigan and members of his unit arrived on the scene and performed [their] own search of [Plaintiff's] private areas." (Dkt. No. 1, p. 8). During Plaintiff's deposition, he recalled that he was escorted by four officers to a parking lot where the alleged search was conducted. (Dkt. No. 165-28, p. 35). In opposition to the Albany Defendants' motion, Plaintiff argues that "these officers [sic] names didn't fall from the sky there [sic] names are a result of there [sic] participation in the unlawful public cavities [sic] searches . . . ." (Dkt. No. 177, p. 1). Viewing the alleged facts in a light most favorable to the Plaintiff, the Court finds that a reasonable jury could find that Officers Kisling, Wilson, Seeber, and James were involved in the alleged conduct.

#### 4. Deprivation of Property

Next, Plaintiff alleges that Defendant Gavigan unlawfully "seized" $5,832.00 from him on an unspecified date. (Dkt. No. 1, p. 12). Plaintiff asserts that he has "yet to receive a voucher or notification of forfeiture proceedings," and that "[n]othing was ever mentioned in court and I hereby request [the] return of my money confiscated. Plaintiff asserts a claim of conversion [ ]." (*Id.*).

The Albany Defendants deny that that Detective Gavigan ever seized any money from Plaintiff, and argue that "even assuming this allegation is true, the availability of an Article 78 procedure is sufficient to satisfy Plaintiff's right to due process such that Plaintiff fails to state a cognizable [Section 1983] due process claim." (Dkt. No. 167-1, p. 14). In response, Plaintiff argues that the "court has jurisdiction over plaintiff [sic] property claim irrespective of plaintiff not filings [sic] and article 78 and waisting [sic] time." (Dkt. No. 177, p. 3).

In general, "there is no constitutional violation (and no available Section 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property or liberty." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881–82 (2d Cir. 1996) (citations omitted). As noted by the Albany Defendants, the Second Circuit has held that "an Article 78 proceeding constitutes an adequate postdeprivation procedure under the Due Process Clause . . . ." *Id.* (citing *Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir. 1988)). Moreover, this Court has held that Article 78 proceedings provide an adequate remedy for those who seek to challenge any action or inaction by an administrative agency or officers of state or local government. *See Hourihan v. Lafferty*, 58 F. Supp. 2d 10, 14–15 (N.D.N.Y. 1999) (citing N.Y. C.P.L.R. § 7801).

Here, Plaintiff has offered no evidence that he ever sought the return of the money that was allegedly seized by Detective Gavigan, either directly from APD or through an Article 78 proceeding. Plaintiff's remedy for this claim was to seek relief under Article 78 rather than file suit in federal court. Accordingly, Plaintiff's claim to recover the value of the seized property is dismissed as a matter of law.

### 5. *Monell* Claim

Lastly, Plaintiff asserts a municipal liability claim against the City of Albany under several theories, including: (1) failure to train, supervise, or discipline its employees; (2) creation and use of "a blanket policy that allowed . . . officers to commit perjury within arrest reports;" (3) "fail[ure] to implement a policy that screen [sic] all arrest reports/accusatory instruments for facial and jurisdictional defects prior to infringing upon a plaintiff [sic] due process liberty rights;" (4) creation of "a blanket policy that allowed all officers to arrest a plaintiff in the absence of probable cause;" (5) "deliberate indifference to Plaintiff's false arrest by enforcing a blanket policy created by the prosecutor and the police chief to allow the Albany police to conduct stop-frisks, unlawful cavity searches, and file false reports without conducting a thorough investigation;" and (6) "the admission visual body cavity searches . . . conducted pursuant to a long-established plan, policy, or procedure of the . . . albany police department." (Dkt. No. 1, pp. 9–10, 15–17, 20–21).

In support of summary judgment, the Albany Defendants argue that "the only proof Plaintiff has offered in an attempt to substantiate these conclusory, boilerplate allegations are his own isolated allegations of misconduct which form the basis of this litigation." (Dkt. No. 167-1, p. 12). In response, Plaintiff argues that "[t]he defendants were put on notice for years about the same identical issues raised herein and failed to discipline or institute a policy to detect perjury,

filings of perjured false police report, unlawful cavity searches etc. wherefore these issues are not isolated and clearly establishes a monell claim." (Dkt. No. 177, p. 3).

Under *Monell*, a city may only be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal "policy or custom." 436 U.S. at 694–95; *see also Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733–36 (1989)). A municipal policy or custom may be established by any of the following: (1) a formal policy, officially promulgated by the municipality, *id.* at 690; (2) an action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur*, 475 U.S. at 483–84; (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985) (plurality opinion); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Here, Plaintiff has not demonstrated any underlying constitutional violation to support his *Monell* claim, with the possible exception of the alleged public searches. Moreover, he has not produced any evidence of a municipal policy or custom by the City of Albany that caused the alleged constitutional violations. Plaintiff simply asserts, without offering supporting evidence, that his experiences with APD officers were part of a larger pattern of systemic misconduct. (*See* Dkt. No. 1, pp. 9–10, 15–17, 20–21). At most, Plaintiff has only alleged a few isolated instances of misconduct.[8] Without more, he cannot sustain a *Monell* claim because it is well-

---

[8] The Court notes that Plaintiff's opposition papers include several articles from Albany-area newspapers identifying at least one other case in which APD and Defendant Gavigan were accused of civil rights violations. (*See, e.g.*, Dkt. No. 177-1, pp. 15–16, 41–42). Although there appears to be some tangential

settled that "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *see also Southerland v. Garcia*, 483 F. App'x 606, 609 (2d Cir. 2012) (holding that summary judgment was proper where the "[p]laintiffs [ ] failed to allege, let alone present any evidence of, an official custom or policy such as is necessary to establishing liability under *Monell*"); *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (affirming the district court's dismissal of a *Monell* claim where isolated evidence of constitutional violations "[fell] far short of establishing a practice that is so 'persistent and widespread' to justify the imposition of municipal liability"). Accordingly, Plaintiff's conclusory allegations of wider misconduct by the Albany police are insufficient to show a policy or practice by the City, and Plaintiff's *Monell* claim must be dismissed.[9]

## V. CROSS-CLAIMS

The Schenectady County Defendants and Defendant Bell also move to dismiss all cross-claims against them. (*See* Dkt. No. 165-43, pp. 32–33; Dkt. No. 168-32, p. 9). Although "[n]either the Supreme Court nor the Second Circuit has ruled on the question of whether there is a right to contribution between joint tortfeasors under 42 U.S.C. § 1983, New York district courts have consistently held that federal law does not provide a basis for contribution under Section 1983." *See Thomas v. City of Troy*, 293 F. Supp. 3d 282, 301–02 (N.D.N.Y. 2018)

---

similarities between the claims in those cases and Plaintiff's claims here, there is nothing to suggest anything more than isolated incidents of alleged wrongdoing on behalf of specific officers.

[9] Plaintiff claims that Albany Police Chief Steven Krokoff violated his constitutional rights because Chief Krokoff, *inter alia*, failed "to prevent unlawful stops, frisks without probable cause or [to prevent] the filing of perjurous [sic] police reports that lead to unwarranted malicious prosecution or deprivation of plaintiff [sic] due process liberty rights." (*See* Dkt. No. 1, pp. 9–11). However, Plaintiff has failed to offer any evidence supporting these allegations, and therefore, Plaintiff's claims against Chief Krokoff must be dismissed.

("even if this action went to trial and City Defendants were found liable, they would be liable for their own actions and not for the actions of County Defendants"); *see also De Ratafia v. County of Columbia*, No. 13-CV-0174, 2013 WL 5423871, at *18, 2013 U.S. Dist. LEXIS 138169, at *52–54 (N.D.N.Y. Sept. 26, 2013) (holding that "federal law does not provide a basis for contribution for liability under Section 1983"); *Castro v. County of Nassau*, 739 F. Supp. 2d 153, 184 (E.D.N.Y. 2010) ("To the extent the County seeks indemnification and contribution on plaintiff's § 1983 claims, they cannot do so as a matter of law. No right to contribution exists under § 1983. Nor is there a federal right of indemnification under the statute."). The Court sees no reason to diverge from this well-established precedent here. Accordingly, Defendants' cross-claims for contribution and indemnity are dismissed.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Schenectady County Defendants' Motion for Summary Judgment (Dkt. No. 165), is **GRANTED** as to Plaintiff's claims for: (1) unlawful visual body cavity searches; (2) denial of necessary medical attention; and (3) municipal liability under *Monell*; but is **DENIED** as to Plaintiff's excessive force claim arising from the encounter on December 28, 2014; and it is further

**ORDERED** that Defendant Bell's Motion for Summary Judgment (Dkt. No. 168), is **GRANTED**; and it is further

**ORDERED** that the Albany Defendants' Motion for Summary Judgment (Dkt. No. 167), is **GRANTED** as to Plaintiff's claims for: (1) unlawful searches at the police station on October 13, 2014; (2) excessive force on August 13, 2014 and October 13, 2014; (3) unlawfully "seized"

money; and (4) municipal liability under *Monell*; but is **DENIED** as to Plaintiff's claims for unlawful public strip-searches on August 13, 2014 and October 14, 2014; and it is further

      **ORDERED** that all cross-claims, to the extent they are asserted by and against the Defendants, are **DISMISSED** with prejudice; and it is further

      **ORDERED** that, in accordance with this Memorandum-Decision and Order, Defendants Sinatra, Van Hoesen, Reaulo, Bell, Schenectady County Jail, Unknown John Does from the Schenectady County Jail, Unknown John Does from the Schenectady County Sherriff, and Albany Police Chief Steven Krokoff are hereby **DISMISSED** from this action with prejudice; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

      **IT IS SO ORDERED.**

Date:   August 16, 2019
        Syracuse, New York

**Norman A. Mordue**
**Senior U.S. District Judge**